# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 3:25-cv-00065 |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*, | Judge David J. Hale |
| Debtors. | |

---

**CITY OF OAKLAND'S MOTION TO STAY PROCEEDINGS IN THE BANKRUPTCY COURT PENDING THIS COURT'S RESOLUTION OF MATTERS NOW PENDING IN THIS COURT**

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 4

1.  The Oakland, California Property, the Underlying Business Dispute, and Related
    Federal and State California Litigation .............................................................. 4

2.  ITS 2019 Chapter 11 Bankruptcy .................................................................. 6

3.  The 2024 Adversary Proceeding ..................................................................... 7

4.  City's Motion to Withdraw and Transfer ........................................................ 9

5.  Rule 2004 Order and Motion for Reconsideration ......................................... 9

6.  The January 28, 2025 Hearing and Rulings .................................................. 10

ARGUMENT .................................................................................................................. 11

I.   The City Has a Strong Likelihood of Success on the Matters Pending in this Court ... 12

    A.   All Relevant Factors Support the Motion to Withdraw and Transfer ......................... 12

    B.   The Bankruptcy Court's Rule 2004 Order is Based on Legal Error ......................... 144

II.  A Short Stay to Permit This Court to Resolve the Pending Matters Will Prevent
     Inefficiencies and Harm ..................................................................................... 15

III. ITS Has Pointed to No Harm That It Would Suffer From a Short Stay ...................... 16

IV.  The Public Interest Weighs Heavily In Favor of Granting a Stay ............................... 17

CONCLUSION ................................................................................................................ 19

CERTIFICATE OF SERVICE .......................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Marine Const. Co. v. U.S. Dist. Ct. WDTX*,
    571 U.S. 49 (2013)................................................................................................13

*In re Chattanooga Wholesale Antiques, Inc.*,
    930 F.2d 458 (6th Cir. 1991) ..............................................................................15

*Gecker v. Marathon Fin. Ins. Co.*,
    391 B.R. 613 (N.D. Ill. 2008) .............................................................................12

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989)................................................................................................2

*In re Michalski*,
    449 B.R. 273 (Bankr. N.D. Ohio 2011) ..............................................................14

*Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
    945 F.2d 150 (6th Cir. 1991) ..............................................................................11

*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) (Rehnquist, J., in chambers)............................................16

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
    321 F. Supp. 3d 986 (N.D. Cal. 2018) ..................................................................4

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
    960 F.3d 603 (9th Cir. 2020) ................................................................................5

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
    134 S. Ct. 506 (2013)..........................................................................................16

*Sergent v. McKinstry*,
    472 B.R. 387 (E.D. Ky. 2012) ............................................................................12

*Stern v. Marshall*,
    564 U.S. 462 (2011).............................................................................................12

*In re Valley Forge Plaza Assocs.*,
    109 B.R. 669 (Bankr. E.D. Pa. 1990) .................................................................14

**Statutes**

11 U.S.C. § 541(a)(1)..............................................................................................14

iii

11 U.S.C. § 549(a) .................................................................................10, 14, 15

28 U.S.C. § 157(e) .......................................................................................................2

# INTRODUCTION[1]

This lawsuit involves two California state law tort claims brought in the Western District Bankruptcy Court against Defendant City of Oakland, California, by a former Chapter 11 debtor (Los Angeles-based Insight Terminal Solutions), more than four years after plan confirmation. *See* Western District of Kentucky Bankruptcy Case No. 24-3007-jal ECF 1 ("Adv. Dkt."). The state tort claims arise from a business dispute over contracts and a proposed development on City-owned land in Oakland, California, about which ITS has funded litigation for *years* in both the federal and state courts in California, claims that do not in any way raise issues of federal bankruptcy law.

On November 21, 2024, the Bankruptcy Court denied the City's motion to dismiss on subject matter jurisdiction, timeliness, and other California law grounds, by signing without alteration the former debtor's order. Adv. Dkt. ECF 56. The Court concluded that while nothing about these post-confirmation state law tort claims arise in or under federal bankruptcy laws, they are "related to" the prior bankruptcy proceeding because ITS now alleges that the City caused its bankruptcy back in 2019. *Id*. at 9. In light of that incorrect jurisdictional decision and ITS's agreement to a forum selection clause requiring it to bring any claims related to the land at issue in Northern California, the City immediately moved this Court to withdraw the reference and transfer this case to the far more appropriate venue: the Northern District of California.

