**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| In re: | Case No. 3:25-cv-00065 |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*, | Judge David J. Hale |
| Debtors. | |

## DECLARATION OF DANIELLE LEONARD IN SUPPORT OF MOTION TO STAY PROCEEDINGS IN THE BANKRUPTCY COURT PENDING THIS COURT'S RESOLUTION OF MATTERS NOW PENDING IN THIS COURT

I, Danielle Leonard, declare as follows:

1. I am a member in good standing of the bar of the State of California, a partner at the law firm Altshuler Berzon LLP, and counsel of record for the City of Oakland ("City") in this matter. The contents of this declaration are based on my personal knowledge, and if called to testify I would competently testify thereto.

2. I provide this declaration in support of the City's Motion to Stay Proceedings in the Bankruptcy Court Pending This Court's Resolution of Matters Now Pending in This Court.

3. On January 29, 2025, the U.S. Bankruptcy Court for the Western District of Kentucky filed an order (Case No. 24-3007-jal, ECF No. 77) denying the City's motion for a stay of the Adversary Proceeding pending this Court's resolution of the City's motion to withdraw the reference and transfer venue and directing the parties to complete discovery within 120 days. A true and correct copy of that order is attached hereto as **Exhibit A.**

4. On August 26, 2024, the U.S. Bankruptcy Court for the Western District of Kentucky filed an order (Case No. 19-32231, ECF No. 523) granting Insight Terminal Solutions LLC's ("ITS") motion for Rule 2004 discovery. A true and correct copy of that order is attached hereto as **Exhibit B.**

5. The City filed a timely motion for reconsideration of that order on August 29, 2024 (Case No. 19-32231, ECF No. 525). The Court later stayed that order and the motion for reconsideration pending resolution of the City's motion to dismiss the adversary proceeding (Case. Case No. 24-3007-jal, ECF No. 49).

6. On January 29, 2025, the U.S. Bankruptcy Court for the Western District of Kentucky filed an order (Case No. 19-32231, ECF No. 548) denying the City's motion for reconsideration of its order granting ITS's motion for Rule 2004 discovery and denying the City's request for a stay pending appeal. A true and correct copy of that order is attached hereto as **Exhibit C.**

7. On January 28, 2025, the U.S. Bankruptcy Court for the Western District of Kentucky held a hearing in which it orally denied: the City's motion to reconsider its order granting ITS's motion for Rule 2004 discovery; the City's motion for a stay of that order pending appeal; and the City's motion for a stay of the Adversary Proceeding pending this Court's resolution of the City's motion to withdraw the reference and transfer venue. A true and correct copy of the transcript of that hearing is attached hereto as **Exhibit D.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of February, 2025 in San Francisco, California.

*/s/ Danielle Leonard*

Danielle Leonard

Altshuler Berzon LLP

Exhibit A

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Insight Terminal Solutions, LLC ) | Case No.  19-32231 |
| ) | |
| ) | |
| Debtor(s) ) | |
| ) | |
| Insight Terminal Solutions, LLC ) | |
| ) | |
| ) | |
| Plaintiff(s) ) | |
| ) | |
| vs. ) | AP No.  24-3007 |
| ) | |
| City of Oakland ) | |
| ) | |
| Defendant(s) | |

**O R D E R**

    This matter came before the Court on January 28, 2025,  before the Honorable Joan A. Lloyd for a Telephonic Hearing on Defendant's Motion for Stay of Adversary Proceeding Pending Resolution of Motion to Withdraw Reference and Transfer Venue (Doc. #58) and the responses filed thereto. The Court having considered statements of counsel and being otherwise sufficiently advised,

    IT IS HEREBY ORDERED that    Defendant's Motion for Stay of Adversary Proceeding Pending Resolution of Motion to Withdraw Reference and Transfer Venue (doc. #58) be, and hereby, is  **DENIED**.

    IT IS HEREBY FURTHER ORDERED that parties shall conduct discovery within **one hundred twenty (120) days from the date of this order.**

IT IS HEREBY FINALLY ORDERED that this matter is **CONTINUED** to a Telephonic Pretrial Conference on **March 27, 2025 at 12:00 (Noon) (Eastern time).  Parties shall contact the Court by calling 1-855-244-8681 and use the Access Code 2315 920 2882.**

kg

Joan A. Lloyd
United States Bankruptcy Judge

Dated:  January 29, 2025

Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al.* | ) | CASE NO. 19-32231(1)(11) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors | ) | |

**MEMORANDUM-OPINION**

This matter is before the Court on the Motion by the Reorganized Debtor for a Rule 2004 Examination of the City of Oakland, filed by Debtor Insight Terminal Solutions, LLC (referred to herein as "Debtor"). For the following reasons, the Court will enter the attached Order granting the Motion by the Reorganized Debtor for Rule 2004 Examination of the City of Oakland.

**PROCEDURAL BACKGROUND**

On July 17, 2019, Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code in the Western District of Kentucky.

On April 27, 2020, Autumn Wind Lending, LLC filed its Chapter 11 Plan of Reorganization for the Bankruptcy Estate of Debtor.

On May 26, 2020, Debtor filed its Chapter 11 Plan.

On July 19, 2020, Debtor filed its First Amended Chapter 11 Plan.

On November 3, 2020, following a hearing before this Court, Debtor withdrew its Amended Chapter 11 Plan and the Court entered an Order of Confirmation of the Amended Plan of Creditor Autumn Wind Lending, LLC.

On March 11, 2024, Debtor filed Adversary Proceeding No. 24-03007 against the City of Oakland ("City") asserting claims against the City for monetary damages that it claimed were caused by the City's interference with Debtor's third-party contracts pertaining to the construction of a proposed rail to ship terminal.  Debtor asserts that the City's actions caused Debtor's bankruptcy filing and that its actions interfered with Debtor's third party contracts resulting in monetary losses of no less than $1 billion.

On April 22, 2024, in this case, Debtor filed a Motion for a Rule 2004 Examination of a Sierra Club representative.

On April 26, 2024, in this case, this Court entered an Order granting Debtor's Motion for a Rule 2004 Examination of a Sierra Club representative.

