# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 3:25-cv-00065 |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*, | Judge Benjamin Beaton |
| Debtors. | |

---

**THE CITY OF OAKLAND'S URGENT SUPPLEMENTAL NOTICE RE: MOTION TO STAY PROCEEDINGS IN THE BANKRUPTCY COURT PENDING THIS COURT'S RESOLUTION OF PENDING MATTERS**

---

## PRELIMINARY STATEMENT

The City of Oakland ("City") moves this Court for urgent relief from proceedings in the Western District of Kentucky Bankruptcy Court (the "Bankruptcy Court") that have veered far beyond that Court's proper jurisdiction by authorizing far-reaching document discovery into the City's financial transactions that have nothing to do with the post-confirmation bankruptcy or the estate of former Debtor Insight Terminal Solutions, LLC ("ITS").

Specifically, on March 12, 2025, the Bankruptcy Court granted ITS's motion to compel Rule 2004 exploratory discovery in a manner divorced from that Court's proper jurisdiction, and provided the City with *two days* (until March 14, 2025) to review thousands of potentially responsive documents (and produce any responsive documents) pertaining to the sale of the Oakland Coliseum, a sports stadium, that has no connection at all to the ITS bankruptcy or estate. The Bankruptcy Court endorsed the theory that the City's finances should be opened up to view by the Debtor and the Bankruptcy Court in the event that the Debtor wins two California state court tort claims brought as a post-confirmation adversary proceeding, a rationale that is contrary to governing law. The City has already filed before this Court matters that are directly impacted by the Bankruptcy Court's action: a pending Motion for Withdrawal of the Reference and Transfer of the California state tort adversary proceeding to the Northern District of California (W.D.K.Y. Case No. 3:25-cv-00023 Dkt. ("MTW Dkt.") ECF 1), a pending Motion for Leave to Appeal from the Rule 2004 Examination Order that is the subject of the urgent Motion to Compel Order (W.D.K.Y. Case No. 3:25-cv-00065 Dkt. ("R2004 Dkt.") ECF 1), and an existing Motion to Stay Proceedings below to allow this Court to rule without interference rendering this Court's rulings moot (MTW Dkt. ECF 3; R2004 Dkt. ECF 4).

1

The City seeks immediate relief in the form of resolution of its pending Motion to Stay in light of the Bankruptcy Court's order compelling production of documents pertaining to the City's financial transactions involving a matter over which the Bankruptcy Court has no jurisdiction at all. That order raises serious federalism concerns, and moves proceedings below at a breakneck pace that subverts this Court's ability to rule on the matters already pending before it. Good cause exists to grant this urgent relief and the Motion to Stay. The Order imposes upon the City the onerous requirement of reviewing several thousand potentially responsive documents related to the sale of the Oakland Coliseum (a transaction with no conceivable relationship to the underlying bankruptcy). The Bankruptcy Court also stated at an in-person emergency hearing—scheduled without prior notice to the City, which the Court held notwithstanding the unavailability of the City's litigation counsel—that *sanctions* would be an appropriate next step if the City could not complete this massive undertaking. And the Bankruptcy Court based its ruling, at least in part, on its wholly improper criticism of the City's *political* judgment with respect to transactions related to sports teams and legislative action with respect to the development of its port. This Court's immediate intervention is necessary to forestall the consequences of the Bankruptcy Court's extra-jurisdictional order, and to give this Court a meaningful opportunity to review the Bankruptcy Court's Rule 2004 order and the City's motion to withdraw and transfer.

The City therefore requests an immediate stay be entered, and is available for a status conference as needed to discuss further scheduling and any hearings in the pending matters before this Court.

## DISCUSSION

As set forth in the City's stay motion and reply brief, the Bankruptcy Court granted ITS's motion for post-confirmation Rule 2004 discovery into the pending sale of the Oakland Coliseum.  MTW Dkt. ECF 3; R2004 Dkt. ECF 4.  Although, as the City has argued in its stay motion and motion for leave to appeal (R2004 Dkt. ECF 1-1 at 4-6; *id.* ECF 4 at 14-15), this order is legally defective, it was at least somewhat narrowly-tailored.

The Bankruptcy Court expressly stated that its Rule 2004 order was limited to information pertaining to whether the sale of the Oakland Coliseum "constitute[s] avoidable post-petition financial transactions under 11 U.S.C. § 549(a)," and "cautioned" it was "not intended for any party to conduct examination of any party" on any other matters.  W.D.K.Y. Bankr. Case No. 19-32231 Dkt. ("Bk. Dkt.") ECF 523 at 6-7.  Section 549(a) is limited to post-petition "transfer[s] of *property of the estate*."  11 U.S.C. § 549(a) (emphasis added).  Rule 2004 is likewise a discovery device that concerns only the "*debtor's* estate," "financial condition," and "acts, conduct, or property."  Fed. R. Bankr. P. 2004(b) (emphasis added).

Despite strenuously disagreeing with the legal justification for the Bankruptcy Court's order, the City studiously complied with it.  The City found no documents that implicated both the Debtor, the Debtor's estate property, and the sale of the Coliseum.  Bk. Dkt. ECF 565 at 3-4.  The City provided ITS with a timely written response.  In further communications, the City shared the criteria that it had used to conduct the search, and noted that if ITS "believe[s] that the City is not correct, and there is some category of responsive documents that involve both the Coliseum and the West Gateway terminal or the ITS Sublease … please do let us know."  Bk. Dkt. ECF 565 at 4.  Dissatisfied with this result, counsel for ITS filed a motion to compel

without completing the meet and confer process, and the Court immediately scheduled an in person hearing without waiting to hear from the City's Counsel.

The City welcomed an expedited hearing (Bk. Dkt. ECF 563), but quickly filed an opposition to the motion, noting that ITS had failed to meet and confer in good faith with the City, and had supplied no basis for its belief that the City was withholding responsive documents. Bk. Dkt. ECF 565 at 5-9; *e.g. Howard v. Onion*, No. 1:20-CV-02802-JG, 2023 WL 4706760, at *3 (N.D. Ohio July 24, 2023) (a "'mere suspicion that the producing party possesses additional information that it has failed to disclose is an insufficient basis for a motion to compel'").

The Bankruptcy Court held an in-person hearing three business days after ITS filed its motion, and granted ITS's motion to compel. Bk. Dkt. ECF 568.[1]  At the hearing, ITS argued that it was entitled to all communications relating to the sale of the Coliseum, without respect to whether they relate to the debtor's property. The Bankruptcy Court acknowledged that its Rule 2004 order had been limited to discovery relating to post-petition transfers under Section 549(a), stated that it would not provide further "elucidation" of that order beyond the four corners of what was written, but then concluded that the order entitled ITS to the broad discovery that it was requesting. The court made no effort to reconcile the narrow scope of its Rule 2004 order with its newfound view that the order somehow licensed broad discovery in matters having no relationship to Section 549(a).

---

[1] Local counsel for the City explained to the Bankruptcy Court that the City's lead litigation counsel was not available for an in person hearing and requested a telephone appearance or hearing on another date. The Court denied that request and dictated that the City can be represented by its local counsel at this hearing, thereby depriving the City of its right to chosen representation. Bk. Dkt. ECF 564. The City had no choice but to proceed with local counsel's appearance.

Finally, the Bankruptcy Court offered an unprompted discursion on the wisdom of the City's policy decision not to allow coal to be shipped into its port. The Court criticized the City, noting that allowing the development of its port would have been a "great economic engine" (the City had taken legislative action to bar the shipment of coal into its port). Declaration of Danielle Leonard ("Leonard Decl."), Ex. F at 25.[2] She went on to endorse the legal claims underlying ITS's related adversary proceeding against the City, noting the regrettable "irony" that the City's failure to allow the development of its port was the reason that ITS went bankrupt. *Id.*

The result of this Order granting the motion to compel is that the City is now expending enormous resources to review as quickly as possible thousands of documents related to the Coliseum deal, and deciding whether they are responsive to the Court's new vision of its Rule 2004 order (which the court declined to "elucidate"), or contain any attorney-client or other privileged matter, all under the looming threat of sanctions. Leonard Decl., Ex. F at 27 (that is "where we're going with this … is a motion for sanctions").

In addition to the document request, ITS also seeks to depose the City regarding these matters, further intruding into the City's affairs that are far beyond the scope of the Bankruptcy Court's jurisdiction. While Rule 2004 may be broadly construed, it does not expand bankruptcy court jurisdiction so far as to include matters that have no connection or relevance to any debtor. This is a politically-motivated attempt to use the bankruptcy court as leverage in a long-standing dispute between a California City and developers in which both sides accuse the other of

---

[2] At the time of this filing, only a partial transcript—covering roughly the first half of the hearing—of the proceedings before the Bankruptcy Court on the motion to compel is available. When the entire transcript becomes available, the City will file it with this Court.

breaching contracts.  That dispute, as the City has fully briefed to this Court, belongs in California.

By interpreting Rule 2004 to apply to discovery with no relationship to the debtor's property (and indeed no conceivable relationship to this post-confirmation bankruptcy), the Bankruptcy Court has clearly exceeded the scope of its jurisdiction.  Rule 2004 itself is limited to matters that actually pertain to the "debtor's estate."  Fed. R. Bankr. P. 2004(b); *supra* 3; *see also In re Defoor Ctr., LLC*, 634 B.R. 630, 632 (Bankr. M.D. Fla. 2021) ("bankruptcy courts should take into consideration their limited 'related-to' post-confirmation jurisdiction: if the matter being investigated under Rule 2004 is one that lies outside the bankruptcy court's jurisdiction, then no cause exists for the Rule 2004 discovery.").  It does not provide free rein to use a bankruptcy court's nationwide jurisdiction to investigate the finances of any entity with which a former debtor has a business dispute, or to interfere with the entirely unrelated financial transactions of state or local government entities.  The Bankruptcy Court's reliance on political considerations and its prejudgment of the merits of ITS's adversary claims is also deeply concerning.  The City requests that this Court act now to implement a brief stay so that the propriety of the Bankruptcy Court's actions can be adjudicated before they inflict irreparable harm on the City.

The City has already briefed the factors pertaining to the overall Stay request, all of which weigh heavily in favor of a stay.  These recent events add to that weight.  The City respectfully requests urgent resolution and relief, either by way of an immediate administrative stay pending resolution of that Stay Motion, or granting that Motion in its entirety.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that this Court grant its motion to stay (1) the adversary proceeding pending this Court's resolution of the City's motion to

6

withdraw the reference and transfer venue, and (2) the Bankruptcy Court's Rule 2004 orders

pending this Court's resolution of the City's appeal from that order, or at a minimum, pending

this Court's resolution of the City's motion to withdraw the reference and transfer venue.

Dated:  March 12, 2025                    By: /s/  *Danielle Leonard*
                                          _____

Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Email:  dleonard@altshulerberzon.com

April A. Wimberg
DENTONS BINGHAM GREENBAUM LLP
3500 PNC Tower, 101 South Fifth Street
Louisville, Kentucky 40202
Phone:  (502) 587-3719
Email:    april.wimberg@dentons.com

Ryan Richardson, City Attorney (SBN 223548)
Maria S. Bee, Chief Asst City Attorney
(SBN 167716)
Kevin McLaughlin, Supervising Deputy City
Attorney (SBN 251477)
THE CITY OF OAKLAND
One Frank Ogawa Plaza, 6th Floor
Oakland, California 94612
Phone:    (510) 238-3601
Email:    rrichardson@oaklandcityattorney.org
          mbee@oaklandcityattorney.org
          kmclaughlin@oaklandcityattorney.org

Attorneys for Defendant,
CITY OF OAKLAND

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served electronically upon all parties in the electronic filing system.

Dated:  March 12, 2025          By: _/s/ Danielle Leonard_____
                                      Danielle Leonard

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

|  |  |
|---|---|
| In re:<br><br>INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*,<br><br>Debtors. | Case No. 3:25-cv-00065<br><br>Judge Benjamin Beaton |

**DECLARATION OF DANIELLE LEONARD IN SUPPORT OF THE CITY OF OAKLAND'S URGENT SUPPLEMENTAL NOTICE RE: MOTION TO STAY PROCEEDINGS IN THE BANKRUPTCY COURT PENDING THIS COURT'S RESOLUTION OF PENDING MATTERS**

I, Danielle Leonard, declare as follows:

1.    I am a member in good standing of the bar of the State of California, a partner at the law firm Altshuler Berzon LLP, and counsel of record for the City of Oakland ("City") in this matter.  The contents of this declaration are based on my personal knowledge, and if called to testify I would competently testify thereto.

2.    I provide this declaration in support of the City's Urgent Supplemental Notice Re: Motion To Stay Proceedings In The Bankruptcy Court Pending This Court's Resolution Of Pending Matters.

3.    On August 26, 2024, the United States Bankruptcy Court for the Western District of Kentucky granted Insight Terminal Solutions LLC's ("ITS") motion for Rule 2004 discovery.  W.D.K.Y. Bankr. Case No. 19-32231 Dkt. ("Bk. Dkt.") ECF 523.  A true and correct copy of that order is attached hereto as **Exhibit A**.

4.    On March 6, 2025, ITS filed a motion to compel the production of documents covered by the Bankruptcy Court's Rule 2004 order, and filed a motion requesting an expedited hearing.  Bk. Dkt. ECF 560, 561.  A true and correct copy of those motions are attached hereto as **Exhibit B**.

5.    On March 7, 2025, before the City had an opportunity to respond, the Bankruptcy Court granted ITS's motion for an expedited hearing, setting an in-person hearing for March 11, 2025.  Bk. Dkt. ECF 562.  A true and correct copy of that order is attached hereto as **Exhibit C**.

6.    On March 10, 2025, the City filed an objection to ITS's motion to compel Rule 2004 discovery.  Bk. Dkt. ECF 565.  A true and correct copy of that objection is attached hereto as **Exhibit D**.

7.   On March 12, 2025, the Bankruptcy Court entered an order granting ITS's motion to compel Rule 2004 discovery. Bk. Dkt. 568. A true and correct copy of that order is attached hereto as **Exhibit E**.

8.   On March 11, 2025, the Bankruptcy Court held an in-person hearing on ITS's motion to compel Rule 2004 discovery.  At the time of this filing, only a partial transcript (covering roughly the first half of the proceedings) is available. A true and correct copy of that partial hearing transcript is attached hereto as **Exhibit F**.  When the full transcript becomes available, the City will file it with this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of March, 2025 in San Francisco, California.

*/s/ Danielle Leonard*

Danielle Leonard

Altshuler Berzon LLP

EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

IN RE:  )
         )
INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*  )     CASE NO. 19-32231(1)(11)
         )              (Jointly Administered)
         )
_____ Debtors  )

## MEMORANDUM-OPINION

This matter is before the Court on the Motion by the Reorganized Debtor for a Rule 2004 Examination of the City of Oakland, filed by Debtor Insight Terminal Solutions, LLC (referred to herein as "Debtor").  For the following reasons, the Court will enter the attached Order granting the Motion by the Reorganized Debtor for Rule 2004 Examination of the City of Oakland.

## PROCEDURAL BACKGROUND

On July 17, 2019, Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code in the Western District of Kentucky.