---

[1] In the interest of efficiency, in light of the overlapping background facts and procedural history, the City filed a substantively identical stay motion in Case No. 25-cv-00023 and in this appeal from the Rule 2004 order and denial of reconsideration. This Motion addresses two related requested stays by the City of proceedings in the Bankruptcy Court: a stay of the adversary proceeding filed by former debtor ITS against the City of Oakland pending resolution of the City's Motion to Withdraw the Reference and Transfer Venue to the Northern District of California (pending in First Filed Case No. 25-cv-00023), and of the Bankruptcy Court's Rule 2004 order granting discovery from the City of Oakland, on appeal in the above-captioned case. The City has also filed a motion to reassign the two related cases under Local Rule 40.1(b).

That court is already familiar with extensive litigation regarding this Oakland land and the development project. That motion is fully briefed and pending before this Court. Case. No. 25-cv-00023, ECF 1. At the same time, the City asked the Bankruptcy Court to briefly stay proceedings to permit this Court to resolve that motion. Adv. Dkt. ECF 58.

On January 28, 2025, the Bankruptcy Court denied the City's motion to stay proceedings in its entirety, and ordered the parties to immediately proceed to a short 120-day discovery period (waiving Federal Rule of Civil Procedure ("FRCP") 16, which is applicable pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7016). Adv. Dkt. ECF 77 (attached to the accompanying declaration of counsel Danielle Leonard as Ex. A). The Court also set a *pre-trial* conference just two months into that discovery period (Adv. Dkt. ECF 77), notwithstanding the fact that the Bankruptcy Court *cannot* preside over any jury trial of these non-core claims. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51-56 (1989); 28 U.S.C. § 157(e). Absent transfer, this Court must conduct that trial. Thus, even if this Court ultimately denies the City's pending motion to withdraw and transfer, this Court is poised to inherit a rushed and unmanaged case in which ITS seeks a billion dollars in damages. A short stay pending resolution of the City's motion, which will allow this Court to determine the most efficient and appropriate way to proceed, is reasonable and warranted in these circumstances.

In addition, while the adversary proceeding against the City of Oakland was pending, ITS sought via the main bankruptcy docket to use the *pre*-litigation discovery tool in FRBP 2004 to take discovery into Defendant City's finances. Western District Bankruptcy Court Case No. 19-32231 ("Main Bk. Dkt.") ECF 508. Unfortunately, the Bankruptcy Court also incorrectly authorized the use of FBRP 2004 to require the City to sit for a deposition regarding financial transactions involving the sale of a sports stadium that have nothing to do with ITS, the

contracts, the land, or the bankruptcy at all, and are transparently aimed at using the federal court's jurisdiction to pursue political leverage. Main Bk. Dkt. ECF 523 (Leonard Decl., Ex. B). But Rule 2004 cannot be used, under long-standing law, to bypass discovery rules in an already-filed adversary proceeding, *or* to explore unrelated transactions that do not involve the debtor's property. The City therefore immediately moved for reconsideration (thus tolling any appeal deadline from that order). Main Br. Dkt. ECF 525.

On January 29, 2025, the Bankruptcy Court issued an order summarily denying the City's pending motion to reconsider the improper Rule 2004 order. Main Br. Dkt. ECF 548 (Leonard Decl., Ex. C). The City has appealed to this Court, because the order permits imminent discovery into Defendant's financial transactions that have nothing to do with the debtor or its property at all, in contravention of all applicable law. The City respectfully also requests that this Court stay implementation of that order, to permit this Court the ability to review that improper order. And, to the extent ITS is using this Rule 2004 to circumvent discovery in the adversary proceeding, that discovery should be managed and conducted under the supervision of the court that ultimately is going to resolve this case (which the Northern District of California is far better equipped to do).

These two stay requests will preserve this Court's ability to rule on these important issues, and impose the order required by governing federal law and rules on this proceeding. At the end of the day, this is very much a California law dispute, between California entities, involving California contracts and land. Counsel for ITS candidly admitted at the most recent hearing before the Bankruptcy Court that now that the two state torts are proceeding post-motion to dismiss, that this case does not implicate any "bankruptcy issue[s]." (Leonard Decl., Ex. D at 8 (Jan. 28, 2025 transcript) ("And that's what this case is all about. It's really not a bankruptcy

issue at this point"). If the resources of any federal court are going to be used to manage and resolve this dispute, it should be the Northern District of California. For all the reasons discussed below, including the important interests of comity and federalism that are implicated by ITS's attempt to use federal jurisdiction to delve into the City's finances, the City respectfully requests this Court enter the requested stays.