On July 3, 2024, Debtor filed a Motion for a Rule 2004 Examination of the City of Oakland.

On May 24, 2024, the Sierra Club filed a Motion to Set Aside the Order Granting the Motion of the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club.

On July 5, 2024, the City of Oakland filed an Objection to Debtor's Motion for a Rule 2004 Examination of the City of Oakland.

On July 11, 2024, the Court held a hearing on Debtor's Motion for a Rule 2004 Examination of the City of Oakland and Debtor's Motion for a Rule 2004 Examination of a Sierra Club representative.  Following the hearing, the Court took both matters under submission.

## LEGAL ANALYSIS

Debtor seeks an order from this Court to allow it to conduct a Rule 2004 Examination of the City of Oakland.  Debtor states that the scope of the examination will be limited to its purpose which

-2-

is to investigate the City's material transactions, such as the contemplated sale of the Oakland Coliseum. Debtor contends the City's actions warrant investigation of the "questionable" transactions "to determine whether they may constitute avoidable post-petition financial transactions under § 549(a) of the United States Bankruptcy Code." *See* Paragraph 21 of Debtor's Motion for a Rule 2004 Examination.

The City of Oakland objects to Debtor's Motion for a Rule 2004 Examination based on the fact that there is a pending Adversary Proceeding filed by Debtor against the City, A.P. No. 24-03007. The City was never a creditor of Debtor and no claims were ever raised by Debtor in its Chapter 11 case against the City of Oakland. The current Adversary Proceeding filed by Debtor against the City is based on two California business tort allegations which Debtor asserts caused Debtor's bankruptcy. The City has a pending Motion to Dismiss Debtor's Adversary Proceeding for lack of jurisdiction by this Court over any post-confirmation efforts by Debtor to bring California tort claims against a California city in this Court.

The City of Oakland also objects to Debtor's use of a Rule 2004 Motion in this case for discovery into the City's finances, including the proposed transaction related to the Oakland-Alameda County Coliseum Complex. The City contends these transactions have nothing to do with the Debtor's bankruptcy case or its Plan and that this Court "lacks jurisdiction to grant this frivolous request for many other reasons."

Although this Chapter 11 proceeding was initiated in 2019 and the Plan confirmed in 2020, Debtor's case remains active before this Court and this Court has continuing jurisdiction over the matter. A review of the Autumn Wind Lending, LLC's Chapter 11 Plan of Reorganization for the Bankruptcy Estate of Debtor Insight Terminal Solutions, LLC Pursuant to Bankruptcy Code Section

1121(c)(2) ("the Plan"), sets forth the terms of this Court's post-confirmation jurisdiction. Paragraph 2 under Article IX of the Miscellaneous Plan Provisions specifically provides that this Court retains jurisdiction to:

> adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

Debtor states that the City of Oakland is a "contingent debtor" of Debtor.  Debtor wants to investigate matters that it contends are improper financial transactions that could constitute post-petition transactions avoidable under 11 U.S.C. § 549(a) of the Bankruptcy Code.  This Court retains jurisdiction under the terms of the Debtor's confirmed Plan to "hear any other matter not inconsistent with the Bankruptcy Code;" *See* Paragraph 12, under Article IX(A) of the Miscellaneous Plan Provisions.  Good cause exists for the a Rule 2004 Examination request, "for the purpose of further investigating the City's material transactions such as the Coliseum Transaction described *supra* to determine whether they may constitute avoidable post-petition financial transactions under § 549(a) of the Bankruptcy Code."  *See* Paragraph 21 of Debtor's Brief.

Regardless of the terms in the confirmed Plan on post-confirmation jurisdiction, the source of any bankruptcy Court's jurisdiction derives from 28 U.S.C. §§ 1334 and 157.  In order to determine whether a matter is within a bankruptcy court's jurisdiction, "it is necessary only to determine a matter is at least "related to" the bankruptcy. *In re Wolverine Radio Co.*, 930 F.2d 1132, 1141 (6th Cir. 1991).  It is well established that this Court's subject matter jurisdiction derives from 28 U.S.C. § 1334, and not necessarily from the terms of a confirmed plan. *In re Resorts Int'l., Inc.*, 372 F.3d 154, 161 (3d Cir. 2004).  The Court determines that the matters to be covered in the Rule

-4-

2004 Examination are related to this bankruptcy case and are relevant to the execution of the confirmed Plan.

Debtor states that its request for a Rule 2004 Examination is "limited in scope" and "will merely focus on the City's post-petition financial transactions and dealings," not on the "tortious interference claims" asserted against the City of Oakland in Adversary Proceeding No. 24-03007. Debtor claims that cause exists for an order allowing Debtor's Request for Production of Documents under Rule 2004 for the purpose of investigating terms of the Coliseum Transactions with the City of Oakland to see if they constitute avoidable post-petition financial transactions under 11 U.S.C. § 549(a).

In general, Rule 2004 is used primarily to examine individuals who have knowledge of the financial affairs of the debtor in order to preserve rights of creditors. *In re GHR Co. Inc.*, 41 B.R. 655, 660 (Bankr. D. Mass. 1984). However, Rule 2004 Examinations of non-debtor witnesses are allowed where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets. *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984).

In this case, the Debtor seeks a Rule 2004 Examination of the City of Oakland post-confirmation of its Chapter 11 case. While such requests are not routine occurrences in Chapter 11 proceedings, they are not prohibited. The party seeking a grant of Rule 2004 discovery must prove "good cause" for the discovery by showing it is needed to establish a claim or that denial of the request would cause undue hardship. *In re DeFoor Centre, LLC*, 634 B.R. 630, 638 (Bankr. M.D. Fla. 2021). In *DeFoor*, the request for a Rule 2004 Examination was denied because the court

determined that the debtor would have ample opportunity to conduct discovery once it filed its adversary proceeding.

Unlike the *DeFoor* case, the Debtor herein alleges that the City of Oakland is a contingent debtor of Debtor and that the City is engaging in "questionable," and "improper financial dealings" that warrant investigation.  It further sets forth those actions of the City regarding the possible sale of one of the City's biggest assets, the City's undivided 50% interest in the real property where the Oakland Coliseum is located.