On April 27, 2020, Autumn Wind Lending, LLC filed its Chapter 11 Plan of Reorganization for the Bankruptcy Estate of Debtor.

On May 26, 2020, Debtor filed its Chapter 11 Plan.

On July 19, 2020, Debtor filed its First Amended Chapter 11 Plan.

On November 3, 2020, following a hearing before this Court, Debtor withdrew its Amended Chapter 11 Plan and the Court entered an Order of Confirmation of the Amended Plan of Creditor Autumn Wind Lending, LLC.

On March 11, 2024, Debtor filed Adversary Proceeding No. 24-03007 against the City of Oakland ("City") asserting claims against the City for monetary damages that it claimed were caused by the City's interference with Debtor's third-party contracts pertaining to the construction of a proposed rail to ship terminal. Debtor asserts that the City's actions caused Debtor's bankruptcy filing and that its actions interfered with Debtor's third party contracts resulting in monetary losses of no less than $1 billion.

On April 22, 2024, in this case, Debtor filed a Motion for a Rule 2004 Examination of a Sierra Club representative.

On April 26, 2024, in this case, this Court entered an Order granting Debtor's Motion for a Rule 2004 Examination of a Sierra Club representative.

On July 3, 2024, Debtor filed a Motion for a Rule 2004 Examination of the City of Oakland.

On May 24, 2024, the Sierra Club filed a Motion to Set Aside the Order Granting the Motion of the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club.

On July 5, 2024, the City of Oakland filed an Objection to Debtor's Motion for a Rule 2004 Examination of the City of Oakland.

On July 11, 2024, the Court held a hearing on Debtor's Motion for a Rule 2004 Examination of the City of Oakland and Debtor's Motion for a Rule 2004 Examination of a Sierra Club representative. Following the hearing, the Court took both matters under submission.

## <u>LEGAL ANALYSIS</u>

Debtor seeks an order from this Court to allow it to conduct a Rule 2004 Examination of the City of Oakland. Debtor states that the scope of the examination will be limited to its purpose which

is to investigate the City's material transactions, such as the contemplated sale of the Oakland Coliseum. Debtor contends the City's actions warrant investigation of the "questionable" transactions "to determine whether they may constitute avoidable post-petition financial transactions under § 549(a) of the United States Bankruptcy Code." *See* Paragraph 21 of Debtor's Motion for a Rule 2004 Examination.

The City of Oakland objects to Debtor's Motion for a Rule 2004 Examination based on the fact that there is a pending Adversary Proceeding filed by Debtor against the City, A.P. No. 24-03007. The City was never a creditor of Debtor and no claims were ever raised by Debtor in its Chapter 11 case against the City of Oakland. The current Adversary Proceeding filed by Debtor against the City is based on two California business tort allegations which Debtor asserts caused Debtor's bankruptcy. The City has a pending Motion to Dismiss Debtor's Adversary Proceeding for lack of jurisdiction by this Court over any post-confirmation efforts by Debtor to bring California tort claims against a California city in this Court.

The City of Oakland also objects to Debtor's use of a Rule 2004 Motion in this case for discovery into the City's finances, including the proposed transaction related to the Oakland-Alameda County Coliseum Complex. The City contends these transactions have nothing to do with the Debtor's bankruptcy case or its Plan and that this Court "lacks jurisdiction to grant this frivolous request for many other reasons."

Although this Chapter 11 proceeding was initiated in 2019 and the Plan confirmed in 2020, Debtor's case remains active before this Court and this Court has continuing jurisdiction over the matter. A review of the Autumn Wind Lending, LLC's Chapter 11 Plan of Reorganization for the Bankruptcy Estate of Debtor Insight Terminal Solutions, LLC Pursuant to Bankruptcy Code Section

1121(c)(2) ("the Plan"), sets forth the terms of this Court's post-confirmation jurisdiction. Paragraph

2 under Article IX of the Miscellaneous Plan Provisions specifically provides that this Court retains

jurisdiction to:

> adjudicate any and all adversary proceedings, applications, and contested matters that may
> be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the
> subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings
> to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from
> or relating to any of the foregoing;

Debtor states that the City of Oakland is a "contingent debtor" of Debtor.  Debtor wants to

investigate matters that it contends are improper financial transactions that could constitute post-

petition transactions avoidable under 11 U.S.C. § 549(a) of the Bankruptcy Code.  This Court retains

jurisdiction under the terms of the Debtor's confirmed Plan to "hear any other matter not inconsistent

with the Bankruptcy Code;" *See* Paragraph 12, under Article IX(A) of the Miscellaneous Plan

Provisions.  Good cause exists for the a Rule 2004 Examination request, "for the purpose of further

investigating the City's material transactions such as the Coliseum Transaction described *supra* to

determine whether they may constitute avoidable post-petition financial transactions under § 549(a)

of the Bankruptcy Code."  *See* Paragraph 21 of Debtor's Brief.

Regardless of the terms in the confirmed Plan on post-confirmation jurisdiction, the source

of any bankruptcy Court's jurisdiction derives from 28 U.S.C. §§ 1334 and 157.  In order to

determine whether a matter is within a bankruptcy court's jurisdiction, "it is necessary only to

determine a matter is at least "related to" the bankruptcy. *In re Wolverine Radio Co.*, 930 F.2d 1132,

1141 (6th Cir. 1991).  It is well established that this Court's subject matter jurisdiction derives from

28 U.S.C. § 1334, and not necessarily from the terms of a confirmed plan. *In re Resorts Int'l., Inc.*,

372 F.3d 154, 161 (3d Cir. 2004).  The Court determines that the matters to be covered in the Rule

2004 Examination are related to this bankruptcy case and are relevant to the execution of the confirmed Plan.

Debtor states that its request for a Rule 2004 Examination is "limited in scope" and "will merely focus on the City's post-petition financial transactions and dealings," not on the "tortious interference claims" asserted against the City of Oakland in Adversary Proceeding No. 24-03007. Debtor claims that cause exists for an order allowing Debtor's Request for Production of Documents under Rule 2004 for the purpose of investigating terms of the Coliseum Transactions with the City of Oakland to see if they constitute avoidable post-petition financial transactions under 11 U.S.C. § 549(a).

In general, Rule 2004 is used primarily to examine individuals who have knowledge of the financial affairs of the debtor in order to preserve rights of creditors. *In re GHR Co. Inc.*, 41 B.R. 655, 660 (Bankr. D. Mass. 1984). However, Rule 2004 Examinations of non-debtor witnesses are allowed where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets. *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984).

In this case, the Debtor seeks a Rule 2004 Examination of the City of Oakland post-confirmation of its Chapter 11 case. While such requests are not routine occurrences in Chapter 11 proceedings, they are not prohibited. The party seeking a grant of Rule 2004 discovery must prove "good cause" for the discovery by showing it is needed to establish a claim or that denial of the request would cause undue hardship. *In re DeFoor Centre, LLC*, 634 B.R. 630, 638 (Bankr. M.D. Fla. 2021). In *DeFoor*, the request for a Rule 2004 Examination was denied because the court

-5-

determined that the debtor would have ample opportunity to conduct discovery once it filed its adversary proceeding.

Unlike the *DeFoor* case, the Debtor herein alleges that the City of Oakland is a contingent debtor of Debtor and that the City is engaging in "questionable," and "improper financial dealings" that warrant investigation. It further sets forth those actions of the City regarding the possible sale of one of the City's biggest assets, the City's undivided 50% interest in the real property where the Oakland Coliseum is located.

The scope of a Rule 2004 Examination is broad. The Rule is substantially a pre-litigation device for assessing whether grounds exists to commence an action. *Handy Andy Improvement Ctrs. Inc.*, 199 B.R. 376, 379 (Bankr. N.D. Ill. 1996). The Debtor's request herein is well within the limits of Rule 2004 as pre-litigation strategy for determining whether grounds exists for it to bring an action against the City of Oakland.

Unlike discovery under Fed. R. Civ. 26(b)(1), inquiries under Rule 2004 need only be relevant to the "acts, conduct, or property or to the liability and financial condition of the debtor, or to any matter which affects the administration of the debtor's estate." *In re Velsicol Chemical LLC*, 2024 WL765083 (Bankr. N.D. Ill. 2024). In *Velsicol*, the court stated that a motion for leave to take a Rule 2004 Examination is not the time for the court to take a deep dive into the documents supporting the request or for the court to consider whose explanations of the documents are more plausible. Similarly, this Court need not make such a deep dive into the reasoning for Debtor's request for the City's Rule 2004 Examination.

Debtor has established that the reason for the Rule 2004 Examination is to determine whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition

transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code.  The parties herein, however, are cautioned that this Court's Order allowing the requested Rule 2004 Examination of the City of Oakland is not intended for any party to conduct examination of any party related to the matters outside those in the Debtor's Motion for the Rule 2004 Examination.  Any discovery attempts regarding those matters set forth in the pending Adversary Proceeding, A.P. No. 24-03007 are not within the scope of this Order.

## CONCLUSION

For all of the above reasons, the Court will **GRANT** the Motion of the Reorganized Debtor for a 2004 Examination of the City of Oakland.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: August 26, 2024

-7-

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

IN RE:                                                   )
                                                         )
INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*   )            CASE NO. 19-32231(1)(11)
                                                         )            (Jointly Administered)
                                                         )
_____Debtors___   )

## ORDER

This matter having come before the Court on the Motion by Reorganized Debtor Insight

Terminal Solutions, LLC for a Rule 2004 Examination of the City of Oakland, and the Court having

reviewed the Motion of the Debtor, the Objection to the Debtor's Motion filed by the City of

Oakland, and the comments of counsel at the hearing held on the matter, and the Court being duly

advised in the premises,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motion of the

Reorganized Debtor, Insight Terminal Solutions, LLC for a Rule 2004 Examination of the City of

Oakland, be and hereby is, **GRANTED**.

So ordered this 26th day of August, 2024.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: August 26, 2024

EXHIBIT B

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 19-32231 |
| INSIGHT TERMINAL SOLUTIONS, LLC *et al.* | Judge Joan A. Lloyd<br>Chapter 11 |
| Debtors | |

**MOTION TO COMPEL CITY OF OAKLAND TO COMPLY
WITH THE COURT'S ORDER GRANTING RULE 2004 MOTION**

Comes now Insight Terminal Solutions, LLC ("ITS"), the reorganized debtor in the above-captioned jointly administered chapter 11 cases, by and through its counsel, and hereby moves this Court for entry of an order compelling the City of Oakland (the "City") to comply with this Court's Memorandum-Opinion and Order [Bankr. Doc. 523] (the "Rule 2004 Order") and produce documents responsive to ITS's discovery requests.  In further support, ITS states as follows:

**PRELIMINARY STATEMENT**

On July 11, 2024, this Court issued the Rule 2004 Order granting the Motion for a Rule 2004 Examination of the City [Bank. Doc. 508] (the "Rule 2004 Motion"), over the City's opposition.  Despite its obligation, commitment, and agreement to produce responsive document to ITS, the City has blatantly flouted the Rule 2004 Order and has failed to produce any documents to ITS.  The City's actions are in bad faith and they cannot be allowed to ignore this Court's Order.

The Rule 2004 Order was entered more than seven months ago.  In the intervening period, the City attempted to forestall ITS's examination by, among other things, filing a Motion for Reconsideration and Relief from Order Granting Rule 2004 Motion for Examination of City of

1

Oakland, or in the alternative, to Stay That Order [Bank. Doc. 525] (the "<u>Motion for Reconsideration</u>"), which this Court denied by its Order dated January 29, 2025 [Bank. Doc. 548] (the "<u>Order Denying Reconsideration</u>").  In addition, the City filed a Notice of Appeal of Orders Granting Rule 2004 Discovery from Adversary Defendant City of Oakland and Denying the City's Motion for Reconsideration [Bank. Doc. 551] and a corresponding Motion for Leave to File Appeal of Orders [Bank. Doc. 552] (the "<u>Motion for Leave to Appeal</u>").  Despite those filings, there is no doubt that the Rule 2004 Order is not stayed and the City remains obligated to comply with the Rule 2004 Order.  Accordingly, this Court should immediately compel the City to comply with the Rule 2004 Order and establish a short deadline by when the City must produce documents responsive to ITS's discovery requests.

## **BACKGROUND**

1.    On July 3, 2024, ITS filed the Rule 2004 Motion.  On July 5, 2024, the City filed its Preliminary Opposition to the Rule 2004 Motion [Bank. Doc. 509].  After a hearing on July 11, 2024, the Bankruptcy Court issued the Rule 2004 Order, setting forth multiple reasons for why the City, as an alleged contingent debtor of ITS, is required to comply with the Rule 2004 Motion.

2.    On August 29, 2024, the City filed its Motion for Reconsideration.  On September 9, 2024, ITS filed its Objection to the Motion for Reconsideration [Bank. Doc. 528].  On January 29, 2025, the Bankruptcy Court entered the Order Denying Reconsideration.

3.    On January 31, 2025, the City filed its Motion for Leave to Appeal.  In the Motion for Leave to Appeal, the City asks for leave to file an interlocutory appeal of the Bankruptcy Court's Rule 2004 Order and the Order Denying Reconsideration.  On February 24, 2025, ITS filed its Objection to Defendant City of Oakland's Motion for Leave to File Appeal of Orders Granting Rule 2004 Motion for Examination of City of Oakland and Denying Motion for

Reconsideration [Bank. Doc. 558]. The Motion for Leave to Appeal remains pending. However, the Rule 2004 Order has not been stayed and remains binding and enforceable against the City.

### REQUEST AND BASIS FOR RELIEF

4.      As this Court found in the Rule 2004 Order, ITS has satisfied its burden for seeking discovery from the City. In particular, ITS "established that the reason for the Rule 2004 Examination is to determine whether the City's transactions with respect to the [Oakland] Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code." Rule 2004 Order, p.6-7. The Court reiterated the broad nature of Rule 2004 examinations: "Unlike discovery under Fed. R. Civ. 26(b)(1), inquiries under Rule 2004 need only be relevant to the 'acts, conduct, or property or to the liability and financial condition of the debtor, or to any matter which affects the administration of the debtor's estate.'" Rule 2004 Order, p. 6 (*quoting In re Velsicol Chemical LLC*, 2024 WL 765083 (Bankr. N.D. Ill. 2024)).

5.      After entry of the 2004 Order, the City attempted to derail ITS's efforts to diligently investigate and research the City's activities relating to its potential insolvency by, among other things, filing the Motion for Reconsideration, which as discussed above, this Court denied. One of the arguments raised by the City in the Motion for Reconsideration was that Section 549(a) of the Bankruptcy Code would be inapplicable. In response to that argument, ITS clarified its position and noted that if Section 549(a) does not apply, then Section 549(a)'s state law sibling, the Uniform Voidable Transactions Act as adopted in California, would apply to City transfers of assets. (*See* Objection to Rule 2004 Motion, p. 5); *see generally* Cal. Civ. Code § 3439.01, *et seq.* Moreover, the City's argument is a red herring, as neither the Rule 2004 Motion nor the reasoning in the Court's Opinion was solely reliant on the application of Section 549(a). For example, "good

cause" can be shown to grant Rule 2004 discovery where a denial of the request would cause undue hardship. (*See* Opinion, p. 5). As extensively briefed by ITS and argued at the July 11, 2004 hearing before this Court, denial of its Rule 2004 Motion would have caused extensive hardship in the form of, among other things, a complete dissipation of assets. (*See* Objection to Rule 2004 Order, p. 5).