## BACKGROUND

1. **The Oakland, California Property, the Underlying Business Dispute, and Related Federal and State California Litigation**

The dispute between ITS and the City involves development contracts for waterfront City-owned land, formerly part of the Oakland Army Base, on which ITS and its business partner Oakland Bulk and Oversized Terminal, LLC ("OBOT") failed to build a promised bulk commodity shipping terminal. Adv. Dkt. ECF 1 2-4 & Ex. B.[2]

In 2016, OBOT entered into a 66-year lease for the West Gateway property in question (the "Ground Lease"). Adv. Dkt. 1, Ex. B at 35-36. OBOT agreed to fully fund all design and permitting work, and to commence construction within two and a half years. *Id.* Ex. B at 47-49. OBOT also agreed that any actions taken by the City in its regulatory or legislative capacity would not impact its performance obligations. *Id.* Ex. B. at 11-12. At the time, ITS's Kentucky-based owner had an option contract, but had not yet entered into any sublease. *Id.* at 2-3, 11.

In the meantime, also in 2016, the Oakland City Council enacted legislation regulating the storage and handling of coal, a commodity that OBOT and ITS wanted to ship through this terminal. OBOT sued the City in the Northern District of California for breach of contract. *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 321 F. Supp. 3d 986, 991 (N.D.

---

[2] The City's Motion to Withdraw the Reference and Transfer contains a full explanation of the background dispute and facts; the City includes a condensed version here.

Cal. 2018) (*OBOT I*). After trial, the federal court concluded in May 2018 that the City's legislation did not meet the contract standard for new health and safety regulations, and therefore enjoined the legislation as a breach of contract, *id.* at 1009, a holding that was later affirmed by the Ninth Circuit. *OBOT I*, 960 F.3d 603 (9th Cir. 2020). All of that federal litigation was funded in substantial part by ITS. Main Bk. Dkt. ECF 304, 336.

In August 2018, while the federal litigation was pending, and notwithstanding the contractual agreement to move the project forward anyway, OBOT breached the construction deadlines in the Ground Lease by failing to commence construction. Adv. Dkt. ECF 1, Ex. B at 34. The City invoked the contract's express early termination provisions and terminated in light of the default in November 2018. *Id.* at 80-81.

Meanwhile, in September 2018, while the City and OBOT were disputing OBOT's default, OBOT entered into a sublease with ITS. *Id.* at 81; *see also* ECF 1-2 (Jefferson Decl., Ex. B). OBOT intended that sublease to turn over all responsibility for the construction and operation of the disputed terminal to ITS. Adv. Dkt. ECF 1 at ¶ 4; ECF 1-2 (Jefferson Decl., Ex. B). ITS agreed to replicate and assume all of OBOT's obligations under the Ground Lease. ECF 1-2 (Jefferson Decl., Ex. B at §§ 37.9.1, 37.9.2). Among those obligations, both the Ground Lease and sublease contained a forum selection clause requiring any dispute arising "directly or indirectly" from the contracts to "be litigated in courts having situs within the City of Oakland." ECF 1-2 (Jefferson Decl., Ex. A at § 38.9, Ex. B at § 38.9).

OBOT, along with a different sublessee, sued the City again in California state court, asserting contract and business tort claims. *OBOT II*, Alameda County Superior Court Case No. RG18930929; *see also OBOT II*, California First District Court of Appeal Case Nos. A169585 and A170849; Adv. Dkt. ECF 1, Ex. A. ITS again substantially funded that litigation, just as it

had the preceding federal lawsuit.  Main Bk. Dkt. ECF 304, 336.  The business torts (which like

ITS's claims here, claimed interference with the ITS sublease and prospective economic

relations) were dismissed with prejudice for failure to state a claim under California law.  Adv.

Dkt. ECF 25-1, Ex. A.

OBOT (financially supported by ITS) and the City continued to litigate their respective

state law contract claims in California court through 2023.  The state trial court ruled in favor of

OBOT on liability, holding that it should have been granted a force majeure extension.  Adv.

Dkt. ECF 1, Ex. B.  In the remedy phase, OBOT backed and funded by ITS, sought nearly a

billion dollars in future lost profit damages (reduced to present day value), a figure derived

entirely from anticipated revenue under the ITS sublease.  Adv. Dkt. ECF 25-1, Ex. B

(December 22, 2023 order of California state court). In December 2023, the California state

court awarded zero dollars in lost profits, concluding that lost future profits from the ITS

sublease were entirely speculative and unsupported by admissible evidence, and granted only

specific performance remedy extending contract deadlines.  *Id.*; Adv. Dkt. ECF 1, Ex. A

(Judgment).  The City's appeal from the judgment is currently pending in the state appellate

courts, and awaits an argument date.  *See OBOT II*, California First District Court of Appeal

Case Nos. A169585, A170849.