The scope of a Rule 2004 Examination is broad.  The Rule is substantially a pre-litigation device for assessing whether grounds exists to commence an action. *Handy Andy Improvement Ctrs. Inc.*, 199 B.R. 376, 379 (Bankr. N.D. Ill. 1996).  The Debtor's request herein is well within the limits of Rule 2004 as pre-litigation strategy for determining whether grounds exists for it to bring an action against the City of Oakland.

Unlike discovery under Fed. R. Civ. 26(b)(1), inquiries under Rule 2004 need only be relevant to the "acts, conduct, or property or to the liability and financial condition of the debtor, or to any matter which affects the administration of the debtor's estate." *In re Velsicol Chemical LLC*, 2024 WL765083 (Bankr. N.D. Ill. 2024).  In *Velsicol*, the court stated that a motion for leave to take a Rule 2004 Examination is not the time for the court to take a deep dive into the documents supporting the request or for the court to consider whose explanations of the documents are more plausible.  Similarly, this Court need not make such a deep dive into the reasoning for Debtor's request for the City's Rule 2004 Examination.

Debtor has established that the reason for the Rule 2004 Examination is to determine whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition

transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code. The parties herein, however, are cautioned that this Court's Order allowing the requested Rule 2004 Examination of the City of Oakland is not intended for any party to conduct examination of any party related to the matters outside those in the Debtor's Motion for the Rule 2004 Examination. Any discovery attempts regarding those matters set forth in the pending Adversary Proceeding, A.P. No. 24-03007 are not within the scope of this Order.

## <u>CONCLUSION</u>

For all of the above reasons, the Court will **GRANT** the Motion of the Reorganized Debtor for a 2004 Examination of the City of Oakland.

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

IN RE:                                          )
                                                )
INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*       )        CASE NO. 19-32231(1)(11)
                                                )            (Jointly Administered)
                                                )
_____ Debtors ___)

## <u>ORDER</u>

This matter having come before the Court on the Motion by Reorganized Debtor Insight

Terminal Solutions, LLC for a Rule 2004 Examination of the City of Oakland, and the Court having

reviewed the Motion of the Debtor, the Objection to the Debtor's Motion filed by the City of

Oakland, and the comments of counsel at the hearing held on the matter, and the Court being duly

advised in the premises,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motion of the

Reorganized Debtor, Insight Terminal Solutions, LLC for a Rule 2004 Examination of the City of

Oakland, be and hereby is, **GRANTED**.

So ordered this 26th day of August, 2024.



Exhibit C

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                                    )
                                          )
Insight Terminal Solutions, LLC           )     CASE NO.  19-32231  (1) (11)
                                          )
                                          )
                    Debtor(s)             )

ORDER

The above Chapter 11 case came before the Court on January 28, 2025, regarding the Defendant, City of Oakland's Motion to Reconsider and Relief from Order Granting Rule 2004 Motion for Examination for City of Oakland, or in the alternative, to Stay that Order (doc. #525) and Motion for Reconsideration and Relief from Memorandum-Opinion Order Denying Motion to Vacate Order Granting Motion for 2004 Examination of Interested Party, Sierra Club (doc. #530).  The Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Defendant, City of Oakland's Motion to Reconsider and Relief from Order Granting Rule 2004 Motion for Examination for City of Oakland, or in the alternative, to Stay that Order (doc. #525) be, and hereby, is **DENIED**.

IT IS HEREBY ORDERED that the Motion for Reconsideration and Relief from Memorandum-Opinion Order Denying Motion to Vacate Order Granting Motion for 2004 Examination of Interested Party, Sierra Club (doc. #530) shall be permitted **ten (10) days from the date of this order to file a reply brief.**

Kg

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  January 29, 2025

Exhibit D

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

```
                                    .  Chapter 11
IN RE:                              .
                                    .  Case No. 19-32231-jal
INSIGHT TERMINALS SOLUTIONS,        .
LLC,                                .
                                    .
              Debtor.               .
_____
INSIGHT TERMINAL SOLUTIONS, LLC,    .  Adv. Case No. 24-03007-jal
                                    .
              Plaintiff,            .
                                    .
     vs.                            .
                                    .
CITY OF OAKLAND,                    .  January 28, 2025
                                    .  11:15 a.m.
              Defendant.            .
.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .
```

TRANSCRIPT OF [57 DEFENDANT'S MOTION FOR
STAY OF ADVERSARY PROCEEDING PENDING
RESOLUTION OF MOTION TO WITHDRAW THE
REFERENCE AND TRANSFER VENUE
BEFORE THE HONORABLE JOAN A. LLOYD
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:  (Continued)

Audio Operator:            Electronically Recorded

Transcription Company:     A&S Transcript Providers
                           6 Trout Brook Road
                           Stanhope, NJ 07874
                           (973) 914-3080

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1    APPEARANCES:

2    For ITS:                    Robert M. Hirsh, Esq.
                                 NORTON ROSE FULBRIGHT US, LLP
3                                1301 Avenue of the Americas
                                 New York, NY 10019-6022
4
                                 Barry W. Lee, Esq.
5                                MANATT, PHELPS & PHILLIPS
                                 One Embarcadero Center, 30th Floor
6                                San Francisco, CA 94111

7                                Andrew David Stosberg, Esq.
                                 GARY ICE HIGDON, PLLC
8                                3939 Shelbyville Road, Suite 201
                                 Louisville, KY 40207
9
     For the City of Oakland:    Danielle Leonard, Esq.
10                               ALTSHULER BERZON, LLP
                                 177 Post Street, Suite 300
11                               San Francisco, CA 94108

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   (Proceedings commence at 11:14 a.m.)

2   THE COURT:  All right.  Then we have the <u>Insight</u>

3   <u>Terminal case</u>  on the line <u>vs. City of Oakland</u>.  Can we get

4   appearances.