6. Following entry of the Order Denying Reconsideration, counsel for ITS and counsel for the City had a "meet and confer" on February 4, 2025 (the "Meet and Confer"). Thereafter, counsel for ITS and counsel for the City exchanged emails memorializing the terms of the agreements and/or understanding as to how the parties would proceed on February 6, 2025 (the "E-mail Exchange"). A true and correct copy of the E-mail Exchange is attached hereto as **Exhibit A**.

**7.** During the Meet and Confer, counsel for the City agreed to, among other things, provide ITS with responsive documents to the Rule 2004 Order on or before March 4, 2025. In the E-mail Exchange, the City "offered to respond to the document requests contained in the Rule 2004 motion in 30 days, by March 4." A strained reading of the E-mail Exchange may be interpreted as the City agreeing to "respond," but not to "produce" documents. However, the City acknowledged that ITS wanted two weeks to review the responsive documents prior to deposing the City's witness between March 18 and March 21, 2025. The City agreed to check the availability of the witness during those days. Additionally, the City even requested a month (as compared to the two weeks requested by ITS) based on its representation that it needed additional time to compile responsive documents. At no time did the City suggest that it would not produce documents on or before March 4 and had ITS known that this would be the response from the City, ITS would not have agreed to the two week extension to respond. Consequently, consistent with

the Meet and Confer and the E-mail Exchange, ITS understood and anticipated that the City would produce responsive documents on or before March 4, 2025.

8.      On March 4, 2025, the City did not produce any responsive documents.  Instead, it delivered its Response to Debtor ITS'S Rule 2004 Request for Production (the "<u>Discovery Response</u>").  A true and correct copy of the Discovery Response is attached hereto as **Exhibit B**.  The Discovery Response amounts to nothing more than an objection to all of ITS's discovery requests.  The City would have ITS (and this Court) believe that either (1) it has no documents responsive to ITS's discovery request or (2) the Rule 2004 Order precludes the production of any such documents.  That just cannot be.  Otherwise, the City would not have expended so much time and resources contesting ITS's discovery, including filing an appeal of the Rule 2004 Order.  Given this Court's Rule 2004 Order and its finding that ITS is entitled to discovery from the City, the Discovery Response is wholly inappropriate, inadequate, and flies in the face of fairness and dealing in good faith.

9.      ITS respectfully submits that the Discovery Response is simply the City's latest attempt to forestall ITS' investigation.  This Court should not tolerate the City's continued bad faith actions and gamesmanship and, to remediate this improper conduct, should compel the City to immediately comply with the Rule 2004 Order by providing responsive documents on or before Friday March 14, 2025.  *See In re Harang*, 634 B.R. 731, 736 (6th Cir. B.A.P. 2021) (noting that court may impose sanctions for "discovery misconduct").

## <u>CONCLUSION</u>

**WHEREFORE**, for the reasons set forth above, ITS respectfully requests that this Court enter an order compelling the City of Oakland to comply with this Court's Memorandum-Opinion

and Order [Bankr. Doc. 523] (the "Rule 2004 Order") and produce documents responsive to ITS's

discovery requests no later than Friday, March 14, 2025.

[*Signature page to immediately follow.*]

Respectfully submitted,

/s/ Robert M. Hirsh
Robert M. Hirsh
NORTON ROSE FULLBRIGHT US, LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3400
Robert.hirsh@nortonrosefullbright.com
COUNSEL FOR INSIGHT TERMINAL
SOLUTIONS, LLC


/s/ Barry W. Lee
Barry E. Lee
MANATT PHELPS & PHILLIPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, California 94111
Telephone: (415) 291-7450
bwlee@manatt.com
COUNSEL FOR INSIGHT TERMINAL
SOLUTIONS, LLC


/s/ Skyler M. Sanders
Skyler M. Sanders
PARSONS BEHLE & LATIMER
36 Professional Plaza, Ste. 220
Rexburg, Idaho 83440
Telephone: (208) 557-1953
ssanders@parsonsbehle.com
COUNSEL FOR INSIGHT TERMINAL
SOLUTIONS, LLC

-and-

/s/ Andrew D. Stosberg
Andrew D. Stosberg
GRAY ICE HIGDON, PLLC
3939 Shelbyville Road, Suite 201
Louisville, Kentucky 40207
Telephone: (502) 625-2734
astosberg@grayice.com
COUNSEL FOR INSIGHT TERMINAL
SOLUTIONS, LLC

<u>**CERTIFICATE OF SERVICE**</u>

It is hereby certified that on March 6, 2025 a true and correct copy of the foregoing was served electronically through the Court's CM/ECF system to all parties having entered an appearance in this proceeding.


/s/ *Andrew D. Stosberg*
COUNSEL FOR COUNSEL FOR
INSIGHT TERMINAL SOLUTIONS, LLC

# Exhibit A

| | |
|---|---|
| **From:** | Danielle Leonard <dleonard@altshulerberzon.com> |
| **Sent:** | Thursday, February 6, 2025 5:28 PM |
| **To:** | Lee, Barry |
| **Cc:** | Skyler Sanders, Esq. (SSanders@parsonsbehle.com); Andrew Stosberg; robert.hirsh@nortonrosefulbright.com; Wimberg, April A.; Jewett Brewster, Monique D.; Max Carter-Oberstone; Colin Jones |
| **Subject:** | RE: ITS v. City |

**[CAUTION- EXTERNAL EMAIL]**: DO NOT reply, click links, or open attachments unless you have verified the sender and know the content is safe.

Counsel-

Thank you for providing the summary, although a few proposals are presented as agreements, so we have clarified our understanding of the call below:

(1) Rule 2004 Order

    **a.** City will provide to ITS responsive documents to the 2004 Order on or before March 4, 2025. **The City offered to respond to the document requests contained in the Rule 2004 motion in 30 days, by March 4.**

    **b.** Notwithstanding the above, Counsel for the City will ask the City if documents can be produced earlier than March 4, 2025**. We agreed to ask our client if they can respond earlier. We will respond shortly re: this request.**

    c. Examination of the Rule 2004 witness will take place at Manatt's office in San Francisco on a date(s) between March 18, 2025, and March 21, 2025. **We confirmed by discussion that you still wished to have two weeks to review any documents prior to the Rule 2004 examination, we all confirmed that March 18 to 21 would work for counsel, and we agreed to check availability with the City's witness during that time. We will respond shortly re: available dates.**

(2) Adversarial Proceeding

    a. Discovery - Generally.

        i. Discovery is currently open.

        ii. The parties agree to comply with Judge Lloyd's order to have discovery completed within 120 days from the January 31, 2025 order. **The City is not going to propose to Judge Lloyd that the 120-day period be changed; ITS agreed it was also not going to make such a request. All of this is subject to a ruling on the City's pending motion for a stay in the District Court, of which you are presumably aware.**

        iii. Discovery cutoff date is Friday, May 30, 2025.

        iv. Initial disclosures (excluding expert reports/depositions but including identification of potential experts) are due on February 18, 2025. **Both sides agreed to comply with the Rule 26 initial disclosures within 14 days, which is Feb. 18.**

    b. Experts

    i. Plaintiff's expert(s) report will be provided to Defendant on or before April 18, 2025. Defendant will take the deposition of Plaintiff's expert(s) within thirty (30) days of receipt of Plaintiff's expert(s) report. **We agreed that Plaintiff's expert reports and supporting documents would be served by April 18. Defendant would depose Plaintiffs' expert with sufficient time to prepare a responsive report.**

    ii. Defendant's expert's responsive report (if any) will be provided to Plaintiff on or before May 19, 2025. **Report (if any) and supporting materials, served by May 19.**

    iii. Plaintiff will take the deposition of Defendant's expert on or before the discovery cutoff date.

c. Depositions

    i. Each of Plaintiff and Defendant plan on conducting approximately 5 depositions and one 30(b) 6 representative. **The City provided an initial estimate, subject to change, not a plan.**

    ii. The parties will meet and confer prior to serving deposition notices in an effort to agree on mutually acceptable dates for the depositions.

    iii. Except for depositions of third-parties where documents are not requested, depositions will be conducted after documents have been produced.

d. Protective Order

    i. Plaintiff to provide Defendant with a proposed protective order.

e. Document Production

    i. No entity (including City/ITS/OBOT/OGRE/CCIG) that produced documents during the OBOT/OGRE v. City matter in response to a production request/subpoena needs to reproduce the same documents in the adversary proceeding.

    ii. Plaintiff has requested that documents produced during the federal lawsuit between OBOT and the City be produced if requested by Plaintiff to the extent responsive to the production request. **The City is considering this request and will respond.**

    iii. To the extent relevant, prior testimony and admitted exhibits used during the OBOT/OGRE v. City trial may be used by the parties in this matter. **This was Plaintiff's proposal, not an agreement. The City is considering this request and will respond.**

Danielle Leonard
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
(415) 421-7151
Pronouns: she/her

**ALTSHULER BERZON** LLP

*This email message and any attached documentation are for the sole use of the intended recipient(s) and may contain privileged or otherwise confidential information. If the reader or recipient of this communication is not the intended recipient or someone authorized to receive the message for the intended recipient, please notify the sender immediately by reply email or telephone, and delete the original communication and any attached documentation without copying or disclosing the contents. Any unauthorized review, use, copying, disclosure, or distribution of this communication and any attached documentation is strictly prohibited. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. Any advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, as tax advice. Issues regarding taxation or tax law should be referred to the intended recipient's tax advisor.*

---

**From:** Lee, Barry <BWLee@manatt.com>
**Sent:** Thursday, February 6, 2025 1:45 PM
**To:** Danielle Leonard <dleonard@altshulerberzon.com>; Max Carter-Oberstone <mcarteroberstone@altshulerberzon.com>; Colin Jones <cjones@altshulerberzon.com>
**Cc:** Lee, Barry <BWLee@manatt.com>; Skyler Sanders, Esq. (SSanders@parsonsbehle.com) <SSanders@parsonsbehle.com>; Andrew Stosberg <astosberg@grayice.com>; robert.hirsh@nortonrosefulbright.com
**Subject:** ITS v. City

Counsel—after reviewing our notes, we summarize our 2/4/2025 meet and confer as follows:

(1) Rule 2004 Order
    a. City will provide to ITS responsive documents to the 2004 Order on or before March 4, 2025.
    b. Notwithstanding the above, Counsel for the City will ask the City if documents can be produced earlier than March 4, 2025.
    c. Examination of the Rule 2004 witness will take place at Manatt's office in San Francisco on a date(s) between March 18, 2025, and March 21, 2025.

(2) Adversarial Proceeding
    a. Discovery - Generally.
        i. Discovery is currently open.
        ii. The parties agree to comply with Judge Lloyd's order to have discovery completed within 120 days from the January 31, 2025 order.
        iii. Discovery cutoff date is Friday, May 30, 2025.
        iv. Initial disclosures (excluding expert reports/depositions but including identification of potential experts) are due on February 18, 2025.
    b. Experts
        i. Plaintiff's expert(s) report will be provided to Defendant on or before April 18, 2025. Defendant will take the deposition of Plaintiff's expert(s) within thirty (30) days of receipt of Plaintiff's expert(s) report.
        ii. Defendant's expert's responsive report (if any) will be provided to Plaintiff on or before May 19, 2025.
        iii. Plaintiff will take the deposition of Defendant's expert on or before the discovery cutoff date.
    c. Depositions
        i. Each of Plaintiff and Defendant plan on conducting approximately 5 depositions and one 30(b) 6 representative.
        ii. The parties will meet and confer prior to serving deposition notices in an effort to agree on mutually acceptable dates for the depositions.

      iii. Except for depositions of third-parties where documents are not requested, depositions will be conducted after documents have been produced.

d. Protective Order

      i. Plaintiff to provide Defendant with a proposed protective order.

e. Document Production

      i. No entity (including City/ITS/OBOT/OGRE/CCIG) that produced documents during the OBOT/OGRE v. City matter in response to a production request/subpoena needs to reproduce the same documents in the adversary proceeding.

      ii. Plaintiff has requested that documents produced during the federal lawsuit between OBOT and the City be produced if requested by Plaintiff to the extent responsive to the production request.

      iii. To the extent relevant, prior testimony and admitted exhibits used during the OBOT/OGRE v. City trial may be used by the parties in this matter.

**Barry W. Lee**
Partner

**Manatt, Phelps & Phillips,** LLP
One Embarcadero Center
30th Floor
San Francisco, CA 94111
**D** (415) 291-7450 **F** (415) 291-7519
BWLee@manatt.com

manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

# Exhibit B

# UNITED STATES BANKRUPTCY COURT

# WESTERN DISTRICT OF KENTUCKY

# LOUISVILLE DIVISION

| | |
|---|---|
| In re:<br><br>INSIGHT TERMINAL SOLUTIONS, LLC, *et al*.<br><br>Debtors. | Chapter 11<br><br>Case No. 19-32231<br><br>(Jointly Administered)<br><br><br>Judge Joan A. Lloyd |

## CITY OF OAKLAND'S RESPONSE TO DEBTOR ITS'S

## RULE 2004 REQUEST FOR PRODUCTION

Defendant City of Oakland, by and through counsel, hereby provides the following written response to Debtor Insight Terminal Solution, LLC's Rule 2004 Request for Documents (ECF 508), as granted by the Western District of Kentucky Bankruptcy Court (ECF 523) ("Requests").

## PRELIMINARY STATEMENT

1.      These responses reflect the results of the City's diligent and reasonable efforts to respond to ITS's Requests, based on the investigation the City has thus far been able to conduct. The City provides the following responses without prejudice to the City's right to amend, modify or supplement these responses and/or assert additional objections as this litigation continues and as additional information becomes available to it, while denying any obligation to do so.

2.      By providing these responses, the City does not waive: (1) any objections as to the admissibility of, competency of, relevancy of, materiality of, or privilege attaching to any documents provided; or (2) the right to object to other discovery requests or undertakings involving or relating to the subject matter of the Requests herein.  An objection or answer in response to these Requests in no way constitutes or should be construed as an admission with respect to the relevance or admissibility of any document.

## GENERAL AND CONTINUING OBJECTIONS

3.      The City objects to the subject matter jurisdiction of this Court over the related Adversary Proceeding filed by ITS against the City, and makes this response subject to and without waiving that objection.  The City objects to this Rule 2004 Request for all the reasons set forth in the City's prior Motion for Reconsideration and Motion for Leave to Appeal, currently pending with the U.S. District Court for the Western District of Kentucky, and makes this response subject to and without waiving those objections.

4.      The City objects to the Requests as not relevant to any issue within the scope of bankruptcy jurisdiction.

5.      The City objects to the Requests as unduly burdensome to the extent that it calls for information that is available to the general public and therefore equally available to ITS and its counsel.

6.      The City objects to the Requests to the extent that they calls for any privileged information that is protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine, or any other lawfully recognized privilege or immunity from disclosure.

7.      The City objects to the Requests to the extent they call for any privileged information that is protected from disclosure under the executive privilege, official information privilege, deliberative process privilege, or any other related lawfully recognized privilege or immunity from disclosure.