Resolution of that appeal will determine whether OBOT's lease remains in place.  And

because any right ITS might have to sublease the land from OBOT is entirely derivative of

OBOT's right to the primary lease, ITS's interest in developing the property hinges on the

outcome of the pending state court litigation.

**2.      ITS 2019 Chapter 11 Bankruptcy**

Back in 2019, ITS filed a voluntary chapter 11 petition in the Western District of Kentucky Bankruptcy Court on July 17, 2019. Main Bk. Dkt. ECF 1. Among the entities to which ITS owed money at the time was a lender called Autumn Wind Lending ("AWL"), which was based in Los Angeles, California. Main Bk. Dkt. ECF 13.

ITS did not list the City as a notice party, or schedule the City as a creditor. Main Bk. Dkt. ECF 1; 63 at 8-18; 105-1 at 1-5. Notwithstanding the ongoing California state court litigation that it was funding, nowhere in the bankruptcy filings did ITS identify or claim City liability to it for business torts, let alone torts worth $1 billion. *Id*.; *see also* 217. When AWL later competed for control of ITS, its plan likewise did not identify any potential claims against the City. Main Bk. Dkt. ECF 245, 245-1.[3]

In November 2020, the bankruptcy court awarded AWL control of ITS. Main Bk. Dkt. ECF 379. Again, nothing in the Court's approval of the AWL plan was contingent in any way on receipt of damages from any state law claims against the City. *Id*. None of the post-plan confirmation bankruptcy proceedings conducted by the court since 2020 have involved the City, or the disputes regarding ITS's business tort claims against the City.

3. **The 2024 Adversary Proceeding**

In late 2023, following the California state court's liability ruling, OBOT and ITS began again to demand that the City move forward with the terminal project, notwithstanding the ongoing litigation. Adv. Dkt. ECF 1. The City declined, in light of the pending litigation,

---

[3] Subsequent to these plan filings, having been alerted (not by ITS) to the pending bankruptcy, the City submitted a plan objection, to alert the bankruptcy court to the ongoing California state court litigation over the City's termination of the primary lease and the resulting impact on the ITS Sublease being here claimed as an estate asset. Main Bk. Dkt. ECF 276. The bankruptcy court noted and rejected that objection in confirming the AWL plan. Main Bk. Dkt. ECF 379. The City was not otherwise a party to the bankruptcy proceedings.

including its appeal from the trial court's judgment and specific performance order, and California law automatically staying mandatory injunctions pending appeal. The trial court later confirmed that the *City was not required to proceed with the project pending appeal*, and further ordered the parties not to alter the status quo until the appeal was finally resolved. Adv. Dkt. ECF 47-1.

While the City's appeal of the California state court litigation discussed above was pending, in March 2024, ITS decided to file the two California state torts here in the Bankruptcy Court, claiming that: 1) the City's termination of the OBOT Ground Lease back in 2018 was a tort; and 2) the City's recent refusal to move the project forward after the state court judgment was a tort. Adv. Dkt. ECF 1. These are the same business torts the California court dismissed when OBOT asserted them back in 2018, in litigation funded by ITS. Adv. Dkt. ECF 1; *see id.* 25-1, Ex. A. ITS claimed lost profits of approximately "$1 billion" derived again from the alleged value of the ITS sublease at the time of the 2019 bankruptcy. Adv. Dkt. ECF 1 at ¶ 10.[4]

The City immediately moved to dismiss. Adv. Dkt. ECF 25-1. The City argued that the Bankruptcy Court lacked post-confirmation jurisdiction over these state law torts because, under governing Sixth Circuit law, this business dispute did not arise in, arise under, or relate to the bankruptcy. *Id.* The City also argued that ITS failed to state a claim because (1) its claims are plainly time-barred because they are based on acts undertaken in 2018 of which ITS was well aware (having funded the state court litigation since its inception); (2) the City is immune under California's sovereign immunity statutes for municipalities; and (3) ITS otherwise did not plead required elements of its claims. *Id.* ITS's responsive arguments on the merits of these claims

---

[4] In contrast, at the time of the bankruptcy, ITS told the court the sublease asset was valued at $1,000,001 to $10 million and estimated liabilities of $10,000,001 to $50 million. Main Bk. Dkt. ECF 1 at 3.

cited cases that it claimed conflicted with the law the City cited, requiring the bankruptcy court to resolve multiple contested issues of California law.  Adv. Dkt. ECF 42.