5   MR. STOSBERG:  Good morning, Your Honor.  Andrew

6   Stosberg.

7   MS. LEONARD:  Good morning, Your Honor.

8   THE COURT:  Good morning.  Is that April Wimberg?

9   MR. STOSBERG:  Good morning, Your Honor.  Andrew --

10  MS. LEONARD:  Good morning, Your Honor --

11  THE COURT:  Okay.  So who's on the line?  I heard a

12  lot of good mornings.  I recognized Andrew, and I think I heard

13  April.  Is that Mr. Hirsh, too?

14  MR. HIRSH:  Yes, Your Honor.  Good morning.

15  THE COURT:  Good morning.

16  MR. LEE:  And good morning, Your Honor --

17  MS. LEONARD:  Good morning, Your Honor.  This is --

18  MR. LEE:  -- Barry --

19  THE COURT:  Go ahead.

20  MR. LEE:  Good morning, Your Honor.  Barry Lee for

21  ITS.

22  MS. LEONARD:  And good morning, Your Honor --

23  UNIDENTIFIED MALE:  And good morning --

24  MS. LEONARD:  Good morning, Your Honor.  This is

25  Danielle Leonard for the City of Oakland.  April Wimberg is out

1  of town --

2  THE COURT:  Okay.

3  MS. LEONARD:  -- and there are others from her firm

4  who are here today.

5  THE COURT:  Okay.  All right.

6  MR. SANDERS:  Good morning, Your Honor.  Skylar

7  Sanders on behalf of plaintiff ITS.

8  THE COURT:  Okay.

9  MR. MC LAUGHLIN:  Good morning, Your Honor.  Kevin

10  McLaughlin for defendant City of Oakland.

11  THE COURT:  All right.  Okay.  Who's going to make the

12  argument for the City of Oakland?

13  MS. LEONARD:  I am.  This is Danielle Leonard.

14  THE COURT:  Okay.  All right.  All right.

15  THE CLERK:  I would request that they say their name

16  before they speak.

17  THE COURT:  Oh, yes.  Okay.  So because this is all --

18  this is being transcribed, I need you to say your name before

19  you speak so that we can identify the appropriate person's

20  name.  Okay?

21  MS. LEONARD:  Terrific, I'm happy to do so.  This is

22  Danielle Leonard for the City of Oakland.  Should I proceed,

23  Your Honor?

24  THE COURT:  Yes, please.

25  MS. LEONARD:  Thank you and good morning.  I will keep

1 this very brief, Your Honor, in light of the fact that this

2 case already has a history before this Court and Your Honor is

3 familiar with it from the motion to dismiss pleadings.

4 　　　　　As the Court knows, there is currently a motion to

5 withdraw the reference and transfer the two California state

6 law claims filed in this Court to a more appropriate forum in

7 the Northern District of California but it's pending before the

8 District Court.  It is fully briefed and we expect a decision

9 imminently.

10 　　　　　And, at this point in time, the only issue before the

11 Court is the corresponding motion to stay proceedings in this

12 Court pending resolution of that motion to withdraw the

13 reference and transfer.  And those were filed back in November.

14 　　　　　Immediately upon this Court's resolution of the

15 jurisdiction issue, finding that the Court had jurisdiction,

16 the City immediately moved to withdraw the reference and

17 transfer the case once it was determined that the Court had

18 jurisdiction.  And the corresponding motion to stay was filed.

19 It has now been approximately two months since then and a

20 decision is imminent.

21 　　　　　So, at this point in time, there is all the more

22 reason to grant the stay and wait for the District Court's

23 decision before moving forward, and no party would be

24 prejudiced by any short further wait.  We think at this point,

25 the most efficient thing for all of the Court's resources is to

1    see which court will be handling the pretrial proceedings,

2    whether it's this Court or the Northern District of California,

3    and for that court to set the schedules and requirements and

4    all further proceedings in the case and a short, short stay

5    that we expect -- we expect a decision promptly from the

6    District Court will not cause any further issue here.

7         So that's what we're requesting.  We think that had

8    there been any prejudice, the opposing party, ITS, could and

9    would have taken any action in the past two months.  It has

10   not.  So we are here today asking the Court to enter a very

11   short stay, or at the very least hold this motion over until

12   the District Court decides at which point it would become moot.

13        If the Court has any questions, I'm happy to answer

14   them, but that is what the City is asking for here today.

15        THE COURT:  Well, how do you know a decision is

16   imminent?

17        MS. LEONARD:  Simply from the fact that it is fully

18   briefed and we expect the District Court to act upon fully

19   briefed motions in, you know, due course.

20        THE COURT:  Okay.  So it looks like, I have an entry

21   here, 1/22/2025, entry U.S. District Court case -- I guess

22   that's Judge Beaton?

23        MS. LEONARD:  Yes.

24        THE COURT:  Okay.  So he basically got it six days

25   ago.  Is that correct?

1    MS. LEONARD:  It was -- my understanding of how the

2  procedures work in your respective courts is that we fully

3  briefed it on the record in the Bankruptcy Court and the

4  Bankruptcy Court transferred the docket over to the District

5  Court, yes.

6    THE COURT:  Right.  Yeah, well, I really don't know

7  what they do on the second floor of this building but my guess

8  is they don't do anything until they get the package, the whole

9  package.  I don't think they pick things up piecemeal.

10    Okay  So who's going to make the argument for Insight

11  Terminal Solutions?

12    MR. STOSBERG:  Your Honor, Andrew Stosberg.  I have

13  very brief comments before I will turn the mic over to my

14  co-counsel, Mr. Lee.

15    THE COURT:  Okay.

16    MR. STOSBERG:  My comments to -- number one is to --

17  number one is to the Court's query, which I think is highly

18  relevant about whether something is imminent.  I can't speak to

19  Judge Beaton's docket, but I know that my firm and at least one

20  of my own cases with the Western District has a motion to

21  dismiss that's been pending for several months after being

22  fully briefed, and there's no decision on that.

23    So, again, I don't know what the basis to just matter

24  of factly suggest that any decision is imminent when in fact my

25  experience with this District Court shows that many, many

1    months could lapse without any action.  And that's highly

2    prejudicial to ITS.  You know, this case is already getting

3    some hair on it.  We're approaching a year, and it's time to

4    engage in discovery.