8.      The City objects to the Requests and Instructions to the extent they impose obligations inconsistent with and that go beyond the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

## RULE 2004 DOCUMENT REQUESTS

**REQUEST NO. 1:**

All Documents in your possession—including, but not limited to, all Communications and Contracts—with AASEG relating to the Coliseum.

**RESPONSE TO REQUEST NO. 1:**

Subject to and incorporating the foregoing General Objections, the City responds as follows:

The Western District of Kentucky Bankruptcy Court Memorandum-Opinion granting Debtor ITS's Rule 2004 Motion states the following:

Debtor has established that the reason for the Rule 2004 Examination is to determine whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code. The parties herein, however, are cautioned that this Court's Order allowing the requested Rule 2004 Examination of the City of Oakland is not intended for any party to conduct

examination of any party related to the matters outside those in the Debtor's Motion for the Rule 2004 Examination. Any discovery attempts regarding those matters set forth in the pending Adversary Proceeding, A.P. No. 24-03007 are not within the scope of this Order.

ECF 508 at 6-7.  The City therefore further objects to this Request to the extent that it calls for documents that are not relevant to the determination of "whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code."  The Court's order expressly precludes production of testimony and documents that are not relevant to this topic.

> 11 U.S.C. § 549 of the United States Bankruptcy Code states:
> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate— (1) that occurs after the commencement of the case; and (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court.

Upon diligent review of the City's records, there are no documents responsive to this Request that pertain to "a transfer of property of the estate."

Moreover, on February 25, 2025, ITS filed a Notice of Filing of Objection and Debtor's Objection to Defendant City of Oakland's Motion for Leave to File Appeal of Orders Granting Rule 2004 Motion for Examination of City of Oakland and Denying Motion for Reconsideration [ECF 10] in the U.S. District Court for the Western District of Kentucky, Case No. 25-cv-00065. That documents states:

> [T]he Debtor has since clarified that one of the reasons it is seeking its Rule 2004 Examination If not Section 549(a) but instead California's state law sibling to Section 549(a), the Uniform Voidable Transactions Act, Cal. Civ. Code §3439.01, et seq. [citation omitted] Thus, *Section 549(a) is no longer at issue between the parties.*

Id. at ¶16 (emphasis added).  In light of ITS's concession that the subject matter allowed by the Court [ECF 508 at 6-7, quoted above], is "no longer at issue between the parties," the City further objects to this Request in its entirety as not relevant.

## REQUEST NO. 2:

All Documents in your possession evidencing the fair market value of the Coliseum.

## RESPONSE TO REQUEST NO. 2:

Subject to and incorporating the foregoing General Objections, the City responds as

follows:

The City further objects to the terms ""evidencing" and "fair market value" as vague and

ambiguous.

Moreover, the Court's Memorandum-Opinion granting Debtor ITS's Rule 2004 Motion

states the following:

> Debtor has established that the reason for the Rule 2004 Examination is to determine
> whether the City's transactions with respect to the Coliseum may constitute an avoidable
> post-petition transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code.
> The parties herein, however, are cautioned that this Court's Order allowing the requested
> Rule 2004 Examination of the City of Oakland is not intended for any party to conduct
> examination of any party related to the matters outside those in the Debtor's Motion for
> the Rule 2004 Examination. Any discovery attempts regarding those matters set forth in
> the pending Adversary Proceeding, A.P. No. 24-03007 are not within the scope of this
> Order.

ECF 508 at 6-7. The City therefore objects to this Request to the extent that it calls for

documents that are not relevant to the determination of "whether the City's transactions with

respect to the Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. §

549(a) of the United States Bankruptcy Code." The Court's order precludes production of

testimony and documents that are not relevant to this topic.

> 11 U.S.C. § 549 of the United States Bankruptcy Code states:
> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a
> transfer of property of the estate— (1) that occurs after the commencement of the case; and
> (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that
> is not authorized under this title or by the court.

Upon diligent review of the City's records, there are no documents responsive to this Request

that pertain to "a transfer of property of the estate."

Moreover, on February 25, 2025, ITS filed a Notice of Filing of Objection and Debtor's

Objection to Defendant City of Oakland's Motion for Leave to File Appeal of Orders Granting

Rule 2004 Motion for Examination of City of Oakland and Denying Motion for Reconsideration

[ECF 10] in the U.S. District Court for the Western District of Kentucky, Case No. 25-cv-00065.

That documents states:

> [T]he Debtor has since clarified that one of the reasons it is seeking its Rule 2004

> Examination If not Section 549(a) but instead California's state law sibling to Section 549(a), the Uniform Voidable Transactions Act, Cal. Civ. Code §3439.01, et seq. [citation omitted] Thus, *Section 549(a) is no longer at issue between the parties*.

Id. at ¶16 (emphasis added).  In light of ITS's concession that the subject matter allowed by the Court [ECF 508 at 6-7, quoted above], is "no longer at issue between the parties," the City further objects to this Request in its entirety as not relevant.

As to Objections:

Dated:  March 4, 2025                                      By:  */s Danielle Leonard*

                                                          Danielle Leonard (SBN 218201)
                                                          ALTSHULER BERZON LLP
                                                          177 Post St, Suite 300
                                                          San Francisco, CA 94108
                                                          Phone: (415) 421-7151
                                                          Email:
                                                          dleonard@altshulerberzon.com

                                                          April A. Wimberg
                                                          DENTONS BINGHAM GREENBAUM LLP
                                                          3500 PNC Tower, 101 South Fifith Street
                                                          Louisville, Kentucky 40202
                                                          Phone: (502) 587-3719
                                                          Email:
                                                          April.wimberg@dentons.com

                                                          Ryan Richardson, City Attorney (SBN 223548)
                                                          Kevin McLaughlin, Supervising Deputy City Attorney (SBN 251477)
                                                          Maria S. Bee, Chief Asst City Attorney (SBN 167716)
                                                          THE CITY OF OAKLAND
                                                          One Frank Ogawa Plaza, 6th Floor
                                                          Oakland, California 94612
                                                          Phone: (510) 238-3601
                                                          Email: rrichardson@oaklandcityattorney.org
                                                          mbee@oaklandcityattorney.org
                                                          kmclaughlin@oaklandcityattorney.org

                                                          *Attorneys for Defendant*

## PROOF OF SERVICE
Code of Civil Procedure §1013

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within action; my business address is 177 Post Street, Suite 300, San Francisco, California 94108. On March 4, 2025, I served the following documents on the parties, through their attorneys of record, as designated below:

**CITY OF OAKLAND'S RESPONSE TO DEBTOR ITS'S RULE 2004 REQUEST FOR PRODUCTION**

**By Electronic Mail:** I caused such document(s) to be delivered in PDF format by electronically transmitting a PDF version to the email addresses listed in the service list below.

Robert M. Hirsh
NORTON ROSE FULBRIGHT US LLP
Robert.hirsh@nortonrosefulbright.com

*Attorneys for Plaintiff*

Andrew D. Stosberg
GRAY ICE HIGDON, PLLC
astosberg@grayice.com

*Attorneys for Plaintiff*

Barry W. Lee
MANATT, PHELPS & PHILIPS
bwlee@manatt.com

*Attorneys for Plaintiff*

Skyler Matthew Sanders
PARSONS BEHLE & LATIMER
ssanders@parsonsbehle.com

*Attorneys for Plaintiff*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed March 4, 2025, at San Francisco, California.

*/s/ Giorgia Lingiardi*

Giorgia Lingiardi

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC *et al*. | Case No. 19-32231 |
| Debtors | (Jointly Administered) |
| | Judge Joan A. Lloyd |

**MOTION FOR EXPEDITED HEARING ON MOTION TO COMPEL
CITY OF OAKLAND TO COMPLY WITH THE
COURT'S ORDER GRANTING RULE 2004 MOTION**

Comes now the Insight Terminal Solutions, LLC ("ITS"), the reorganized debtor in the above-captioned jointly administered chapter 11 cases, by and through its counsel, and hereby moves the Court for entry of an order scheduling an expedited hearing for the Motion to Compel City of Oakland to Comply with the Court's Order Granting Rule 2004 Motion (the "Motion to Compel") filed by ITS contemporaneously herewith. In support of this Motion, ITS provides as follows:

By this Motion, ITS is asking the Court to hear the Motion to Compel on an expedited basis. Cause exists for an expedited hearing for the Motion to Compel due to the refusal of the City of Oakland (the "City") to comply with this Court's Memorandum-Opinion and Order [Bankr. Doc. 523] (the "Rule 2004 Order"), which was entered more than seven months ago. In the intervening period, the City attempted to forestall ITS's examination by filing a Motion for Reconsideration and Relief from Order Granting Rule 2004 Motion for Examination of City of Oakland, or in the alternative, to Stay That Order [Bank. Doc. 525], which this Court denied by its Order dated January 29, 2025 [Bank. Doc. 548]. In addition, the City filed a Notice of Appeal of

Orders Granting Rule 2004 Discovery from Adversary Defendant City of Oakland and Denying the City's Motion for Reconsideration [Bank. Doc. 551]. Despite those filings, there is no doubt that the Rule 2004 Order is not stayed and the City remains obligated to comply with the Rule 2004 Order. . The City, however, has not produced any responsive documents. Given that ITS intends to proceed with its examination of witnesses between March 18, 2025 and March 21, 2025 (which are dates proposed by the City during a February 4, 2025 conference between counsel for the City and ITS), ITS asserts that the Court's expedited assistance in the form of an order compelling the City to comply with this Court's Rule 2004 Order and set a deadline by which the City must provide ITS with documents responsive to its discovery request would decisively resolve this discover dispute.

WHEREFORE ITS asks the Court to enter the proposed order tendered herewith, which schedules the Motion to Compel to be heard in person on an expedited basis on **Tuesday, March 11, 2025 at 11:00 a.m. Eastern Time** with notice of such hearing to the City's attorneys of record in this proceeding being immediately served electronically through the Court's CM/ECF system.

Respectfully submitted,

*/s/ Robert M. Hirsh*
ROBERT M. HIRSH
NORTON ROSE FULLBRIGHT US, LLP
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6022
TELEPHONE: (212) 318-3400
ROBERT.HIRSH@NORTONROSEFULLBRIGHT.COM
COUNSEL FOR INSIGHT TERMINAL SOLUTIONS, LLC

-and-

/s/ Andrew D. Stosberg
ANDREW D. STOSBERG
GRAY ICE HIGDON, PLLC
3939 Shelbyville Road, Suite 201
Louisville, Kentucky 40207
Telephone: (502) 625-2734
E-mail: astosberg@grayice.com
COUNSEL   FOR   INSIGHT   TERMINAL
SOLUTIONS, LLC

## CERTIFICATE OF SERVICE

It is hereby certified that on March 6, 2025 a copy of the foregoing was transmitted to all counsel who have filed an appearance in the above-captioned adversary proceeding by electronic means through the Bankruptcy Court's CM/ECF system.

/s/ Andrew D. Stosberg
Andrew D. Stosberg
COUNSEL FOR INSIGHT TERMINAL
SOLUTIONS, LLC

EXHIBIT C

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC *et al*. | Case No. 19-32231 |
| Debtors | (Jointly Administered) |
| | Judge Joan A. Lloyd |

**ORDER GRANTING MOTION FOR EXPEDITED HEARING ON MOTION TO COMPEL CITY OF OAKLAND TO COMPLY WITH THE COURT'S ORDER GRANTING RULE 2004 MOTION**

This matter having come before the Court on the Motion for Expedited Hearing on the Motion to Compel City of Oakland to Comply with the Court's Order Granting Rule 2004 Motion (the "Motion for Expedited Hearing") filed by Insight Terminal Solutions, LLC ("ITS"), and the Court having reviewed and considered the Motion for Expedited Hearing and being otherwise sufficiently advised,

IT IS HEREBY ORDERED THAT:

1.       The Motion for Expedited Hearing is GRANTED.

2.       An expedited hearing on the Motion to Compel City of Oakland to Comply with the Court's Order Granting Rule 2004 Motion (the "Motion to Compel") that was filed with the Court on March 5, 205 is scheduled for a hearing before the Court on **Tuesday, March 11, 2025 at 11:00 a.m. Eastern Time in Courtroom #1, 601 W. Broadway, Louisville, Kentucky.** This is an in-person hearing.  No telephonic or video conference appearances are permitted.

Prior to the hearing, counsel for ITS shall file a certificate of service indicating that a copy of the Motion to Compel and this Order have been served on the City of Oakland's counsel of record in this proceeding.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: March 6, 2025

Prepared and submitted by:

*/s/ Andrew D. Stosberg*
Andrew D. Stosberg
GRAY ICE HIGDON, PLLC
3939 Shelbyville Road, Suite 201
Louisville, KY 40207
Telephone: (502) 625-2734
astosberg@grayice.com
COUNSEL FOR INSIGHT TERMINAL SOLUTIONS, LLC

EXHIBIT D

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INSIGHT TERMINAL SOLUTIONS, LLC et al. | ) CASE NO. 19-32231 |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Honorable Judge Joan A. Lloyd |
| | ) |

**DEFENDANT CITY OF OAKLAND'S OBJECTION TO ITS'**
**MOTION TO COMPEL CITY OF OAKLAND TO COMPLY**
**WITH THE COURT'S ORDER GRANTING RULE 2004 MOTION**

The City of Oakland ("Defendant" or "the City"), respectfully provides this objection to Insight Terminal Solutions, LLC ("ITS") *Motion to Compel City of Oakland to Comply with the Court's Order Granting Rule 2004 Motion* (the "Motion") [Dkt. 560]. In support of this Response, the City provides as follows:

**INTRODUCTION**

1.      This Motion pertains to the document request that was attached to ITS's Motion for Rule 2004 Examination. In compliance with the Court's orders, after a thorough and diligent review, the City identified no records showing any conceivable connection between ITS, its estate, and the Coliseum deal – a 2024 sale of a sports stadium.

2.      When ITS objected to the City's response, the City explained ITS of its search and noted that if ITS believed that the scope of the Debtor's post-petition assets for purposes of §549(a) would extend beyond "the West Gateway terminal or the ITS Sublease (which for these purposes, the City will assume is Debtor 'property' notwithstanding our legal dispute as to the validity of that document), please do let us know." *See* **Exhibit A**, Leonard Decl.

3.      The Debtor did not try to make any connection or attempt to respond to this request, instead, that day, filed an emergency motion to require the City to attend a hearing on short notice across the country. [Dkt. 560.] The Debtor did not consult with counsel for the City in advance of filing the request for expedited hearing.  *See* **Exhibit A**, Leonard Decl.

4.      The Debtor's Motion to Compel was filed in bad faith, and should be denied..

## **BACKGROUND**

## I.      **THERE ARE NO DOCUMENTS THAT ARE RESPONSIVE TO THE DEBTOR'S 2004 SUBPEONA OR THAT COULD BE COMPELED FROM THE CITY THAT RELATE TO POST-PETITION TRANSFERS FOR THE DEBTOR.**

5.      The Court granted ITS's Rule 2004 Motion with instructions. [Dkt. 523.] Specifically, the Court noted that the subject matter of examination was limited, and that the examination was not to be used to conduct discovery in the related adversary proceeding against the City (which was already pending at the time this Rule 2004 motion was filed and resolved). *Id*. at 6-7.  ITS did not raise any objection or move for reconsideration with respect to these instructions:

> Debtor has established that the reason for the Rule 2004 Examination is to determine whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code. The parties herein, however, are cautioned that this Court's Order allowing the requested Rule 2004 Examination of the City of Oakland is not intended for any party to conduct examination of any party related to the matters outside those in the Debtor's Motion for the Rule 2004 Examination. Any discovery attempts regarding those matters set forth in the pending Adversary Proceeding, A.P. No. 24-03007 are not within the scope of this Order.