On November 21, 2024, the Court signed ITS's proposed order without alteration, denying the City's motion to dismiss.  Adv. Dkt. ECF 56.  In finding that there was subject matter jurisdiction for the federal courts, that court held that the claims did not arise under or in federal bankruptcy law, but were instead only "related to" the bankruptcy.  Adv. Dkt. ECF 56 at 9.[5]

**4.       City's Motion to Withdraw and Transfer**

Following the Bankruptcy Court's order denying the City's motion to dismiss, on November 21, 2024, the City promptly filed the now-pending Motion to Withdraw and Transfer the case to the Northern District of California.   Per the procedures employed by these courts, that motion was briefed and the record was transferred to this Court on January 13, 2025.  That Motion is fully briefed and awaits and hearing and/or resolution by this Court.

At the same time, on November 27, 2024, the City moved the Bankruptcy Court for a stay of proceedings pending this Court's resolution of that motion.  Adv. Dkt. ECF 58.  The Bankruptcy Court quickly set a hearing on that stay motion for January 28, 2025, and did not set any scheduling hearing or issue any scheduling order.  In the interim, no further action was taken by any party in the Bankruptcy Court, other than briefing the stay motion.

**5.       Rule 2004 Order and Motion for Reconsideration**

Months after filing the adversary proceeding (and while the motion to dismiss was pending) ITS filed a motion for Rule 2004 pre-litigation discovery from the City in the main

---

[5] The City does not agree with the bankruptcy court's ruling that post-confirmation "related to" jurisdiction exists in this case, or the rulings on the merits issues (which alter existing California law), and reserves all rights with respect to those arguments.

bankruptcy case.  Main Bk. Dkt. ECF 508.  ITS sought sweeping document discovery and a deposition regarding financial transactions involving the Oakland Coliseum (a professional sports stadium which has *nothing to do* with the land or contracts for the terminal development), explaining that it needed this discovery to ensure the City would have sufficient funds to pay any eventual damages in the pending adversary proceeding.  *Id.*  ITS's expressly stated goal in that motion was to "provide a healthy check and balance to (hopefully) deter the City from proceeding with future improper financial dealings and transactions, with the knowledge that such dealings will be published and scrutinized in a federal court record."  *Id.* at 7.

 The City opposed the motion, noting that there was no legal basis for Rule 2004 discovery on two straightforward issues of law:  parties cannot use Rule 2004 for discovery related to a pending adversary, and the statute invoked by ITS,11 U.S.C. § 549(a), applied only to transfers of property in the *debtor's* estate.  Main Bk. Dkt. 509 at 9-12.

The Bankruptcy Court granted the Rule 2004 motion, relying on § 549(a), but failed to address the City's arguments explaining why that provision does not apply here. Main Bk. Dkt. 523 at 3-5, 7.  The City promptly filed a motion for reconsideration (tolling any appeal from that order), and a request for a stay pending appeal if its motion were to be denied.  Main Bk. Dkt. 525.  The Bankruptcy Court entered a stay of the order pending resolution of the City's motion to dismiss.  Adv. Dkt. 49.

**6.      The January 28, 2025 Hearing and Rulings**

On January 28, 2025, the Bankruptcy Court held a hearing on the City's motion to stay the adversary proceeding pending this Court's resolution of the City's motion to withdraw the reference and transfer venue.  In an oral ruling, it denied the City's stay motion without providing any substantive explanation.  Leonard Decl. Ex. D at 22-24.

While not noticed for a hearing, the Court also summarily denied the City's pending motion for reconsideration of the Rule 2004 order, without substantive explanation. *Id.* At the hearing, counsel for the City moved the Court for a stay of the order denying reconsideration of the Rule 2004 order, to permit review by this Court. Leonard Decl., Ex. D at 22-23. The Bankruptcy Court denied that stay. *Id.*

The Court followed those rulings with written orders containing no further reasoning. Leonard Decl. Exs. A, C. The Court's scheduling order bypassed Rule 16, and did two further things: set a 120-day window for the completion of discovery, and schedule a pre-trial hearing during that discovery window, for March 27, 2025. Leonard Decl. Ex. A. At the hearing, in arguing for the requested stays, counsel for the City raised the fact that the Bankruptcy Court will not be able to preside over the jury trial in this matter. Leonard Decl. Ex. D at 12. The Bankruptcy Court acknowledged the issue and stated its intention to preside over pre-trial matters and then send the case to this Court. *Id.*

At that hearing, counsel for ITS argued that the reason the Bankruptcy Court should deny the requested stays was that this case is now all about the discovery in various California-specific matters that ITS wants from the City, and is "not a bankruptcy issue at this point." Leonard Decl., Ex. D. at 8.