5         And that's what this case is all about.  It's really

6    not a bankruptcy issue at this point, which is why I'm going to

7    turn it over to Mr. Lee but suffice it to say is, we need to

8    engage in discovery, we need to begin that process, and at the

9    conclusion of this hearing, if Your Honor is inclined to rule

10   that there will be no stay then, you know, our next query to

11   Your Honor would be discovery protocols, because we're ready to

12   go today in terms of moving forward with discovery.

13        And, on that note, you know, discovery has to occur in

14   any court -- no matter whether the reference is or isn't

15   withdrawn, discovery needs to take place.  So, with that being

16   said, I'm going to let Mr. Lee just address, you know, the stay

17   standards that have been raised.  Thank you, Your Honor.

18        THE COURT:  All right.  Mr. Lee?

19        MR. LEE:  Yes.  Thank you, Your Honor.  Good morning.

20   Barry Lee for ITS.  And I don't want to sound presumptuous or

21   flippant, but denial of this motion for a stay is an easy call.

22   Legally and factually, it's a lay up or a chip shot, whatever

23   sports metaphor one wants to use.

24        I don't need to go through the applicable rules,

25   because the Court knows far better than I what those rules are

1  and what the authorities say.

2       The fact of the matter is that here, we have had an

3  extensive delay at every step along the way from the City.  The

4  City has filed multiple motions.  Again, as Mr. Stosberg

5  indicated, we're coming up on a year since his complaint was

6  filed, seven or eight months since the 2004 examination was

7  provided, and the City seems to point to really nothing,

8  absolutely nothing to support the general -- the exception to

9  the general rule that the filing of a motion to withdraw the

10 reference does not stay the underlying proceedings.

11      I submit they've really added nothing to this record

12 to support that.  The best that they do -- the best that they

13 do here is say that, well, we may have to appear in Kentucky

14 for discovery, and somehow that's some kind of irreparable

15 injury or harm that justifies staying that but we can solve

16 that problem right here.  We'll be happy to take the 2004

17 deposition at my office in San Francisco.  The City can simply

18 take the BART across the Bay.  It doesn't even have to pay the

19 bridge toll on the Bay Bridge for the deposition.

20      So the real harm here is to the debtor, because it is

21 -- if the defendant is allowed to continue to ignore this

22 Court's orders and further delay this proceeding, we are going

23 to be potentially in a very difficult position.  During the

24 time that this case has been pending, the defendant's -- the

25 City's dissent into insolvency continues.  It's getting worse.

1   Attached to my declaration are exhibits to demonstrate that.

2          And really, what is going on here is -- again, without

3   being flippant, I saw the Bob Dylan movie recently, and I

4   enjoyed it, but it reminded me of a line from one of his songs,

5   which is you don't need a weatherman to know which way the wind

6   blows.  Here, you don't need a seer or a psycher to know what's

7   going on.  The City is trying to run the clock out on the 2004

8   exam until it files some kind of bankruptcy petition that will

9   stay this action proceeding.

10         And that's the real harm to the debtor.  Negotiations

11  for the sale of the Coliseum at least according to press

12  reports are ongoing.  The significant developments in the city

13  since the filing are, I'm assuming -- I don't know.  I assume

14  the Court is aware that the mayor of Oakland who was leading

15  those negotiations was recalled and was indicted this month by

16  a Federal grand jury on charges for, among other things,

17  bribery.  So what's going on here; it is just a four-corner

18  stall tactic.  That's all this is.  The City has ignored this

19  Court's orders.  It's filed every conceivable motion to delay

20  this proceeding.

21         And what has happened here is the City unilaterally

22  granted itself the relief it seeks from this Court.  Counsel

23  mentioned that ITS didn't bring any proceeding.  Well, that's

24  because they said they weren't going to participate and they

25  weren't going to do anything until this Court ruled on the stay

1 motion.

2 So, from our perspective, Your Honor, with all

3 respect, enough is enough is enough. We ask the Court to deny

4 the motion to stay, order the defendant to produce the

5 documents and appear in San Francisco for the 2004 examination

6 within the next two weeks.

7 And again, I'm available to answer any questions.

8 THE COURT: All right.

9 MR. LEE: Thank you.

10 THE COURT: Okay. Thank you. Who else? Anybody else

11 want to be heard?

12 MS. LEONARD: Your Honor, this is -- this is Danielle

13 Leonard. May I respond in rebuttal --

14 THE COURT: Yes.

15 MS. LEONARD: -- to the arguments made by ITS on

16 behalf of the City? Okay. Thank you, Your Honor.

17 So suffice it to say, the question before the Court is

18 what is the most efficient use of the Court's resources at this

19 point in time? We obviously have extensive disagreements with

20 counsel regarding that and also with their client that all

21 arise from disputes in California.

22 As Mr. Lee has reiterated here, this is all about

23 California, Your Honor. So that is the basis for the motion to

24 transfer. If this case is going to be in the Northern District

25 of California, which it absolutely should be, then there is no

1   reason for this Court to spend its resources sorting through

2   the issues of how to schedule this case, a case in which there

3   is only related to jurisdiction, in which this Court cannot

4   hold a jury trial.

5        The trial will be in a different court, whether it's

6   the Western District of Kentucky or the Northern District of

7   California.  It is not going to be in this Court.  And the

8   Court that is going to hold that trial should be the court that

9   sets all the schedule and deals with all the issues, including

10  any discovery disputes, which undoubtedly there will be some in

11  this case, Your Honor, discovery disputes and other issues

12  going forward, including setting a schedule.  A schedule will

13  be completely superseded the minute the District Court

14  transfers this case through the Northern District.  We don't

15  know if that's going to be the outcome, but there's a

16  reasonable likelihood that that is going to be the case.

17       Mr. Lee argued that there was nothing to support the

18  stay.  The transfer issue, Your Honor, is the entire reason

19  that it is more efficient to wait because it is very likely

20  under the standards that apply to those motions that this case

21  will be transferred.  And if that is so, that court is the one

22  that should deal with all of the issues here including, Your

23  Honor, what counsel has continuously done which is confuse

24  discovery in this case with the Rule 2004 proceeding.