*Id*.

6.      Post-petition transfers are defined by the Bankruptcy Code in section 549:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and
(2)
     (A) that is authorized only under section 303(f) or 542(c) of this title [11 USCS § 303(f) or 542(c)]; or
     (B) that is not authorized under this title or by the court
…………..

(d) An action or proceeding under this section may not be commenced after the earlier of—
     (1) two years after the date of the transfer sought to be avoided; or
     (2) the time the case is closed or dismissed.

11 USC § 549.

7.    The purpose section 549 is to allow trustee to avoid specified postpetition transfers, whether or not they deplete estate; so what matters is not what effect transfer had on estate, but whether debtor transferred property that did not belong to her and without right to do so. *Feldman v. People First Fed. Credit Union (In re White)*, 2019 Bankr. LEXIS 2451 (Bankr. E.D. Pa. Aug. 7, 2019), aff'd, 2020 U.S. Dist. LEXIS 56395 (E.D. Pa. Mar. 31, 2020).

8.    Therefore, in considering the scope of the 2004 Order and section 549, the City looked at what documents it could have would be responsive.  First, the City looked through the prior bankruptcy filings that included the Debtor's schedules, plan of reorganization, monthly operating reports and arguments to better understand what property the Debtor claimed. The City identified the Debtor had limited assets and defined them as the right to construct the West Gateway terminal or the ITS Sublease (which have been defined in related motions).

9.    Additionally, the City reviewed the Debtor's Confirmation Order entered September 10, 2020 [Dkt. 379], that provided that following the Effective Date, the Debtor "may operate its business and use, acquire, and dispose of property and settle and compromise, Claims, Interest, or Litigation Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Rules…" [Dkt. 379, ¶ 11.]

24620804.v3

10.     The City disputes that the West Gateway terminal project or the ITS Sublease are the Debtor's assets (in light of the pending California state court litigation over the City's termination of the underlying Ground Lease); however, for purposes of responding to these Requests, the City accepted Debtor's identification to set the scope.  Because the City had previously moved for reconsideration, which the Court denied on January 28, 2025, the City complied with Court's review of reach.

11.     With these considerations, the City of Oakland diligently complied with this Court's instruction, sought to identify documents that pertained to the transaction identified by Debtor (the sale of a City-owned sports stadium) and the West Gateway project, ITS or the ITS Sublease.  The City responded in writing to ITS's Rule 2004 with both its objections and, notwithstanding those objections, a response explaining that there were no documents with respect to the topic permitted by this Court: "whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a)."

12.     Again, after explaining again that a search for documents connecting the Coliseum deal and ITS turned up no responsive documents, counsel for the City asked "If you believe that the City is not correct, and there is some category of responsive documents that involve both the Coliseum and the West Gateway terminal or the ITS Sublease … please do let us know."  Leonard Decl., Ex. A.

13.     No response was provided.  *Id*.  No meet and confer occurred.  Instead, this emergency Motion to Compel was filed.

## ARGUMENT

## I.    ITS'S MOTION FAILS TO PROVIDE THIS COURT WITH ANY REASON    TO CONCLUDE THE CITY HAS FAILED TO PRODUCE DOCUMENTS

24620804.v3

14.    First and foremost, the City *did* respond to ITS's document requests, by explaining that there are no responsive documents.

15.    Given the scope of the 2004 Order which was focused on the Debtor's post-petition transfer of assets and the 2024 transaction of the City's sports stadium, it should not be surprising that there are no responsive documents to be produced.

16.    But ITS's Motion asks the Court to ignore logic and simply assume documents exist pertaining to ITS in the context of the Coliseum deal.  Instead, it says  "just cannot be" that the City "has no documents responsive to ITS's discovery request," as limited by the Court's specific order granting this request.  Motion, Page 5.  However, a "mere suspicion that the producing party possesses additional information that it has failed to disclose is an insufficient basis for a motion to compel." *Howard v. Onion*, No. 1:20-CV-02802-JG, 2023 U.S. Dist. LEXIS 127381, *8 (N.D. Ohio July 24, 2023) (internal citations and quotations omitted). Even "'an informed suspicion that additional non-privileged documents exist ... cannot alone support an order compelling production of documents.'"  *Roe v. Bishop of Charleston*, No. 2:21-CV-00020-RMG, 2021 WL 4272595, at *4 (D.S.C. Sept. 20, 2021) (collecting cases) (emphasis added).

17.    Here, ITS has offered no basis to question the accuracy of City's representation that its search revealed no responsive documents.  This Court should accordingly deny ITS's motion on that basis alone.  *Dreger v. KLS Martin, LP*, No. 2:20-CV-3814, 2023 WL 532012, at *5 (S.D. Ohio Jan. 27, 2023) (if a party "do[es] not provide any evidence demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, [her] motion to compel must fail") (brackets original).

24620804.v3

18.     ITS wants to revisit and expand this Court's prior order, in which this Court carefully delineated the scope of this Rule 2004 examination as specifically limited to issues pertaining to section 549(a) transfers of Debtor property.  [Dkt. 523.]

19.     Even worse, ITS fails to inform this Court that it has very recently disclaimed reliance on section 549(a) at all.  In a recent filing to the District Court, ITS represented to the District Court that the Rule 2004 examination was no longer based on section 549(a) but based on claims that may arise under California state law.  Specifically, ITS said: "Section 549(a) is no longer at issue between the parties."  W.D.K.Y. Case No. 3:25-cv-00065 Dkt. ECF 10 at 7.  ITS cannot have things both ways: arguing here it wants to compel information related to Section 549(a) and then informing the District Court it is not relying on claims related to the Bankruptcy Code.  This Court was extremely clear in limiting ITS to examination only on section 549(a) matters, because otherwise this would expand into discovery in the adversary proceeding, which is subject to a different set of procedures and rules.  [Dkt. 523 at 6-7.]

## II.     THE DEBTOR HAS FAILED TO MEET AND CONFER IN GOOD FAITH AND HAS NOT MET MOTION TO COMPEL STANDARD

20.     Rule 37 of the Federal Rules of Civil Procedure (the "Federal Rules") requires a party filing a motion to compel discovery to include a certification that the movant has, in good faith, conferred or attempted to confer with the opposing party in an attempt to resolve the dispute without court involvement.  Fed. R. Civ. P. 37(a)(1); *see also Rhiel v. Hook (In re Johnson)*, 408 B.R. 115, 119 (Bankr. S.D. Ohio 2009).  The purpose of this certification requirement is "to encourage litigants to resolve discovery disputes by informal means before filing a motion with the court."  *Rhiel*, 406 B.R. at 120 (citing *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996)).

24620804.v3

21.    To properly effectuate this purpose, the moving party must "set forth in the motion essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties." *Shuffle Master*, 170 F.R.D. at 171. Thus, a certification of a meet and confer must include "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, [and] the dates, times, and results of their discussions." *Id.* It is the movant's responsibility to adequately describe the attempts to confer and resolve, and will not allow emails or letters attached to the motion to substitute the movant's certification requirement. *See Rhiel*, 406 B.R. at 121; *see also Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001) ("The Court is unwilling to decipher letters between counsel to conclude that the requirement is met."); *Sanchez v. Washington Mutual Bank (In re Sanchez)*, 2008 WL 4155115, *2 (Bankr. E.D. Cal. Sept. 8, 2008) ("The court will not wade through a lengthy series of letters in order to determine whether the parties in good faith attempted to resolve their differences.").

22.    Good faith under the certification requirement requires a "genuine attempt" to "meaningfully discuss the discovery dispute" and resolve the dispute through non-judicial means. *Shuffle Master*, 170 F.R.D at 171. The "moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss *each contested discovery dispute* in a genuine effort to avoid judicial intervention." *Id.* (emphasis added). Thus, the prerequisite to a valid motion to compel discovery is "the honest effort to discuss the issue in hope of reaching resolution." *Rhiel*, 408 B.R. at 120.

23.    At least one bankruptcy court in the Sixth Circuit has denied a motion to compel discovery when the movant failed to provide the necessary "who, where, how, and when" specifics required for a meet and confer certification. *See Rhiel*, 408 B.R. at 121-22; *see also Shuffle Master*,

170 F.R.D at 171 (stating that a proper certification must include the names of the parties who conferred, the manner by which they communicated, the dispute at issue, and the dates, times, and results of the discussions).  In *Rhiel*, the movant's meet and confer certification in her motion to compel discovery provided the following assertion: "By way of informal efforts, [c]ounsel for [the movant] tried by phone, email, . . . and letter . . . to obtain [the responding party's] compliance, but she refuses to comply." *Rhiel*, 408 B.R. at 121.  The movant also included emails and letters between the parties as attachments to the motion to compel.  *Id.*  However, the court found that the movant's description of her meet and confer attempts did not provide the necessary specifics required for a certification.  Further, the court refused to search through and interpret the attached correspondence to determine whether the movant satisfied her certification obligations.

24.     Here, ITS has not provided the necessary "who, where, how, and when" specifics required for a proper meet and confer certification, and did not fully engage in the meet and confer process.

25.     In the Motion, ITS states that its counsel and counsel for the City had a "meet and confer" on **February 4, 2025** and a subsequent email exchange.  With regards to the "meet and confer," ITS simply states that the parties had the "meet and confer" on February 4, 2025 and that during the "meet and confer," the City agreed to provide ITS with responsive documents on or before March 4, 2025.  [Docket No. 560, ¶¶ 6-7.]  There are no details about the manner in which the "meet and confer" was carried out or the specific disputes discussed during the "meet and confer."

26.     As ITS points out in its Motion, the City "offered to respond to the document requests contained in the Rule 2004 motion in 30 days, by March 4."  [Docket No. 560, ¶ 7.]  The City did, in fact, respond to the documents request by the deadline but determined after a diligent

24620804.v3

search that no responsive documents exist. It appears that ITS anticipated that the City would produce responsive documents by the deadline, but it seems to have come up with this assumption on its own and the fact that "[a]t no time did the City suggest that it would not produce documents on or before March 4." [Docket No. 560, ¶ 7.]

27.    This apparent misunderstanding highlights the inadequacy of any alleged "meet and confer" that occurred before the filing of the Motion. After ITS received the City's written response, explaining the lack of responsive documents, ITS sent a single e-mail to counsel, demanding production. The City's counsel responded by asking ITS to provide further explanation for how or why there could be documents connecting ITS, the estate, or the ITS Sublease to the Coliseum deal. ITS did not respond, and filed this motion. Therefore, ITS has not met its good faith requirement because it has not shown that it has made a genuine attempt to meaningfully discuss the dispute at issue in the Motion with the City.

## CONCLUSION

WHEREFORE, the City respectfully requests that the Bankruptcy Court deny ITS's Motion.

24620804.v3

Dated: March 10, 2025                    By:  /s/ *April A. Wimberg*

April A. Wimberg
DENTONS BINGHAM GREENBAUM LLP
3500 PNC Tower, 101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3719
Email: april.wimberg@dentons.com


Maria S. Bee, Chief Asst City Attorney
(SBN 167716)
Ryan Richardson, City Attorney (SBN 223548)
Kevin McLaughlin, Supervising Deputy City
Attorney (SBN 251477)
THE CITY OF OAKLAND
One Frank Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3601
Email:  mbee@oaklandcityattorney.org
            rrichardson@oaklandcityattorney.org
            kmclaughlin@oaklandcityattorney.org
Monique D. Jewett-Brewster (SBN 217792)
HOPKINS & CARLEY, ALC
The Letitia Building
70 S First Street
San Jose, CA  95113-2406
Telephone: (408) 286-9800
Email:  mjb@hopkinscarley.com

Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Email:  dleonard@altshulerberzon.com


*Attorneys for Defendant,*
*City of Oakland*

## CERTIFICATE OF SERVICE

The foregoing was served on March 10, 2025 via the Court's CM/ECF System.


                                        */s/ April A. Wimberg*

                                        April A. Wimberg
                                        *Counsel for Defendant, City of Oakland*

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al*., | Case No. 19-32231 |
| Debtors. | Judge Joan A. Lloyd |

---

## DECLARATION OF DANIELLE LEONARD IN SUPPORT OF CITY'S OPPOSITION TO ITS'S MOTION TO COMPEL

---

I, Danielle Leonard, declare as follows:

1.    I am a member in good standing of the bar of the State of California, a partner at the law firm Altshuler Berzon LLP, and counsel of record for the City of Oakland ("City") in this matter.  The contents of this declaration are based on my personal knowledge, and if called to testify I would competently testify thereto.

2.    I provide this declaration in support of the City's Opposition To ITS's Motion To Compel And Response To Request For An Expedited Hearing.

3.    On March 4, 2025, consistent with the agreement reached between counsel, the City served its written responses to ITS's document request accompanying the Rule 2004 examination.

4.    On March 5, 2025 counsel for Insight Terminal, LLC ("ITS") emailed counsel for the City regarding the City's response to ITS's request for production of documents.  On March 6, 2025 counsel for the City responded to that email, explaining again why the City's investigation revealed no responsive documents consistent with the parameters of this Court's order.  A true and correct copy of this email correspondence is attached hereto as **Exhibit A.**

5.    The Debtor did not consult with counsel for the City in advance of filing the request for expedited hearing.

6.    Since this Court denied the City's motion for a stay pending appeal and reconsideration on the Rule 2004 order, the City has carefully and diligently complied with its obligations. The City met and conferred with counsel very quickly to set a schedule with respect to the Rule 2004 response and discovery in the adversary proceeding, and has complied with that schedule in every way.  Subsequent to exchanging initial disclosures, the City has served extensive written discovery on ITS, and ITS has not served any discovery in the adversary proceeding.  The City will continue to comply with each and every discovery obligation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of March, 2025 in San Francisco, California.