The City promptly thereafter noticed the appeal from the Rule 2004 orders, filed an accompanying motion for leave to appeal, and files this motion for a stay.

## ARGUMENT

In evaluating whether to grant a stay, this Court considers four familiar factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."

*Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). These "factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* Each of these factors weighs decidedly in favor of granting a short stay of proceedings in the Bankruptcy Court to preserve and protect this Court's ability to rule on the matters pending before it, and to promote the most efficient use of judicial resources.

## I.     The City Has a Strong Likelihood of Success on the Matters Pending in this Court

### A.     All Relevant Factors Support the Motion to Withdraw and Transfer

***Motion to Withdraw.*** As set forth more fully in the briefing on the pending motion, every relevant factor weighs in favor of withdrawing the reference, a conclusion that ITS does not meaningfully dispute in its opposition. These claims are definitively non-core under established Supreme Court precedent; ITS conceded as much before the Bankruptcy Court by conceding that this proceeding does not arise in or under federal bankruptcy law. Dkt. ECF 1-4 7-8; *Gecker v. Marathon Fin. Ins. Co.*, RRG, 391 B.R. 613, 615 (N.D. Ill. 2008) (non-core nature of proceeding is "most important factor" weighing in favor of withdrawal); *see also Stern v. Marshall*, 564 U.S. 462, 476-77 (2011); Adv. Dkt. ECF 56 at 9 (agreeing that "arise in" or "arise under" jurisdiction does not apply to these claims). ITS also cannot dispute that a District Court will have to preside over any jury trial in this case, which could be lengthy and present purely California state law questions. Dkt. 1-4 at 8-9; *Sergent v. McKinstry*, 472 B.R. 387, 405 (E.D. Ky. 2012) (where a litigant "has a jury trial right … cause to withdraw the reference 'automatically exists' regardless of the remaining factors"). And ITS provides no response to the remaining factors counseling in favor of withdrawal: that withdrawing the reference will not create disuniformity in the bankruptcy laws, will not promote forum shopping, and will expedite the proceeding. Dkt. ECF 1-4 at 10.

ITS's opposition largely relies on accusing the City of delays (ignoring its own participation for years by funding federal and state court litigation, prior to deciding more than four years post-plan confirmation to finally sue the City without notice in Kentucky), and the argument that motions to withdraw are denied as "standard practice" (ignoring the importance of the transfer issues, and this Court's capability of assessing case-specific factors). Whatever the balance in *other* cases, nothing about *this case* warrants wasting the federal courts' resources on a two-step process whereby the Bankruptcy Court engages in a truncated pre-trial process, followed by redone pre-trial process and a trial in this Court.

*Motion to Transfer.* As to the motion to transfer, ITS provides no reason why this case should remain in Kentucky. The original owner, who filed for bankruptcy in Kentucky, lost control of ITS to a Los-Angeles-based owner, and has since passed away. ITS agreed to a forum selection clause requiring it to bring any claims arising directly or indirectly from its sublease regarding the City-owned land in Northern California. *Atl. Marine Const. Co. v. U.S. Dist. Ct. WDTX*, 571 U.S. 49, 60 (2013) (forum selection clause should be "given controlling weight in all but the most exceptional cases"); Dkt. 1-4 at 11-12. ITS does not contest that this case presents purely California state law questions, with which the federal courts of California are more familiar; that the witnesses, parties, and evidence are centralized in California; that the people of California have an overriding interest in the outcome of this dispute implicating publicly-owned land and important questions of government immunity; and that the people of Kentucky have no interest whatsoever in this case (and should not bear the burden of presiding as jurors over non-local disputes). Dkt. 1-4 at 13. Jury trials tax the resources of the federal courts, and if this case is going to trial, it should be managed in the only appropriate forum: the Northern District of California.

**B.      The Bankruptcy Court's Rule 2004 Order is Based on Legal Error**

Next, the City also has a strong likelihood of prevailing on its appeal from the

Bankruptcy Court's Rule 2004 order.  That Order is predicated on two legal errors.

First, settled law precludes the use of Rule 2004 (a pre-litigation discovery tool, for

bankruptcy-related matters) to be used for discovery from a Defendant in an already-pending

adversary proceeding.  The normal federal rules pertaining to discovery, incorporated by the

FBRP for adversary proceedings, should govern.  There can be no real dispute that the Court

erred in granting any discovery into the City's financial transactions entirely unrelated to the

underlying dispute or the ITS bankruptcy, because ITS asserted that it was concerned there

would not be sufficient funds to pay a damages award in the adversary proceeding.  "[O]nce an

adversary proceeding … is under way, discovery sought in furtherance of litigation is subject to

the F.R.Civ.P. rather than the broader bounds of R[ule] 2004."  *In re Valley Forge Plaza Assocs.*,

109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (collecting cases); *In re Michalski*, 449 B.R. 273, 281

n.4 (Bankr. N.D. Ohio 2011) (same).