25       The Rule 2004 order is not discovery in this case,

1  Your Honor.  That order, which Your Honor entered, expressly

2  stated that it was not discovery in this case based on the

3  representations of the parties which -- of ITS, which, by the

4  way, were wrong.  It is obviously intended to be discovery in

5  this case, as counsel just confirmed.  That is the basis for

6  our reconsideration motion, which is pending before this Court,

7  and the Court cannot order that proceeding to go forward until

8  that motion has been resolved, and that motion has not been set

9  for a hearing.

10       We would ask if the Court is entertaining action on

11  the Rule 2004, which is separate from this adversary

12  proceeding, that that be set for a hearing so we can address

13  it.  It was not set for hearing today.

14       Your Honor, this is a question of efficiency in the

15  Court, the appropriate use of the Court's resources.

16  Everything that Mr. Lee said about what's going on in

17  California, there's absolutely no basis for.

18       Let me just say this on the record here today, the

19  Court is not -- the City is not trying to run out the clock so

20  that it can file bankruptcy.  There is absolutely no basis for

21  the assertion that that's what is happening and for the

22  assertion that the City is going to file bankruptcy.  That is

23  not -- that is not the case.

24       And we are simply asking for the most efficient manner

25  of proceeding in a case that, frankly, ITS could have brought

1    years ago.  So all these arguments about delay should be taken

2    with a very large grain of salt.

3           I'm happy to address any of the other issues further

4    but unless the Court has further questions, I will stop.

5           THE COURT:  Mr. Stosberg, this is the Court.  In the

6    main case, the motion to take the 2004, do you have the docket

7    number?

8           MR. STOSBERG:  Let's see.  I apologize, Your Honor.

9    You'll have to --

10          THE COURT:  That's okay.  It's out there.  You --

11          MR. STOSBERG:  -- give me a moment while --

12          THE COURT:  Because I see the Sierra Club -- wait a

13   second, motion to reconsider -- I keep seeing the Sierra Club.

14          MS. LEONARD:  Both the Sierra Club and the City of

15   Oakland --

16          MR. LEE:  Your Honor --

17          MS. LEONARD:  -- have fully briefed pending motions

18   for reconsideration of the two -- of the two orders, and I am

19   looking to find, Your Honor, for the docket number of the

20   order.

21          MR. LEE:  Your Honor, with all respect, this is Mr.

22   Lee.  My notes show that on August 26th, 2024, the Court

23   entered an order granting ITS's motion for a Rule 2004

24   examination, Docket 523.  On -- thereafter, there was a motion

25   for reconsideration, Docket -- by the City -- Docket 525.  Yes.

1    And since the motion for reconsideration, as evidenced

2  in my declaration in opposition -- my declaration in support of

3  the objection to this motion, the City stated that it would not

4  follow the order, it would not cooperate in any way, shape, or

5  form in connection with the 2004 exam, which I'm not sure how

6  that involves any burden on the Court.  That's simply sitting

7  for an examination that has been ordered by the Court.

8    And, by filing the motion to reconsider, just like the

9  motion for withdrawal of the reference, that does not trigger a

10  stay.

11    THE COURT:  Just one second.  The Court is going to

12  deny the motion to reconsider under 530 in the main case, and

13  motion to reconsider relating to the City of Oakland.  And to

14  the extent there is --

15    MS. LEONARD:  Your Honor --

16    THE COURT:  Yes.

17    MS. LEONARD:  Sorry to interrupt.

18    THE COURT:  Go ahead.  That's -- the Court is going to

19  sign an order on that today, and the same with the Sierra Club.

20  So we're going to get that off the plate.

21    MR. LEE:  Thank you, Your Honor.

22    MS. LEONARD:  Your Honor, I don't think the Sierra

23  Club --

24    MR. STOSBERG:  Thank you, Your Honor.

25    MS. LEONARD:  -- is appearing here today to be heard

1  on their motion for reconsideration.

2  THE COURT:  Well, it was under submission.  It's under

3  submission.  Are you arguing -- are you representing the Sierra

4  Club?

5  MS. LEONARD:  I am not.

6  MS. BIRD:  Your Honor, this is --

7  THE COURT:  I believe it's under submission.

8  MS. BIRD:  This is --

9  THE COURT:  If it's under submission, the Court has

10  the prerogative to enter an order.  And if the Court is in

11  error on the Sierra Club, we'll get to the bottom of it but as

12  I understand, this was under submission.

13  MS. BIRD:  Your Honor, the only thing I would add from

14  the Sierra Club -- sorry, this is Charity Bird.  I was

15  listening in for this one since it does relate to ours.  And we

16  were going to file a reply brief until everything had been

17  stayed.  So the Sierra Club would still like to file its reply

18  brief before it's deemed under submission.

19  THE COURT:  Let's see.  So it looks like the last time

20  anything was filed was Mr. Stosberg's objection to the motion

21  to reconsider in September of 2024 in 535.  And so the Sierra

22  Club --

23  MS. BIRD:  Yes, Your Honor, and then it was stayed.

24  THE COURT:  Where was it stayed?  We're talking about

25  the main case.  The 2004s are in the main case.

1    MS. BIRD: Yes, Your Honor, I think there was an order

2  entered in this particular case that ended up also staying

3  ours. There was some correspondence and phone calls between

4  Barbara and I where I was trying to figure out the impact on

5  the Sierra Club pending matter, and I indicated that we still

6  wanted to file a reply brief, but we would wait until the stay

7  had been --

8    THE COURT: I'm not sure what you're talking about.

9  Are you talking about a stay in an adversary proceeding?

10  Because I'm looking at the record now, and I don't see a stay

11  entered in the main case. So the 2004 examination motions were

12  filed by ITS in the main case, and then there are the

13  independent adversaries, right? Or at least one was related to

14  --

15    MS. BIRD: There's not one --

16    THE COURT: Not for the Sierra Club --

17    MS. BIRD: Right.

18    THE COURT: -- but there is for Oakland.

19    MS. BIRD: Right, Your Honor, and my understanding was

20  that there was an order entered in the Oakland adversary

21  proceeding that impacted our 2004 motion pending in the main

22  case back in September. I could be completely wrong, Your

23  Honor --

24    THE COURT: Well, I would wonder why in the world the

25  Court would enter an order staying anything related to the

1  Sierra Club in the Oakland case.

2      MS. LEONARD:  Your Honor, this is Danielle Leonard for

3  the City.  We can find the docket number of that entry, but

4  that is exactly what Your Honor did.  You stayed the Rule 2004

5  orders pending resolution of the City's motion to dismiss.