*/s/ Danielle Leonard*

Danielle Leonard

Altshuler Berzon LLP

# EXHIBIT A

| | |
|---|---|
| **From:** | Max Carter-Oberstone <mcarteroberstone@altshulerberzon.com> |
| **Sent:** | Thursday, March 6, 2025 12:04 PM |
| **To:** | Robert M. Hirsh; Giorgia Lingiardi; Lee, Barry; astosberg@grayice.com; Skyler Sanders; Danielle Leonard |
| **Cc:** | Wimberg, April A.; monique.jewettbrewster@lathropgpm.com; kmclaughlin@oaklandcityattorney.org; Colin Jones |
| **Subject:** | Re: ITS v Oakland (Adv. Pro. No. 24-03007-jal) |

**[WARNING: EXTERNAL SENDER]**

Dear Counsel,

The City has fully responded to your requests, on the date we agreed, and has done so in good faith, after reviewing your requests, the City's records, and your more recent filings.  It does seem that ITS is conflating discovery in the adversary proceeding with this Rule 2004 exam, which is not appropriate.  Main Bk. Dkt. 523 at 7 (discovery into adversary proceeding is "not within the scope of this Order").  The Court's order on your Rule 2004 exam was clear that the examination was limited to whether certain property might constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a).  *Id.* at 6-7 ("the reason for the Rule 2004 Examination is to determine whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a)").  The City has fully responded that there are no responsive documents that fall within the scope of the limited response ordered by the Court.  The City has conducted a diligent investigation into your section 549 allegations, including a reasonable review of its documents to determine whether there is any possible relationship between documents involving the Debtor, its estate and the Coliseum deal.  There are no responsive documents, within the limits the Court imposed on this request.  The scope of a Rule 2004 exam should not "stray into matters which are not relevant to the basic inquiry... [such as] matters having no relationship to the debtor's affairs and no effect on the administration of his estate." In re Mitchell, No. 18-40736-JMM, 2019 Bankr. LEXIS 658, at *16-17 (Bankr. D. Idaho Mar. 5, 2019) (internal citations omitted).  It it is not appropriate to proceed as if the Court did not issue an order limited to section 549(a), which it plainly did, or to use this meet and confer process to reopen or expand that decision.

Moreover, well after our meet and confer, your client disclaimed any reliance on section 549(a), which was the only issue the Court granted the examination into.  If ITS is disclaiming the only subject matter that the court granted inquiry into, we do not see how, even if there were responsive documents, you could possibly compel them.  In any event, there are no documents responsive to the Rule 2004 order.

Finally, your email does not accurately reflect our meet and confer over these issues.  During that conference, the City agreed to respond to your document request, and did not agree to produce all of the documents you are asking for, whether or not those are appropriate or within the scope of the Court's order, or whether or not they were privileged.  The City has complied with its obligations to determine whether there are responsive documents within the scope of the Court's order: there are not.  If you believe that the City is not correct, and there is some category of responsive documents that involve both the Coliseum and the West Gateway terminal or the ITS Sublease (which for these purposes, the City will assume is Debtor "property" notwithstanding our legal dispute as to the validity of that document), please do let us know.

Respectfully,

1

Max

---

**From:** Robert M. Hirsh <robert.hirsh@nortonrosefulbright.com>
**Sent:** Wednesday, March 5, 2025 1:29 PM
**To:** Giorgia Lingiardi <glingiardi@altshulerberzon.com>; Lee, Barry <bwlee@manatt.com>; astosberg@grayice.com <astosberg@grayice.com>; Skyler Sanders <ssanders@parsonsbehle.com>; Danielle Leonard <dleonard@altshulerberzon.com>
**Cc:** april.wimberg@dentons.com <april.wimberg@dentons.com>; monique.jewettbrewster@lathropgpm.com <monique.jewettbrewster@lathropgpm.com>; kmclaughlin@oaklandcityattorney.org <kmclaughlin@oaklandcityattorney.org>; Colin Jones <cjones@altshulerberzon.com>; Max Carter-Oberstone <mcarteroberstone@altshulerberzon.com>
**Subject:** RE: ITS v Oakland (Adv. Pro. No. 24-03007-jal)

You don't often get email from robert.hirsh@nortonrosefulbright.com. Learn why this is important

Danielle,

We received your client's Responses to Plaintiff's Rule 2004 Request for the Production of Documents. Your responses, although not shocking, are wholly inadequate and improper. We understand that your client does not like the Court's ruling on ITS' 2004 Motion. However, even though your client decided to appeal the ruling, that does not allow your client to disregard its legal obligations to comply.

In addition, we had a meet and confer several weeks ago and you agreed to produce documents to our client. Rather than acting in good faith, you produced a document saying that you were not producing any documents. Plaintiff has been harmed by your failure to raise this issue during that meet and confer, where this issue could have been addressed by the parties and relief sought from the court a month ago. I will also remind you that you requested a month to produce documents because you said that two weeks was not long enough for your client to assemble all of the responsive documents. Had Plaintiff and its counsel known at that time that you actually had no intention of producing any documents, Plaintiff would have never agreed to extend the two-week production deadline. Your actions here are in bad faith, violate the notions of fairness, and will not be tolerated.

Please produce all responsive documents to us by 3 pm ET tomorrow or we will immediately move forward with an emergency motion to compel said production.

Please be guided accordingly.

**Robert Hirsh** | Partner
Norton Rose Fulbright US LLP
1301 Avenue of the Americas, New York, New York 10019-6022, United States
Tel +1 212-318-3060 | Fax +1 212-318-3400 | Mobile +1 516-426-8232
robert.hirsh@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT**

*Law around the world*
nortonrosefulbright.com

**From:** Giorgia Lingiardi <glingiardi@altshulerberzon.com>
**Sent:** Tuesday, March 4, 2025 8:42 PM
**To:** Lee, Barry <bwlee@manatt.com>; Robert M. Hirsh <robert.hirsh@nortonrosefulbright.com>; astosberg@grayice.com; Skyler Sanders <ssanders@parsonsbehle.com>
**Cc:** april.wimberg@dentons.com; monique.jewettbrewster@lathropgpm.com; kmclaughlin@oaklandcityattorney.org; Danielle Leonard <dleonard@altshulerberzon.com>; Colin Jones <cjones@altshulerberzon.com>; Max Carter-Oberstone <mcarteroberstone@altshulerberzon.com>
**Subject:** ITS v Oakland (Adv. Pro. No. 24-03007-jal)

**External Email - Use Caution**

Counsel,

Please see attached the City of Oakland's Response to Debtor ITS's Rule 2004 Request for Production in the above referenced matter.

Thank you,

Giorgia Lingiardi (hear my name)
Legal Administrative Assistant
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Office: (415) 421-7151, Ext. 344
glingiardi@altber.com
Pronouns: she/her

**ALTSHULER BERZON LLP**

*This email message and any attached documentation are for the sole use of the intended recipient(s) and may contain privileged or otherwise confidential information. If the reader or recipient of this communication is not the intended recipient or someone authorized to receive the message for the intended recipient, please notify the sender immediately by reply email or telephone, and delete the original communication and any attached documentation without copying or disclosing the contents. Any unauthorized review, use, copying, disclosure, or distribution of this communication and any attached documentation is strictly prohibited. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege.*

This email message and any attachments are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, copying or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.

To reply to our email administrator directly, send an email to nrfus.postmaster@nortonrosefulbright.com.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

EXHIBIT E

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC *et al*. | Case No. 19-32231 |
| Debtors | (Jointly Administered) |
| | Judge Joan A. Lloyd |

## ORDER GRANTING MOTION COMPEL CITY OF OAKLAND TO COMPLY WITH THE COURT'S ORDER GRANTING RULE 2004 MOTION

This matter having come before the Court on the Motion to Compel City of Oakland to Comply with the Court's Order Granting Rule 2004 Motion (the "Motion to Compel") filed by Insight Terminal Solutions, LLC ("ITS"), and the Court having reviewed and considered the Motion Compel and being otherwise sufficiently advised,

IT IS HEREBY ORDERED THAT:

1.      The Motion to Compel is GRANTED.

2.      The City of Oakland is compelled to comply with this Court's Memorandum-Opinion and Order [Bankr. Doc. 523] and to provide ITS with documents responsive to its discovery request set forth in the Motion for a Rule 2004 Examination of the City [Bank. Doc. 508] on or before March 14, 2025.

Joan A. Lloyd
United States Bankruptcy Judge

Dated:  March 12, 2025

Prepared and submitted by:

*/s/ Andrew D. Stosberg*
Andrew D. Stosberg
GRAY ICE HIGDON, PLLC
3939 Shelbyville Road, Suite 201
Louisville, KY 40207
Telephone: (502) 625-2734
astosberg@grayice.com
COUNSEL FOR INSIGHT TERMINAL SOLUTIONS, LLC

EXHIBIT F

```
 1                    UNITED STATES BANKRUPTCY COURT
                       WESTERN DISTRICT OF KENTUCKY
 2
                                      . Chapter 11
 3   IN RE:                           .
                                      . Case No. 19-32231-jal
 4   INSIGHT TERMINALS SOLUTIONS,     .
     LLC,                             .
 5                                    .
                    Debtor.           .
 6   _____ .
     INSIGHT TERMINAL SOLUTIONS, LLC,. Adv. Case No. 24-03007-jal
 7                                    .
                    Plaintiff,        .
 8                                    .
        vs.                           .
 9                                    .
     CITY OF OAKLAND,                 . March 11, 2025
10                                    . 11 a.m.
                    Defendant.        .
11   . . . . . . . . . . . . . . . . .

12           TRANSCRIPT OF MOTION TO COMPEL CITY OF OAKLAND
             TO COMPLY WITH RULE 2004 ORDER FILED BY DEBTOR
13              INSIGHT TERMINAL SOLUTIONS, LLC. FILED BY
                  INTERESTED PARTY, THE CITY OF OAKLAND
14                BEFORE THE HONORABLE JOAN A. LLOYD
                    UNITED STATES BANKRUPTCY JUDGE
15

16   APPEARANCES:   (Continued)

17   Audio Operator:           Electronically Recorded

18   Transcription Company:    A&S Transcript Providers
                               6 Trout Brook Road
19                             Stanhope, NJ 07874
                               (973) 914-3080
20

21

22

23

24   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
25
```

```
1    APPEARANCES:

2    For ITS:                    Robert M. Hirsh, Esq.
                                 NORTON ROSE FULBRIGHT US, LLP
3                                1301 Avenue of the Americas
                                 New York, NY 10019-6022
4
                                 Andrew David Stosberg, Esq.
5                                GARY ICE HIGDON, PLLC
                                 3939 Shelbyville Road, Suite 201
6                                Louisville, KY 40207

7    For the City of Oakland:    April A. Wimberg, Esq.
                                 Patrick Navin, Esq.
8                                DENTONS BINGHAM GREENEBAUM, LLP
                                 101 South 5th Street, 34th Floor
9                                Louisville, KY 40202

10

11

12

13

14

15

16

17

18

19

20

21

22
          (Proceedings commence at 11:14 a.m.)
23
               THE CLERK:  United States Bankruptcy Court for the
24
     Western District of Kentucky is now in session, the Honorable
25
     Joan D. Lloyd presiding.
```

1          THE COURT:  All right.  Good morning.

2          MR. STOSBERG:  Good morning, Judge.

3          MR. HIRSCH:  Good morning.

4          THE COURT:  I don't have any staff.  Thank you,

5   Angela.

6          THE CLERK:  You're welcome.

7          THE COURT:  Everything is -- Jim is sitting in with

8   me.  He's -- he works for Judge Stout.  Because we're doing

9   this on an expedited or emergency basis, we just -- I mean, it

10  was just a bad -- bad timing. Patrick, nice to see you.

11         Let's go ahead and get appearances.

12         MR. STOSBERG:  Good morning, Your Honor.  Andrew

13  Stosberg on behalf of Debtor Insight Terminal Solutions and

14  co-counsel Robert Hirsch.

15         THE COURT:  Good morning.

16         MR. HIRSCH:  Good morning.  Good morning, Your Honor.

17  Good to see you.

18         THE COURT:  I notice you got here...

19         MS. WIMBERG:  Good morning, Your Honor.  April Wimberg

20  on behalf of the City of Oakland.  Also in the courtroom with

21  me is Patrick Navin, who's with our firm, who is now a Kentucky

22  licensed attorney.  He's just waiting for his Western District

23  --

24         THE COURT:  Congratulations.

25         MS. WIMBERG:  So -- and, Your Honor, I want to let the

1   court know, or ask permission, last time that all the parties

2   could not appear in person, you allowed us to have our speaker

3   phones open and let the parties listen, and obviously they're

4   not going to participate, but just to be able to hear, if

5   that's okay.

6         THE COURT:  Yes.

7         MR. STOSBERG:  And to that end, Your Honor, the

8   manager of ITS, he's on the phone on mute listening.

9         THE COURT:  Right.  Right.  They just have to know

10   they can't participate.

11         MR. STOSBERG:  Yes, Your Honor.

12         THE COURT:  They just get to listen.  All right.  So,

13   Mr. Hirsch.

14         MR. HIRSCH:  Yes.  Thank you, Your Honor, for

15   scheduling this on an expedited basis, and I apologize for

16   having to be here, but we felt that there was really no other

17   avenue but to address this with the Court.  I'm sure Your Honor

18   read our motion to compel.

19         Frankly, we were really surprised, in a negative way,

20   with the response from the City.  We had a meet and confer

21   several weeks prior, as the motion -- unless you want me to go

22   into the motion in detail, I will, but just to recap the main

23   points.

24         THE COURT:  Do that.  I was actually on vacation and

25   about 9,500 feet above sea level, but I did read it.  I read

1  everything, but go ahead and tell me again in case somehow or

2  another I missed anything.  I just want to give everybody a

3  fair shake.

4        MR. HIRSCH:  Yeah.  No, I appreciate Your Honor, and I

5  hope you had a good vacation.  I assume being that high up

6  above sea level, you must have been skiing.

7        THE COURT:  Yes, and that was actually the low part.

8  There's some that was much higher.

9        MR. HIRSCH:  Well, that's fantastic.

10        So, let me just address it simply.  We were here

11  before Your Honor on the City's motion to reconsider back in --

12  I think it was January 11th.  That motion to reconsider the

13  2004 order that Your Honor had previously entered, you denied

14  their motion to reconsider, and you wrote an opinion on that,

15  Docket Number 523.

16        We then proceeded to meet and confer with the City,

17  and I attached as exhibit -- as an exhibit to the motion, the

18  back-and-forth email where the meet and confer was confirmed,

19  and what the parties were going to do and when they were going

20  to do it, and I think the last email was from Ms. Leonard,

21  counsel for the City, to confirm things that was said in the

22  meet and confer, and to make sure that there was no issues with

23  that.

24        Specifically, the City asked for a two-week --

25  additional two-week time from what we wanted originally in the

1  timing of the production documents, and that's key for this

2  motion to compel, and of course we said no problem, and again

3  I'm paraphrasing, and so when we received the response to the

4  motion, we thought in good faith that we were going to receive

5  documents.

6       The City of course says no, they never said they were

7  going to produce documents, they were just going to give a

8  response to the motion to -- the 2004 motion -- or 2004

9  request, I should say, for documents.

10       We were really taken aback.  It was a big surprise to

11  us when their response, which is also attached as an exhibit to

12  our motion to compel, basically said we contest the

13  jurisdiction of the Court, we reviewed our records, we don't

14  have any documents.  That's basically what they said, in a

15  nutshell.

16       We find that unbelievably difficult to believe,

17  especially in light of the situation where the City is in the

18  process of selling the Coliseum and has various contracts.  At

19  the very least, we thought we would be receiving those

20  documents.

21       And so that was the basically reason to file the

22  motion to compel.  The City responded with an email from one of

23  its council in Ms. Leonard's office the next day to my email,

24  and that's all part of the motion, saying that they reviewed

25  their records, they don't have any documents relating to ITS

1   and the Coliseum.

2           And that's where we decided we had to file a motion to

3   compel.

4           THE COURT:  All right.  And so you believe there are

5   documents that they're aware of and are withholding?