Second, the Court granted ITS the right to examine the City with respect to the sale of the

City's property interest in a sports stadium (the Coliseum, where the Raiders and A's used to

play) based on a misreading of the plain language of 11 U.S.C. § 549(a).  The Court accepted the

nonsensical argument that this transaction – which on its face *does not involve debtor property* –

somehow could qualify as an impermissible transaction involving debtor property.  Thus, the

Court held that ITS "has established that the reason for the Rule 2004 Examination is to

determine whether the City's transactions with respect to the Coliseum may constitute an

avoidable post-petition transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code." Main Bk. Dkt. ECF 523 at 6-7. Section 549(a) concerns post-petition transfers "of property of the estate." 11 U.S.C. § 549(a); *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 465 (6th Cir. 1991). Property of the estate includes only those "interests of the *debtor* in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). Because the Coliseum has never been ITS's property, § 549(a) simply does not apply to it. The bankruptcy court's orders never explain how it could be otherwise, and this is plainly reversible error.

## II.     A Short Stay to Permit This Court to Resolve the Pending Matters Will Prevent Inefficiencies and Harm

ITS does not contest that both the 2004 order and proceeding with discovery in the adversary proceeding will each impose substantial costs on the City. Main Bk. Dkt. ECF 508 at 7; Adv. Dkt. ECF 76 at 4.

Discovery in *OBOT II* took years, involved more than a dozen depositions, and tens of thousands of documents. ITS's adversary proceeding, which seeks to hold the City liable for precisely the same City actions at issue in *OBOT II*, is likely to involve similarly intensive discovery. The parties here will need to determine, in short order, the extent to which they can or cannot rely on the prior records, and the extent to which new discovery focused on ITS's claims is needed. The 2004 order will also involve burdensome discovery as it seeks to probe a range of issues related to the sale of the Coliseum, including the City's allegedly deficient "marketing process," "market value estimates," and "third party analyses," while also questioning the wisdom of using the sale proceeds to pay the "inflated salaries" of City employees or to balance the City's budget. Main Bk. Dkt. ECF 508 at 3, 5.

The 2004 order in particular imposes significant federalism costs on the City and the public. A federal court authorizing a private party to act as an unelected, unaccountable inspector general licensed to provide a "healthy check and balance" (Main Bk. Dkt. ECF 508 at 7) on a municipality's exercise of official duties that have nothing to do with any bankruptcy is an intrusion on state and local sovereignty that is beyond anything that the drafters of Rule 2004 could have envisioned. *Cf. Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 134 S. Ct. 506, 507 (2013) (Scalia, J., concurring) (affirming stay where "mandating postponement of a state law" would "flout core principles of federalism"); *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury"). Indeed, ITS's 2004 motion was less concerned with any principle of bankruptcy law then with aspersing the City. *E.g.*, Main Bk. Dkt. 508 at 4 (sports team "fle[d] Oakland" because of "the City's hostility and ineptitude"). Allowing either Rule 2004 or discovery in the adversary proceeding to be used as a springboard for such political attacks will impose both fiscal and federalism costs. Whichever court ultimately presides over and manages this litigation should protect against the misuse of federal jurisdiction for these purposes.

## III.      ITS Has Pointed to No Harm That It Would Suffer From a Short Stay

In its stay opposition before the Bankruptcy Court, ITS was unable to identify any concrete harm it might suffer from a stay. It asserted a generalized interest in "prosecuting [its] claims" but did not identify any harm. Adv. Dkt. ECF 61 at 9. It also engaged in vague speculation about the City's finances, but again, did not tie that speculation to any harm that

could actually arise from giving this Court sufficient time to consider and resolve the issues pending before it.  Adv. Dkt. ECF 61 at 10.

ITS waited nearly four years post-confirmation to file an adversary complaint based on conduct that it claims caused a diminution in value *in 2018*.  *See* Adv. Dkt. ECF 72 at 4.  It waited three months after judgment in the California state court case to file this action; and four additional months before filing its Rule 2004 motion.  Main Bk. Dkt. ECF 508.  ITS failed to timely file its opposition to the motion to dismiss in the court below pursuant to the Local Rules, and then asked for additional months to respond, and to file a surreply.  ITS is no position to argue that it will be harmed by a brief stay now.