6      THE COURT:  Which the Court did resolve that.  The

7  motion to dismiss was denied.

8      MS. BIRD:  Correct.  Yes, Your Honor.  That is

9  correct.

10      MR. LEE:  Yes, Your Honor.

11      MR. STOSBERG:  Excuse me.  Yes, that is correct, Your

12  Honor.  Yes.

13      THE COURT:  Right?  The motion to dismiss was denied

14  and it was immediately followed by the City's motion for

15  withdrawal of the reference and transfer of venue.  And then

16  the motion --

17      MS. BIRD:  Yes, Your Honor.  And --

18      THE COURT:  -- for stay of the adversary proceeding

19  was filed coincident with the motion for withdrawal of the

20  reference.  And there has been no -- the Court has not entered

21  this -- somebody tell me, did the Court enter an order staying

22  anything yet related to the City of Oakland, its -- the

23  adversary proceeding against the City of Oakland, or anything

24  related to the Sierra Club?  Has this court entered an order?

25  Because I don't think it has.

1    MS. LEONARD:  Your Honor, Danielle Leonard for the

2  City.  So not -- oh.

3    MR. LEE:  Your Honor, this is Mr. Lee.  This is Mr.

4  Lee.  And Document 56, the court entered an order staying the

5  proceedings pending resolution of the motion to dismiss.  The

6  Court denied in its entirety the motion to dismiss on November

7  21, 2024.  There was no other stay of which we are aware.  And

8  that was Mr. Lee.

9    MS. LEONARD:  Daniel Leonard for the City -- Danielle

10 Leonard for the City.  Thank you.  That is correct.  We moved

11 immediately for a stay and Your Honor set that motion for

12 hearing today.

13   THE COURT:  Right.  So you moved for a stay of the

14 adversary --

15   MS. BIRD:  And, Your Honor --

16   THE COURT:  -- proceeding because it was not stayed by

17 operation of law.

18   MS. LEONARD:  Your Honor, by operation of law -- we

19 moved for a stay of the adversary proceeding because certain

20 things are not stayed by operation of law.  That is correct.

21 Discovery is not yet open by operation of law per the rules

22 that apply to this proceeding, and Your Honor did not set --

23   THE COURT:  Which rule -- which -- please reference

24 the rules while we're talking rules.

25   MS. LEONARD:  Sure.  Sure.  The Federal Rule of

1  Bankruptcy Procedure 7026, which makes Rule 26 applicable to

2  the adversary proceeding.

3          THE COURT:  So --

4          MS. LEONARD:  And Rule 26 sets the parameters for when

5  discovery opens.

6          THE COURT:  So does ITS agree with that?

7          MS. LEE:  This is Mr. Lee, Your Honor --

8          MS. LEONARD:  Taking a second back, Your Honor --

9  taking a step back --

10          THE COURT:  I mean, so in other words, what the City's

11  position is, is there is no Discovery until the Court says go.

12  Is that right?

13          MS. LEONARD:  That is how the Federal Rules of

14  Bankruptcy Procedure and Civil Procedure operate.  Yes, that is

15  correct, Your Honor, that discovery does not just open in

16  adversary proceedings.  That is correct, Your Honor.  That is

17  how those rules operate and that is our understanding for how

18  these rules operate --

19          THE COURT:  Well, then it would make no sense for you

20  to move to stay -- it makes no sense for you to move to stay

21  proceedings.

22          MS. LEONARD:  No, Your Honor.  The request to stay

23  proceedings is so that Your Honor would not set a scheduling

24  conference and thereby trigger all of the discussions that need

25  to happen with respect to how the Court is going to proceed

1  with the case.  That is what we were moving to stay, Your

2  Honor, and that is what we are asking for you to stay right now

3  because if this case is going to be transferred, it makes all

4  the sense in the world for the Court that is going to handle

5  those proceedings to be the one that engages in those

6  conversations about scheduling, which are going to be serious

7  because there are real questions here of how this case should

8  be scheduled when, in fact, the trial is going to be held.

9       If it proceeds in this case -- in this court, Your

10 Honor, the Court is not handling the jury trial.  We are not

11 going to consent to it.  So there are real serious questions

12 about how that scheduling would proceed.  So that's what we are

13 asking for here today, Your Honor.

14      We're asking for a very reasonable decision and order

15 that that conversation awaits the resolution by the District

16 Court of whether this Court is going to continue to handle the

17 case, and with respect to the Rule 2004, if we can go back to

18 that, I understand that Your Honor wishes to rule on those

19 papers.  We would reiterate our request for a hearing with

20 respect to them because the comments that are made here today

21 reinforce the arguments in that motion for reconsideration.

22      They are simply seeking discovery in the adversary

23 proceeding, Your Honor.  That is not an appropriate use of

24 2004.  It is not unrelated to the adversary proceeding.  It's

25 directly related to the adversary proceeding, and if that

1  discovery is going to occur, it should occur under all the

2  rules in the adversary proceeding governed by the Court that's

3  going to handle it.

4  That's our request.  It is perfectly reasonable.  They

5  are short-circuiting and trying to get around the rules that

6  apply to these proceedings, and we ask that the Court consider

7  those arguments and set this for a hearing.  And in the

8  alternative, if you are going to deny that motion for

9  reconsideration, we on the record here right now immediately

10  move for a stay of that order based on all the reasons that are

11  set forth in our stay motion for this adversary proceeding.

12  We would like the opportunity to have that order

13  reviewed because we think it is profoundly incorrect to allow

14  the Rule 2004 order to proceed given the pending adversary

15  proceeding as a matter of law.

16  THE COURT:  The Court has already ruled on that.  Your

17  motion is denied.  In the adversary proceeding, I would like to

18  direct your attention to Document Number two.  The City of

19  Oakland has filed an answer in this case, and if you refer to

20  this Court's summons, which is issued in every case, you will

21  note it's hyper -- I guess it's highlighted at the bottom of

22  the first page if defendant files an answer, which in this case

23  it has, parties shall meet to discuss settlement, complete

24  discovery, and file required initial disclosures and other

25  documents pursuant to Bankruptcy Rule 7026.