6           MR. HIRSCH:  Well, there are certainly -- there

7   certainly are, Your Honor.  That's what we believe, correct.

8           THE COURT:  All right.

9           MR. HIRSCH:  Yeah.  And I'm happy to answer any other

10  questions you have or I'll wait to hear from Ms. -- counsel for

11  the city and I could address those issues.

12          THE COURT:  All right.  Well, I'm going to let Ms.

13  Wimberg speak now.

14          MR. HIRSCH:  Thank you.

15          THE COURT:  All right.

16          MS. WIMBERG:  Thank you, Your Honor.  If you're okay,

17  I may sit during my presentation.

18          THE COURT:  Right.

19          MS. WIMBERG:  I apologize, my eyes are getting older.

20          Your Honor, if we could address the motion from ITS in

21  two parts, and one is just the procedural part because I think

22  that counsel maybe mistakenly just talked about the record in a

23  meet and confer.

24          The City certainly sat down and had a meet and confer

25  with ITS.  And it was the Rule 26, I mean, was just looking at

1   the scope of discovery and was talking about the adversary

2   proceeding and the documents could be spoken -- but at that

3   time, they did agree to dates in which the City would sit for a

4   deposition and the review of documents and an extension was

5   talked about and agreed at that time.

6          The City then did respond to the 2004 on March 4th and

7   said there were no responsive documents.  And I'll get to that

8   and how the City searched for that and why that's the position

9   but then counsel does send a message and say, I don't believe

10  this, you must have responsive documents.  And, when they filed

11  their motion to compel with the Court, Your Honor, they didn't

12  represent that.  It's only in our response did we let you know,

13  we did respond that hey, here's the search of the scope of the

14  documents, do you need us to look for something else.  That

15  email was not responded to.  And presumably, they contacted

16  your chambers to see when you had times and filed their

17  objection for --

18          THE COURT:  Nobody contacts my chambers.  They contact

19  the clerk's office.

20          MS. WIMBERG:  The clerk's office.

21          THE COURT:  Just so everybody is clear about that.

22          MS. WIMBERG:  So someone contact -- and gets a date

23  and they filed the motion to compel.  But at no time has there

24  ever been a response saying, no, you're not looking right in

25  the scope of here's why you're wrong, here's the debtor's

1 assets that you need to start searching for within the 549.  No

2 response.

3 So there's not been -- if we're looking at a true

4 motion to compel, to be compliant with the rules, there's been

5 no good faith discussions between the parties to say, okay,

6 where else are we looking -- or you need to expand your search.

7 There's been no response.

8 So now we're here, Your Honor.  And I guess,

9 unfortunately, we're asking you to now be this arbitrator of a

10 discovery dispute without us discussing it, but -- so what the

11 City has done, Your Honor, is we went through the debtor's

12 records.  Well, first, we looked at the 2004 order in the

13 motions and said, okay, we're looking for what assets of the

14 debtor that could be subject to a 549 claim.  We looked at the

15 debtor's bankruptcy, which was filed July 2019.  We looked at

16 the petitions.  We looked at the MORs filed.  We looked at the

17 budget.  Anything that could constitute the scope of the

18 debtor's assets.  The plan was confirmed in November 2020, so -

19 - and that allowed the debtor to use its assets, right, and

20 without Bankruptcy Court approval or they have to be consistent

21 with the Bankruptcy Code.  So we have a temporal scope of 549

22 actions.

23 So, after looking at those things, and Your Honor,

24 when you issued your order, too, you recognized the City was

25 never a creditor to the estate, and your order recognized that

1   there was no claims against the City that they were ever

2   brought into the bankruptcy suit.

3          So, and I don't think that there's any dispute, that

4   the City has never had an agreement with ITS.  There's no

5   contractual relationship.  So -- but in good faith, and that

6   was, I think, the original motion to reconsider and try to

7   think about this, the City can't see how there was a transfer

8   of the debtor's assets to the City, even in a good faith, a

9   subsequent value, like, or I'm sorry, a subsequent transferee

10  --

11         THE COURT:  Well, now, remember, it sounds like you're

12  doing the legal analysis of whether or not the claim will lie

13  and all the Court is trying to -- the Court is now being called

14  upon to determine whether or not discovery orders and requests

15  are being created -- are being properly responded to.

16         So, whether or not a claim will lie against the city

17  of Oakland, I mean, it sounds like the City of Oakland is using

18  its decision about whether or not the debtor -- or the

19  reorganized entity has the right to ask for this, but the Court

20  has already ruled, Bankruptcy Rule 2004 is quite broad, because

21  there was only one asset in that case, as I recall, and it was

22  the sub-lease.

23         MR. HIRSCH:  That's right, Your Honor.

24         THE COURT:  It's not like this -- there were pencils

25  and file cabinets or chairs.  So I understand where you're

1   coming from, but understand this, that whether or not an action

2   will lie is a whole different story.  This is discovery, and it

3   is as broad as -- unless the City has asserted a privilege of

4   some kind, that's really what the Court is trying to figure

5   out, what exactly is the City -- if Mr. Hirsch turns out to be

6   right, and he asserts -- I don't know, hypothetically, let's

7   assume Mr. Hirsch is correct, and there are documents that are

8   responsive, whether it's going to be admissible evidence of --

9   I mean, this is just sort of elementary to the Court, but I get

10  it, the City of Oakland is presenting its argument.

11          MS. WIMBERG:  And I'm so sorry if I lost the Court.  I

12  apologize.  So let me -- so certainly, that -- we brought

13  privileged, right, objections.  I mean, that was in our 2004,

14  we filed that, there's certainly privilege --

15          THE COURT:  And so how would you handle that in a

16  discovery response?  What you would do is you would assert the

17  privilege, and if you couldn't work out a confidentiality

18  agreement, you would file your objection.  You would seek -- if

19  you don't have an agreement, you would seek a protective order.

20          MS. WIMBERG:  And, Your Honor, we asked for one, and

21  we haven't received a protective order.  But -- and again,

22  unfortunately --

23          THE COURT:  But, I mean, what is the -- so that's the

24  thing is does the City of Oakland get the chance to limit -- I

25  mean, it's just -- this is what the Court does.  Does the City

1    of Oakland get the right to limit, at this point, its responses

2    without seeking -- first off, without answering, and if it

3    doesn't answer, what is the basis.  Is it work product, is it -

4    - what is it, proprietary?  So --

5            MS. WIMBERG:  And maybe -- so the Court's order,

6    right, in the 2004 -- this is discovery related to 549, a

7    post-petition, like, transfer of the debtor.

8            THE COURT:  Right.

9            MS. WIMBERG:  In the City -- there are no -- the City

10   has looked through any -- to see if there was anything related

11   to the terminal or ITS sublease.  And then we ask if there's

12   something beyond that where we should be looking.  But, Your

13   Honor -- and this is what the concern is.  I think that the

14   motion to compel, again, is pretty telling because they say

15   there, this is a motion to compel to investigate and research

16   the City's activities regarding its potential insolvency.  That

17   is what the motion to compel says, Paragraph 5.  It's not about

18   a 549 action, but that's what the City is responding to.  It's

19   the -- I mean, that is what the City -- it's verbatim, it says,

20   "ITS is investigating and researching the City's activities

21   relating to its potential insolvency."

22            There's not a 540 -- like that's --

23            THE COURT:  Well, hold on a second.  Allow me to argue

24   with you a bit here.

25            MS. WIMBERG:  Absolutely.

1    THE COURT:  So I'm looking at the tendered order,

2    which, as far as the Court knows, that is what ITS wants the

3    Court to sign.  So I know you're looking at Paragraph 5 of the

4    motion.

5    MS. WIMBERG:  Right.

6    THE COURT:  But just FYI to everyone else, and I don't

7    -- you all are all seasoned lawyers and you know this, if it's

8    not in the order, I'm not really sure what the import is.  I

9    mean, even after all these years of being on the bench, I'm not

10   even sure what the import is of Paragraph 5 when the actual

11   order simply says the City of Oakland is compelled to comply

12   with this Court's opinion and order, Bankruptcy Docket 523, and

13   supply the documents set forth in the Bankruptcy Docket 508.

14   And if it doesn't exist, what would be your response?

15   You would file a formal response saying, nothing.  Got nothing,

16   right?  You'd do a response to the request for production of

17   documents, interrogatories, ad -- whatever it is, you would

18   just say, don't have it, right?

19   MS. WIMBERG:  Which is, I believe, what we filed, Your

20   Honor, and that was -- the City provided and did file --

21   THE COURT:  So what's wrong with the Court signing

22   this order if it doesn't exist?

23   MS. WIMBERG:  But, Your Honor, and this is where I

24   guess, then --

25   THE COURT:  Just out of curiosity, I mean, what -- if

1    it doesn't -- have you filed responses?

2            MS. WIMBERG:  Yes, Your Honor.

3            THE COURT:  Are they in the court record?

4            MS. WIMBERG:  Yes.

5            THE COURT:  Okay.  And so you think this motion to

6    compel is over the top.

7            MS. WIMBERG:  Well, I guess it's not -- it's a -- what

8    are we -- if there's not documents that exist, and we filed for

9    that --

10           THE COURT:  Then you've complied.

11           MS. WIMBERG:  And then, so then we've complied.  And

12   then, I guess, that's where we -- so the motion to compel,

13   right, is that we haven't done that already.  I mean, that's

14   basically telling the City, well, we haven't complied with the

15   Court's order but we're telling you, we have complied with your

16   order.

17           And we then, in good faith, emailed and said, do you

18   need us to search for something else, and then there was no

19   response.  It was absolutely crickets in a response.  And that

20   is what the -- but that's supposed to be the grounds for the

21   motion to compel is that saying -- there's a certification

22   saying we tried in good faith to get here.  So if Your Honor

23   files -- signs the response, it's already -- I mean, isn't that

24   on the record say that we didn't comply with the Court's orders

25   already?  And they've brought you no information to say that --

1  they're just saying that there's got to be documents that

2  exist.  And we're saying, well, we searched these, what else do

3  you want us to do?  Nothing.

4          THE COURT:  Okay.  Mr. Hirsch?

5          MR. HIRSCH:  Yeah.  Your Honor, thank you.  Let me try

6  and clarify some of the comments and redirect Your Honor for a

7  moment because I think there's a -- unfortunately, there's a

8  historic history here, which too bad there is because discovery

9  motions really, there shouldn't be this.

10          But let me address a few things.  So we had our

11  hearing January 11th, and there was a whole discussion on the

12  motion for 2004.  And I can cite to the transcript, but I think

13  more --

14          THE COURT:  Mr. Lee was here.

15          MR. HIRSCH:  Correct.  I was --

16          THE COURT:  Did you say it, or did Mr. Lee?

17          MR. HIRSCH:  So I was here, Mr. Lee was here, Mr.

18  Stosberg was here.

19          THE COURT:  Right.  I have this creepy photographic

20  memory on certain things.

21          MR. HIRSCH:  It was July.  Excuse me.

22          THE COURT:  It was July?  Okay.

23          MR. HIRSCH:  Right.  The motion to consider was

24  January, and I'll get to that.

25          THE COURT:  Right.  I apologize.

1    MR. HIRSCH:  But we had this whole discussion, and

2 it's in the transcript, specifically, July 11th, we cite -- and

3 I'll cite to it for the record but before I do, there was a

4 discussion with one of the City's counsel, Ms. Brewster, I

5 believe --

6    THE COURT:  And just for -- got out of the case.

7    MR. HIRSCH:  Yes.  I think yesterday, for some reason.

8 Yes, I saw that.

9    THE COURT:  Right.  Whatever.  But I just saw her,

10 yeah.

11    MR. HIRSCH:  Yeah.  But at the time, there was a back

12 and forth with Your Honor and Ms. Brewster about this 2004

13 motion and what we were trying to seek, and what was proper in

14 their mind, and what was improper, and it went back and forth

15 and back and forth.

16    Your Honor, I have copies of the transcript for Your

17 Honor and Ms. Wimberg --

18    THE COURT:  You can show it to me.  Make sure Ms.

19 Wimberg gets one.

20    MR. HIRSCH:  Okay.

21    THE COURT:  It's going to be interesting what I

22 remember and what you were saying but --

23    MR. HIRSCH:  May I approach?

24    THE COURT:  Yes, of course.  Thank you.

25    MR. HIRSCH:  Thank you.

1    THE COURT:  What page?  Are -- just --

2    MR. HIRSCH:  Yeah.  I mean, specifically Page -- the

3  first cite to raise -- to refresh Your Honor's memory as well,

4  and just to bridge this discussion, would be Page 36 of the

5  transcript, Lines 1 through 25.  And in a nutshell -- and I'll

6  wait if Your Honor wants to get to that page.

7    THE COURT:  No, go ahead.  I've probably already read

8  it now.  Go ahead.

9    MR. HIRSCH:  Yeah, sure, Your Honor.  But basically

10 Ms. Brewster was discussing how inappropriate it was for the

11 2004 and I'll quote, you know, they were listing the documents

12 that we would be seeking and stating that Rule 2004 is

13 inappropriate quote, "Especially when most of this information

14 could be had through an open records request" --

15    THE COURT:  Yeah.

16    MR. HIRSCH:  End quote.

17    THE COURT:  Okay.

18    MR. HIRSCH:  That said -- and continued on, "We know

19 the City would not respond to a public records request, a PRAR

20 are in California, or would otherwise find a way to argue that

21 the document should not be produced under that PRAR."  That was

22 I think Mr. -- what r. Lee was saying in the record.

23    And I only raised that because I thought we were way

24 beyond that.  Right?  We had that hearing back in July of 2024

25 last year, then the City didn't like Your Honor's decision as I

1  relayed in Docket 523 and I'll point out in Your Honor's

2  decision, you know, you discussed and in the motion and in the

3  soliloquy and in the argument from the July hearing, you know,

4  the debtors and the City -- sorry, the debtors allege herein

5  that the City of Oakland is a contingent debtor -- a contingent

6  debtor of the debt -- the debtor rights but -- the debtor and

7  that the City is engaging in questionable and improper

8  financial dealings that warrant investigation.

9          It further sets forth those actions of the City

10 regarding the possible sale of one of the City's biggest

11 assets, the City's undivided fifty-percent interest in the real

12 property where the Oakland Coliseum is located.

13         And then Your Honor's decision goes on to say, "The

14 debtor has established that the reason for the Rule 2004

15 examination is to determine whether the City's transaction with

16 respect to the Coliseum may constitute avoidable post-position

17 transfer," et cetera, et cetera.

18         You rule on that, and then the City didn't like your

19 ruling.  And so then they filed a motion to reconsider.  And

20 then we fast forward to January's hearing, right, and where I

21 think we basically -- Ms. Leonard was here I think in person

22 and January 28th was the hearing, not the 11th, sorry.

23         THE COURT:  Right.

24         MR. HIRSCH:  Of this year.  And they raised the same

25 arguments over, over and over again.  Clearly, there are

1   documents because back in the July 11th hearing, Ms. Brewster

2   admitted that there's public records and there are documents

3   relating to the Coliseum.

4        We thought we would be receiving those documents with

5   those -- with those public records -- to me, it's ironic; if

6   they're public records, why can't they just produce them?