## IV.   The Public Interest Weighs Heavily In Favor of Granting a Stay

The public interest weighs decidedly in favor of granting a stay.  A stay would economize the resources of the parties and the federal courts.  Needlessly pressing ahead will impose significant costs on the parties and the bankruptcy court, including resolving discovery disputes and, eventually, dispositive motions.

If this Court were to transfer this case to California, each of the Bankruptcy Court's orders would need to be revisited.  ITS has already demanded discovery into, for example, sensitive non-public financial information that will require a protective order.  Any protective order entered into by the parties in the Western District of Kentucky Bankruptcy Court would need to be scrapped and redone if this case were transferred, as it would not comply with the Northern District's model protective orders that reflect specific California and Ninth Circuit precedents.  *See* N.D. Cal. Model Protective Orders, http://tiny.cc/7az7001.  Discovery orders as to scope and relevance may involve parsing the California state tort and immunity doctrines at the heart of this case, which a California federal court with relevant subject matter expertise

would almost certainly revisit. Judges in the Northern District of California have lengthy and detailed standing orders that set specific parameters for pretrial proceedings, and demonstrate the extent to which that Court is actively engaged in case management from the very start. *E.g.*, Standing Order for Civil Discovery Before Judge Vince Chhabria, http://tiny.cc/hbz7001. Here, by contrast, the Bankruptcy Court has bypassed basic rules, and set the case for a pre-trial hearing after *only two* months, prior to a four-month discovery cut-off.

There can be no real doubt that the Northern District of California would manage this civil litigation in a *very different* manner from the Bankruptcy Court. As it did below, ITS will respond to this request that discovery will need to open regardless; but these courts manage their pre-trial matters, including discovery, in very different ways. Forcing the parties to proceed under the Bankruptcy Court's rules and shortened schedules only to have the parameters for discovery unsettled upon transferring the case to California would accordingly impose an unjustified cost on the parties and waste judicial resources.

As noted above, allowing Rule 2004 discovery to go forward would also impose significant federalism costs on the public. *Supra* 15-16. ITS seeks to use Rule 2004 discovery to "provide a healthy check and balance to (hopefully) deter the City from proceeding with future improper financial dealings and transactions, with the knowledge that such dealings will be published and scrutinized in a federal court record." Main Bk. Dkt. ECF 508 at 7. That is not a proper use of discovery of any kind. The people of Oakland—not a private entity deputized by an out-of-state federal bankruptcy court—are empowered to question the wisdom of political judgments made by its local officials. ITS's political attacks, untethered from any legitimate question of law, are unworthy of the federal courts' jurisdiction.

Imposing a brief stay now will avoid these unnecessary costs, while permitting this Court to fully consider the City's motion to withdraw and transfer. The parties and the public should know which forum this case will be managed and heard in before pressing ahead with discovery, and all the attendant costs.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that this Court grant its motion to stay (1) the adversary proceeding pending this Court's resolution of the City's motion to withdraw the reference and transfer venue, and (2) the bankruptcy court's Rule 2004 orders pending this Court's resolution of the City's appeal from that order, or at a minimum, pending this Court's resolution of the City's motion to withdraw the reference and transfer venue.

Dated:  February 4, 2025                    By: /s/  *Danielle Leonard*
_____

Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Email:  dleonard@altshulerberzon.com

April A. Wimberg
Ryne E. Tipton
DENTONS BINGHAM GREENBAUM LLP
3500 PNC Tower, 101 South Fifth Street
Louisville, Kentucky 40202
Phone:  (502) 587-3719
Email:    april.wimberg@dentons.com
          ryne.tipton@dentons.com

Ryan Richardson, City Attorney (SBN 223548)
(*Pro Hac Vice* motion forthcoming)
Maria S. Bee, Chief Asst City Attorney
(SBN 167716)
Kevin McLaughlin, Supervising Deputy City
Attorney (SBN 251477)
THE CITY OF OAKLAND
One Frank Ogawa Plaza, 6th Floor
Oakland, California 94612
Phone:   (510) 238-3601
Email:    rrichardson@oaklandcityattorney.org
          mbee@oaklandcityattorney.org
          kmclaughlin@oaklandcityattorney.org

Monique D. Jewett-Brewster (SBN 217792)
LATHROP GPM
The Letitia Building
70 S First Street
San Jose, CA  95113-2406
Phone: (408) 299-1428
Email:  mjb@lathropgpm.com

Attorneys for Defendant,
CITY OF OAKLAND

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served electronically upon all parties in the electronic filing system.

Dated:  February 4, 2025                    By: _/s/ Danielle Leonard_____
                                                 Danielle Leonard