1      That has been activated, and that was activated when

2 this case was filed in the process the summons were served.

3      So, in the main case, the Court is denying the motion

4 to reconsider on the Bankruptcy Rule 2004 and denying the

5 motion to stay that.

6      In the adversary proceeding, the argument to stay this

7 discovery, the discovery that is in operation as of the Court's

8 denial of the motion to dismiss, the denial of the motion to

9 dismiss in and of itself keyed the beginning of active process

10 on this case.

11      That process actually began with the service of the

12 summons and the beginning of discovery under Bankruptcy Rule

13 7027.  And so, the motion to stay the adversary proceeding is

14 in and of itself an acknowledgment by the City that discovery

15 had already been keyed by the Court through its normal process.

16 That process has not been altered.

17      So, as it stands today, I don't know what Judge Beaton

18 will do with this case, but I can tell all of the parties, just

19 for your understanding of the way things happen in the Western

20 District of Kentucky, that if there is a reservation of rights

21 for a jury trial, that it has been the practice in the past,

22 and Judge Beaton may do whatever he chooses to do on this, is

23 the District Court has normally deferred to the Bankruptcy

24 Court to get discovery going, and if it is going to remove the

25 reference, it has in the past removed the reference after

1    discovery has been completed, and then it begins the process of

2    preparing the matter for trial.

3          It is possible that Judge Beaton could do something

4    that this Court has never seen before.  I don't know.  But he

5    just got this case, and there is no reason to stay proceedings

6    when, if you look at Document Number 2, 7026 has already been

7    activated.

8          The motion to stay adversary proceedings is denied for

9    those reasons.  So -- and you can take that matter to Judge

10   Beaton if you disagree with it, but we will be preparing an

11   order on this today.

12         MR. LEE:  Thank you, Your Honor.

13         THE COURT:  And, to the best of my knowledge, that

14   concludes that.  In the Sierra Club, Ms. Bird, that matter is

15   --

16         MS. BIRD:  Yes, Your Honor.

17         THE COURT:  -- does not -- I mean, the motion for

18   2004, the motion for reconsideration -- are you making an oral

19   motion that that is not to be decided today, that you seek

20   additional time because it hasn't been noticed for hearing

21   today?

22         MS. BIRD:  Your Honor, the one thing I wanted to add

23   was just that we got information about it being stayed pursuant

24   to an order in the AP just via email correspondence with the

25   Court, so it wasn't anything formal that I ever --

1    THE COURT:  That's nothing.  Well, you know the drill

2  --

3    MS. BIRD:  So --

4    THE COURT:  That doesn't mean anything.

5    MS. BIRD:  Right, Your Honor, but we had indicated at

6  that time that we wanted to file a reply brief, but we were

7  waiting until the matters were resolved and so we could file

8  the reply brief.  So it's my understanding we still want to

9  file a reply brief.  So I guess my oral motion would be to

10  allow us time, whatever Your Honor would indulge, to file a

11  reply brief in support of the motion.

12    THE COURT:  Ten days for the Sierra Club to file a

13  reply brief, and after that, the Court will take it under

14  submission.  But you know where it's heading.

15    MS. BIRD:  Thank you, Your Honor.

16    THE COURT:  All right.

17    MS. BIRD:  Yes, Your Honor.

18    THE COURT:  Okay.

19    MR. STOSBERG:  Your --

20    THE COURT:  Yes, go ahead.

21    MR. STOSBERG:  Your Honor, it would be helpful -- and

22  I'm sorry, this is Andrew Stosberg for the record.  With the

23  affirmation that discovery is now open, can we have a schedule

24  -- as part of the Court's order, can Your Honor issue its

25  traditional scheduling order for discovery matters?

1          THE COURT:  So --

2          MS. LEONARD:  And Your Honor, this is Danielle

3   Leonard.  Understanding how Your Honor is going to rule today,

4   asking whether the parties will be afforded the opportunity to

5   meet and confer per the rules and present something to the

6   Court with respect to that schedule?

7          THE COURT:  So the Court is going to do a 120-day

8   discovery order, and in that order, direct the parties to

9   complete their requirements under Bankruptcy Rule 7026 and the

10  Federal Rules of Civil Procedure so that you will meet.  And if

11  you come up with a better schedule, and you do it by agreement,

12  then the Court will definitely entertain that.  If not, the

13  Court is going to begin with a 120-day discovery period, and

14  we're going to have a continued telephonic pre-trial conference

15  will be in approximately sixty days.  And so if you have not at

16  that time conferred and come up with an agreement, then the

17  Court is going to find out what the conduct has been, and then

18  either do its own order or encourage the parties to do what it

19  requests in terms of timing, in terms of production of

20  documents, requests for admissions, and interrogatories and any

21  depositions.

22      (Court and clerk confer.)

23          THE COURT:  Can we do March 27th, noon Eastern time,

24  which I guess Pacific time would be 9 a.m.  Is that correct?

25  Everybody good with that?

1          MS. LEONARD:  That is acceptable for the City --

2          MR. STOSBERG:  Yes, Your Honor --

3          MS. LEONARD:  Danielle Leonard for the City.  That is

4    correct, Your Honor, and that is fine for the City.

5          THE COURT:  Okay.

6          MR. LEE:  Barry Lee for ITS.  That works for us.

7          THE COURT:  Okay.  Okay.  Thank you all for your time.

8    You'll get a couple of orders from the Court here before -- I

9    don't know, maybe the end of the day, it may be tomorrow

10   morning, but we'll get you orders on everything that the Court

11   has decided today.

12         All right.  You all have a great day.

13      (Proceedings concluded at 11:50 a.m.)

14

15

16

17              **C E R T I F I C A T I O N**

18         I certify that the foregoing is a correct transcript

19   from the electronic sound recording of the proceedings in the

20   above-entitled matter.

21

22   *Kathleen M. Price*                    DATE:   January 29, 2025

23   Kathleen Price, AAERT Cert. No. 325

24   A&S Transcript Providers

25