7   That's number one.

8        Number two, with those public records, it is -- it

9   just seems completely implausible to believe that there's no

10  emails, there's no other written communications.  There's

11  nothing relating to the negotiation of the contracts or to --

12  relating to anything, and so fast-forward again, their motion

13  reconsider was denied.

14       The order was clear, and we met and conferred in good

15  faith, and I don't have to repeat myself again But we were

16  really surprised by the City's response.  And the motion to

17  compel, Your Honor, we believe there are documents; the City

18  has admitted there are documents.  And so please give us those

19  documents Let us investigate what we need to investigate and go

20  from there.  And that's all we're asking for.

21       THE COURT:  And so your point is when Ms. Brewster

22  said this, you can get the same documentation through a

23  basically a state-level FOIA.

24       MR. HIRSCH:  Right.

25       THE COURT:  You think that acknowledged that these

1   records exist or do you have another independent basis to

2   believe that these records exist?

3          MR. HIRSCH:  Well, we have two bases; one is the -- is

4   counsel's statements --

5          THE COURT:  Okay.

6          MR. HIRSCH:  And two is the media which we I think

7   discussed several of the hearings, the media reports and the

8   statements of City officials, council people, et cetera, et

9   cetera, and I think I remember raising -- saying, Your Honor, I

10  wasn't going to argue or speak but I did because there's been

11  discussion of City insolvency and what we're trying to do

12  investigate the City's solvency or insolvency and dissipation

13  of assets.

14         And under 2004 we're entitled to do that because there

15  could be harm to the reorganized debtor, and that's all we're

16  asking for.  As you said at the beginning of this hearing, this

17  is a discovery issue.  Whether or not a claim is brought,

18  whether or not the Court rules in our favor or not, who knows

19  but all we're asking for is to investigate.  And we're

20  basically, in our view, being stonewalled, and that's why we

21  unfortunately felt the need to file the motion to compel.

22         THE COURT:  All right.  Anything else?

23         MR. HIRSCH:  One last point.  This Coliseum deal, how

24  -- it's such a large issue of large magnitude for the City.

25  And again, we don't know exactly the numbers.  We don't know

1   exactly the details, and that's why we're trying to find out

2   but the news media seems to show that this is such a large

3   asset sale that it's important that we know.  And how can there

4   be no records.  It just doesn't make any sense.

5          MS. WIMBERG:  Your Honor, I guess the one, first and

6   foremost, the City has never said that there are records.  I

7   mean, that's just -- the City has not this -- the City has said

8   that, and I believe Ms. Brewster and I don't know this, I mean,

9   I truly don't, if information can get through the City's open

10  records request.  I know Kentucky's open records request.  I

11  don't know that California's open records request.

12         But -- so the City has never said that there are

13  documents that exist.  And then I go back to the Court said

14  that ITS was allowed in 2004 to investigate post-petition

15  transfers to see if there was a 549 claim.  And they've taken

16  this further to say, you know, the state law equivalent.

17         But, yeah, and I haven't even brought up the fact --

18  like those are completely statutorily like barred by the

19  statute of limitations.  I haven't gone there because, again, I

20  took Your Honor's -- and we're not arguing the fundamentals.

21  It's whether these documents exist.

22         So we have said, all right, what potential debtor

23  assets could exist that the City would have records to, and

24  then are there anything that's related to ITS, these things

25  that, again, wouldn't be subject to privilege, work product,

1    and there -- the City has found nothing.

2          When we went back and said, here's the scope of the

3    search, what else do you want us to search, and that is where I

4    think that this should have turned, is that we should have

5    received a response, well, look for this person, look for these

6    transfers, look for something that could relate to the transfer

7    of the debtor's assets, and then the City would respond, and

8    then, Your Honor, we'd be -- I'm sure, unfortunately, it sounds

9    like we could be back here again, and we're going to be back

10   here in a couple weeks, Your Honor, but I go back to the

11   procedural, that this wasn't right, because there wasn't.  We

12   responded that same day, they filed a motion -- an emergency

13   motion to compel, without responding to us and saying, look, if

14   there's something that we should be searching to look for any

15   transfer of debtor's assets, let us know.

16         And within our -- again, in good faith, Your Honor, we

17   have looked at the debtor's pleadings.  We have looked through

18   their MORs, their petition, their plan, to identify any scope.

19   I mean, there's even been post-petition reports that were

20   filed, you can see most of those, those payments are really

21   just to Mr. Stosberg.  There's no other transactions that we

22   can figure out what we should be searching for.

23         But, Your Honor, the City has no documents that could

24   be related to, either again, a direct transfer or a subsequent

25   transfer of any of the debtor's assets.

1          THE COURT:  What about the arena?

2          MS. WIMBERG:  So the arena -- and again, I apologize,

3   I'm not in the weeds with the Coliseum.  So I've --

4          THE COURT:  But see, that's what the deal is.  It's

5   not so much the debtor's assets.  It's the debtor claiming a

6   tort related to the inability to develop the sublease.

7          MS. WIMBERG:  But --

8          THE COURT:  Is that --

9          MS. WIMBERG:  -- that's the adversary proceeding.

10          MR. HIRSCH:  Your Honor, let me --

11          THE COURT:  Yeah, but see, but it wasn't really -- I

12   mean, this was -- this was the problem from the very beginning.

13   It's the reason the ITS ever filed.  When Mr. Hirsch was

14   opposed to the original debtor because -- you know, Mr. Siegel

15   is gone now but when the whole idea -- there was only one

16   thing.  Right?

17          MR. HIRSCH:  Right.  Your Honor, let me just clarify

18   something.

19          MS. WIMBERG:  But if we're in the adversary

20   proceeding, isn't that -- then more discovery in the adversary

21   proceeding?

22          THE COURT:  No, they're entitled to a 2004.  We're not

23   relitigating.

24          MS. WIMBERG:  I know, I know.  But this is the

25   post-petition -- the 549 claim --

1       THE COURT:  I want to see the original 2004 order, Mr.

2   Hirsch.  Where is it?

3       MR. HIRSCH:  Yeah.  It's --

4       THE COURT:  Talk about old eyes.

5       MR. HIRSCH:  It's Docket -- oh, no, that's --

6       MS. WIMBERG:  523.

7       MR. HIRSCH:  523.  Yeah.

8       MS. WIMBERG:  It's Docket 523.

9       THE COURT:  Let's just -- okay.

10       MR. HIRSCH:  Your Honor, if I just may, I think that

11   what the issue here -- the fundamental disconnect between the

12   City and us, and I believe and the Court and the City, is the

13   motion for 2004 is -- in the main case relates to investigation

14   of the City's assets.  It has nothing to do with the adversary

15   proceeding.

16       THE COURT:  Right.

17       MR. HIRSCH:  It has nothing to do with what the debtor

18   in the adversary proceeding, 549, and we clarified that with

19   the motion to reconsider and the subsequent order.  All we're

20   seeking is discovery relating to the City's financial status

21   and situation vis-a-vis the sale of the Coliseum.

22       THE COURT:  And the Court ruled on that, on the motion

23   to reconsider --

24       MR. HIRSCH:  And you did, and I just wanted to

25   clarify, the City keeps going back and forth.  So the motion to

1  compel that we filed last week on an emergency basis is, we

2  already did this.  Like, how many times?  The City is reading

3  Your Honor -- with all due respect, Your Honor's ruling and

4  order incorrectly.  This has nothing to do with the adversary

5  proceeding.

6        We will be serving discovery in the adversary

7  proceeding in short course and due order very soon and --

8        THE COURT:  Yeah, otherwise it would be duplicative.

9        MR. HIRSCH:  Correct, Your Honor.

10        THE COURT:  I think the Court got that.  But I had to

11  go back down memory lane for a few minutes about how we got

12  here.  We got here -- the greatest irony of all is that the

13  city of Oakland has lost, what is it, the Raiders franchise and

14  this terminal, had it ever been developed, would have been a

15  huge economic engine.  That was the whole goal.  That's the

16  only reason that ITS, the new reorganized debtor, is even

17  sitting here is because of the idea -- but anyway, that irony

18  is not lost on the Court.

19        But I get it, the 2004 and this are different but it's

20  not like this was never raised in the underlying bankruptcy

21  when it was still litigated between the reorganized debtor and

22  what was the original filing debtor run by John Siegel.  So --

23        MS. WIMBERG:  But -- and this is the part where --

24  Your Honor, and this is where I think that there's -- I've read

25  your Court's order.  I've underlined it.  I've gone back and

1    forth to make sure that we are compliant with Your Honor's

2    orders.

3          THE COURT:  Right.

4          MS. WIMBERG:  The 2004 is -- I mean, it is an

5    investigation of the --

6          THE COURT:  Of the Coliseum issue.

7          MS. WIMBERG:  -- of the debtor's acts, conducts, or

8    property.  The debtor's liabilities, and financial conditions.

9    I mean, that is just the scope of the 2004.  And there's great

10   case law from our district, from other districts.  When you go

11   to a third party that has no connections, right to -- we

12   weren't a creditor in this case.  There was no pleading in this

13   case.  There has to be some relation to the debtor.  And that's

14   where -- so we very much understand the scope of the --

15          THE COURT:  Well, what's happening here is -- this has

16   gotten to, you have filed a motion to compel because you think

17   on the 2004 order they're playing a very narrow construction of

18   the Court's order and then the original order and the motion to

19   reconsider.

20          You haven't filed a motion for a protective order, or

21   to limit, or anything.  And so we're now into semantics.  This

22   is semantics.  If you choose -- if the City chooses to narrow

23   its view of what has been raised in the Court's memoranda

24   opinion, the first one, and then the motion to reconsider, and

25   it turns out there are documents that are responsive to the

1   Court's original determinations, then there will be a motion

2   for sanctions that will follow, and if it is discovered that

3   the City of Oakland has narrowly reviewed this Court's order --

4   the Court can't look into your files, or your files, or

5   anything.

6           The only way the Court gets to react to any of that is

7   if it is discovered that there was not forthright and full

8   responses to discovery.  This is not a time to discover legit -

9   - or to argue legitimacy of the discovery.  It is not a time to

10  discover the admissibility of the discovery, or its relevance,

11  or any -- it's just -- it only has to be superficially related.

12  And within -- the way the Sixth Circuit Court of Appeals

13  interprets a Bankruptcy Rule 2004 order, and in accordance with

14  my opinion.

15          But where we're going with this, whether you had filed

16  a motion to compel or not, is a motion for sanctions if you

17  find -- if the ITS sincerely believes that there has been a

18  breach of the appropriate reading of the Court's orders and the

19  Sixth Circuit rules.  Now, what you're saying is if the Court

20  enters an order compelling that it's like -- the Court has

21  already decided that there's a default.  The Court doesn't know

22  there's actually been a default yet.  All I know is there's an

23  impasse on discovery.  Go ahead.

24          MR. HIRSCH:  Yeah, sorry, Your Honor.  I don't want to

25  belabor the point, but just in our motion that Your Honor,

1    eventually, you know, after -- the 2004 motion that you

2    approved with your memorandum decision, what we asked for were

3    all documents in your possession including but not limited to

4    all communications and contracts with the AASC relating to the

5    Coliseum.  Okay.

6         So we know that there has to be those documents,

7    right?  But the City keeps -- and I wanted to say this one

8    point to make sure it's clear for the record.  The City keeps

9    talking about 549 post-petition transfer, and that it's very

10   narrow and there can't be any documents relating to that

11   because statute of limitations and the debtor, the ITS, the

12   reorganized debtor, can't have those claims.

13        That's what they're basically constantly saying.  And

14   we've litigated this, and we litigated this, and Your Honor's

15   decided it.  But just for the record, I want to be clear.  This

16   isn't a 549 potential cause of action relating to this

17   bankruptcy case, ITS.  It's relating to potential bankruptcy of

18   the City of Oakland, and that's where you and I discussed the

19   Chapter 9, the potential claims, and under the main case, the

20   reorganized debtor has the right as a potential creditor of the

21   City to look into this.  Why?  And Your Honor already ruled on

22   this, but because the City may dissipate those assets if the

23   sale takes place, and we would like to understand the scope of

24   what is happening there.

25        So that is what's shocking to us.  We know that there

1  must be documents relating to that, and it's just as simple as

2  that, and I appreciate and understand Your Honor's -- and I

3  take to heart Your Honor's comments relating to an impasse.  We

4  don't want there to be an impasse.  We want the City to just

5  give us those documents, and then we go on from there.  Thank

6  you.

7            THE COURT:  All right.

8            MS. WIMBERG:  And, Your Honor, because we pulled up

9  transcripts, I just want to make sure that we get an

10  opportunity to respond.

11            THE COURT:  Sure.

12            MS. WIMBERG:  In that, Your Honor, just as you said

13  before, we're not looking at every motion, every file.  We

14  looked at your Court's order.  We looked at your Court's order

15  in the 2004.  And the City really didn't -- I mean, we haven't

16  looked -- I mean, I bring these arguments because that's, you

17  know, the litigator in me that I say these things, but I mean,

18  they didn't give us a subpoena.  We still responded to the

19  documents.  You know, I mean, we didn't fight these -- every

20  single thing, as Mr. Hirsch is representing.

21        We have been trying to go down this path of looking

22  through and making sure that we are in compliance with your

23  Court's order.  And we would ask, Your Honor, when we're

24  concluding, that if Your Honor is inclined to issue the motion

25  to compel, that you at least tell the parties to go back and

30

1    talk to each other again.

2         I mean, because that's what's supposed to happen under

3    the rule.  We're supposed to be having good faith discussions,

4    and Your Honor, I can tell you that that hasn't happened.  We

5    responded, they got an email, and we said, well, what else are

6    we supposed to search for.  Nothing.  And that's why we're

7    here.  And so I'm concerned, Your Honor, that if we go down

8    this path of you entering the order, we're back at saying,

9    okay, well, are we going to communicate in good faith to try to

10   figure out, can we find things where --

11        THE COURT:  Well, of course you're going to

12   communicate in good faith, because the costs of this litigation

13   are extreme.  It's not all that unusual in litigation of this

14   level, but it is a little bit when you're looking at the debtor

15   recovering an asset.  That's what the debtor is looking to do.

16        MR. HIRSCH:  Your Honor, we're available if you want

17   to go into recess, or we're available to meet and confer right

18   now.  I mean, I understand --

19        THE COURT:  Let's do it.

20        MR. HIRSCH:  -- the city's counsel are on the phone,

21   on the cell phone, listening.

22        THE COURT:  Yep.

23        MR. HIRSCH:  We're happy to do that right now.

24        THE COURT:  Well, we're going to do that.  We're going

25   to take -- we'll come back at noon.

31

1    MR. HIRSCH:  Thank you, Your Honor.

2    THE COURT:  We'll take a twenty-minute --

3    MS. WIMBERG:  Thank you, Your Honor.

4    MR. HIRSCH:  Appreciate that.  Thank you very much.

5    (Off the record at 11:40 a.m.)

6

7              **C E R T I F I C A T I O N**

8    I certify that the foregoing is a correct transcript

9    from the electronic sound recording of the proceedings in the

10   above-entitled matter.

11

12   *Kathleen M. Price*                    DATE:   March 12, 2025

13   Kathleen Price, AAERT Cert. No. 325

14   A&S Transcript Providers

15

16

17

18

19

20

21

22

23

24

25