# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

|  |  |
|---|---|
| In re: | Case No. 3:25-cv-00065 |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al*., | Judge Benjamin Beaton |
| Debtors. | |

## DECLARATION OF DANIELLE LEONARD IN SUPPORT OF THE CITY OF OAKLAND'S NOTICE OF HEARING TRANSCRIPT

I, Danielle Leonard, declare as follows:

1.  I am a member in good standing of the bar of the State of California, a partner at the law firm Altshuler Berzon LLP, and counsel of record for the City of Oakland ("City") in this matter.  The contents of this declaration are based on my personal knowledge, and if called to testify I would competently testify thereto.

2.  I provide this declaration in support of the City's Notice of Hearing Transcript.

3.  On March 12, 2025, the City of Oakland ("City") filed an Urgent Supplemental Notice ("Urgent Notice") to its pending motions to stay in this Court in light of the Bankruptcy Court's order to compel Rule 2004 discovery issued that same day. W.D.K.Y. Case No. 3:25-cv-00023 Dkt. ECF 19; W.D.K.Y. Case No. 3:25-cv-00065 Dkt. ECF 16.  At the time the Urgent Notice was filed, only a partial transcript—covering roughly the first half of the proceedings—of the in-person hearing on the motion to compel was available.  Urgent Notice at 5 n.2.  Consistent with the City's representations in its Urgent Notice, it is now providing this Court with the full transcript of that hearing, which became available today.  *Id.* A true and correct copy of that hearing transcript is attached hereto as **Exhibit A**.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of March, 2025 in San Francisco, California.

*/s/ Danielle Leonard*

Danielle Leonard

Altshuler Berzon LLP

1

# EXHIBIT A

```
 1                    UNITED STATES BANKRUPTCY COURT
                      WESTERN DISTRICT OF KENTUCKY
 2
                                        . Chapter 11
 3   IN RE:                             .
                                        . Case No. 19-32231-jal
 4   INSIGHT TERMINALS SOLUTIONS,       .
     LLC,                               .
 5                                      .
                    Debtor.             .
 6   _____    .
     INSIGHT TERMINAL SOLUTIONS, LLC,. Adv. Case No. 24-03007-jal
 7                                      .
                    Plaintiff,          .
 8                                      .
        vs.                             .
 9                                      .
     CITY OF OAKLAND,                   . March 11, 2025
10                                      . 11 a.m.
                    Defendant.          .
11   . . . . . . . . . . . . . . . .
12        TRANSCRIPT OF [560] MOTION TO COMPEL CITY OF OAKLAND
              TO COMPLY WITH RULE 2004 ORDER FILED BY DEBTOR
13               INSIGHT TERMINAL SOLUTIONS, LLC. FILED BY
                  INTERESTED PARTY, THE CITY OF OAKLAND
14                 BEFORE THE HONORABLE JOAN A. LLOYD
                     UNITED STATES BANKRUPTCY JUDGE
15
16   APPEARANCES:  (Continued)
17   Audio Operator:           Electronically Recorded
18   Transcription Company:    A&S Transcript Providers
                               6 Trout Brook Road
19                             Stanhope, NJ 07874
                               (973) 914-3080
20
21
22
23
24   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
25
```

2

```
1   APPEARANCES:

2   For ITS:                    Robert M. Hirsh, Esq.
                                NORTON ROSE FULBRIGHT US, LLP
3                               1301 Avenue of the Americas
                                New York, NY 10019-6022
4
                                Andrew David Stosberg, Esq.
5                               GARY ICE HIGDON, PLLC
                                3939 Shelbyville Road, Suite 201
6                               Louisville, KY 40207

7   For the City of Oakland:    April A. Wimberg, Esq.
                                Patrick Navin, Esq.
8                               DENTONS BINGHAM GREENEBAUM, LLP
                                101 South 5th Street, 34th Floor
9                               Louisville, KY 40202

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (Proceedings commence at 11:14 a.m.)

2    THE CLERK:  United States Bankruptcy Court for the

3   Western District of Kentucky is now in session, the Honorable

4   Joan D. Lloyd presiding.

5    THE COURT:  All right.  Good morning.

6    MR. STOSBERG:  Good morning, Judge.

7    MR. HIRSH:  Good morning.

8    THE COURT:  I don't have any staff.  Thank you,

9   Angela.

10    THE CLERK:  You're welcome.

11    THE COURT:  Everything is -- Jim is sitting in with

12   me.  He's -- he works for Judge Stout.  Because we're doing

13   this on an expedited or emergency basis, we just -- I mean, it

14   was just a bad -- bad timing. Patrick, nice to see you.

15    Let's go ahead and get appearances.

16    MR. STOSBERG:  Good morning, Your Honor.  Andrew

17   Stosberg on behalf of Debtor Insight Terminal Solutions and

18   co-counsel Robert Hirsh.

19    THE COURT:  Good morning.

20    MR. HIRSH:  Good morning.  Good morning, Your Honor.

21   Good to see you.

22    THE COURT:  I notice you got here...

23    MS. WIMBERG:  Good morning, Your Honor.  April Wimberg

24   on behalf of the City of Oakland.  Also in the courtroom with

25   me is Patrick Navin, who's with our firm, who is now a Kentucky

1   licensed attorney.  He's just waiting for his Western District

2   --

3              THE COURT:  Congratulations.

4              MS. WIMBERG:  So -- and, Your Honor, I want to let the

5   court know, or ask permission, last time that all the parties

6   could not appear in person, you allowed us to have our speaker

7   phones open and let the parties listen, and obviously they're

8   not going to participate, but just to be able to hear, if

9   that's okay.

10             THE COURT:  Yes.

11             MR. STOSBERG:  And to that end, Your Honor, the

12  manager of ITS, he's on the phone on mute listening.

13             THE COURT:  Right.  Right.  They just have to know

14  they can't participate.

15             MR. STOSBERG:  Yes, Your Honor.

16             THE COURT:  They just get to listen.  All right.  So,

17  Mr. Hirsh.

18             MR. HIRSH:  Yes.  Thank you, Your Honor, for

19  scheduling this on an expedited basis, and I apologize for

20  having to be here, but we felt that there was really no other

21  avenue but to address this with the Court.  I'm sure Your Honor

22  read our motion to compel.

23             Frankly, we were really surprised, in a negative way,

24  with the response from the City.  We had a meet and confer

25  several weeks prior, as the motion -- unless you want me to go

1 into the motion in detail, I will, but just to recap the main

2 points.

3        THE COURT: Do that. I was actually on vacation and

4 about 9,500 feet above sea level, but I did read it. I read

5 everything, but go ahead and tell me again in case somehow or

6 another I missed anything. I just want to give everybody a

7 fair shake.

8        MR. HIRSH: Yeah. No, I appreciate Your Honor, and I

9 hope you had a good vacation. I assume being that high up

10 above sea level, you must have been skiing.

11        THE COURT: Yes, and that was actually the low part.

12 There's some that was much higher.

13        MR. HIRSH: Well, that's fantastic.

14        So, let me just address it simply. We were here

15 before Your Honor on the City's motion to reconsider back in --

16 I think it was January 11th. That motion to reconsider the

17 2004 order that Your Honor had previously entered, you denied

18 their motion to reconsider, and you wrote an opinion on that,

19 Docket Number 523.

20        We then proceeded to meet and confer with the City,

21 and I attached as exhibit -- as an exhibit to the motion, the

22 back-and-forth email where the meet and confer was confirmed,

23 and what the parties were going to do and when they were going

24 to do it, and I think the last email was from Ms. Leonard,

25 counsel for the City, to confirm things that was said in the

1  meet and confer, and to make sure that there was no issues with

2  that.

3        Specifically, the City asked for a two-week --

4  additional two-week time from what we wanted originally in the

5  timing of the production documents, and that's key for this

6  motion to compel, and of course we said no problem, and again

7  I'm paraphrasing, and so when we received the response to the

8  motion, we thought in good faith that we were going to receive

9  documents.

10        The City of course says no, they never said they were

11  going to produce documents, they were just going to give a

12  response to the motion to -- the 2004 motion -- or 2004

13  request, I should say, for documents.

14        We were really taken aback.  It was a big surprise to

15  us when their response, which is also attached as an exhibit to

16  our motion to compel, basically said we contest the

17  jurisdiction of the Court, we reviewed our records, we don't

18  have any documents.  That's basically what they said, in a

19  nutshell.

20        We find that unbelievably difficult to believe,

21  especially in light of the situation where the City is in the

22  process of selling the Coliseum and has various contracts.  At

23  the very least, we thought we would be receiving those

24  documents.

25        And so that was the basically reason to file the

1  motion to compel.  The City responded with an email from one of

2  its council in Ms. Leonard's office the next day to my email,

3  and that's all part of the motion, saying that they reviewed

4  their records, they don't have any documents relating to ITS

5  and the Coliseum.

6          And that's where we decided we had to file a motion to

7  compel.

8          THE COURT:  All right.  And so you believe there are

9  documents that they're aware of and are withholding?

10         MR. HIRSH:  Well, there are certainly -- there

11 certainly are, Your Honor.  That's what we believe, correct.

12         THE COURT:  All right.

13         MR. HIRSH:  Yeah.  And I'm happy to answer any other

14 questions you have or I'll wait to hear from Ms. -- counsel for

15 the city and I could address those issues.

16         THE COURT:  All right.  Well, I'm going to let Ms.

17 Wimberg speak now.

18         MR. HIRSH:  Thank you.

19         THE COURT:  All right.

20         MS. WIMBERG:  Thank you, Your Honor.  If you're okay,

21 I may sit during my presentation.

22         THE COURT:  Right.

23         MS. WIMBERG:  I apologize, my eyes are getting older.

24         Your Honor, if we could address the motion from ITS in

25 two parts, and one is just the procedural part because I think

8

1  that counsel maybe mistakenly just talked about the record in a

2  meet and confer.

3       The City certainly sat down and had a meet and confer

4  with ITS.  And it was the Rule 26, I mean, was just looking at

5  the scope of discovery and was talking about the adversary

6  proceeding and the documents could be spoken -- but at that

7  time, they did agree to dates in which the City would sit for a

8  deposition and the review of documents and an extension was

9  talked about and agreed at that time.

10      The City then did respond to the 2004 on March 4th and

11 said there were no responsive documents.  And I'll get to that

12 and how the City searched for that and why that's the position

13 but then counsel does send a message and say, I don't believe

14 this, you must have responsive documents.  And, when they filed

15 their motion to compel with the Court, Your Honor, they didn't

16 represent that.  It's only in our response did we let you know,

17 we did respond that hey, here's the search of the scope of the

18 documents, do you need us to look for something else.  That

19 email was not responded to.  And presumably, they contacted

20 your chambers to see when you had times and filed their

21 objection for --

22      THE COURT:  Nobody contacts my chambers.  They contact

23 the clerk's office.

24      MS. WIMBERG:  The clerk's office.

25      THE COURT:  Just so everybody is clear about that.

1    MS. WIMBERG:  So someone contact -- and gets a date

2  and they filed the motion to compel.  But at no time has there

3  ever been a response saying, no, you're not looking right in

4  the scope of here's why you're wrong, here's the debtor's

5  assets that you need to start searching for within the 549.  No

6  response.

7    So there's not been -- if we're looking at a true

8  motion to compel, to be compliant with the rules, there's been

9  no good faith discussions between the parties to say, okay,

10  where else are we looking -- or you need to expand your search.

11  There's been no response.

12    So now we're here, Your Honor.  And I guess,

13  unfortunately, we're asking you to now be this arbitrator of a

14  discovery dispute without us discussing it, but -- so what the

15  City has done, Your Honor, is we went through the debtor's

16  records.  Well, first, we looked at the 2004 order in the

17  motions and said, okay, we're looking for what assets of the

18  debtor that could be subject to a 549 claim.  We looked at the

19  debtor's bankruptcy, which was filed July 2019.  We looked at

20  the petitions.  We looked at the MORs filed.  We looked at the

21  budget.  Anything that could constitute the scope of the

22  debtor's assets.  The plan was confirmed in November 2020, so -

23  - and that allowed the debtor to use its assets, right, and

24  without Bankruptcy Court approval or they have to be consistent

25  with the Bankruptcy Code.  So we have a temporal scope of 549

1    actions.

2          So, after looking at those things, and Your Honor,

3    when you issued your order, too, you recognized the City was

4    never a creditor to the estate, and your order recognized that

5    there was no claims against the City that they were ever

6    brought into the bankruptcy suit.

7          So, and I don't think that there's any dispute, that

8    the City has never had an agreement with ITS.  There's no

9    contractual relationship.  So -- but in good faith, and that

10   was, I think, the original motion to reconsider and try to

11   think about this, the City can't see how there was a transfer

12   of the debtor's assets to the City, even in a good faith, a

13   subsequent value, like, or I'm sorry, a subsequent transferee

14   --

15         THE COURT:  Well, now, remember, it sounds like you're

16   doing the legal analysis of whether or not the claim will lie

17   and all the Court is trying to -- the Court is now being called

18   upon to determine whether or not discovery orders and requests

19   are being created -- are being properly responded to.

20         So, whether or not a claim will lie against the city

21   of Oakland, I mean, it sounds like the City of Oakland is using

22   its decision about whether or not the debtor -- or the

23   reorganized entity has the right to ask for this, but the Court

24   has already ruled, Bankruptcy Rule 2004 is quite broad, because

25   there was only one asset in that case, as I recall, and it was

11

1    the sub-lease.

2              MR. HIRSH:  That's right, Your Honor.

3              THE COURT:  It's not like this -- there were pencils

4    and file cabinets or chairs.  So I understand where you're

5    coming from, but understand this, that whether or not an action

6    will lie is a whole different story.  This is discovery, and it

7    is as broad as -- unless the City has asserted a privilege of

8    some kind, that's really what the Court is trying to figure

9    out, what exactly is the City -- if Mr. Hirsh turns out to be

10   right, and he asserts -- I don't know, hypothetically, let's

11   assume Mr. Hirsh is correct, and there are documents that are

12   responsive, whether it's going to be admissible evidence of --

13   I mean, this is just sort of elementary to the Court, but I get

14   it, the City of Oakland is presenting its argument.

15             MS. WIMBERG:  And I'm so sorry if I lost the Court.  I

16   apologize.  So let me -- so certainly, that -- we brought

17   privileged, right, objections.  I mean, that was in our 2004,

18   we filed that, there's certainly privilege --

19             THE COURT:  And so how would you handle that in a

20   discovery response?  What you would do is you would assert the

21   privilege, and if you couldn't work out a confidentiality

22   agreement, you would file your objection.  You would seek -- if

23   you don't have an agreement, you would seek a protective order.

24             MS. WIMBERG:  And, Your Honor, we asked for one, and

25   we haven't received a protective order.  But -- and again,

1    unfortunately --

2        THE COURT:  But, I mean, what is the -- so that's the

3    thing is does the City of Oakland get the chance to limit -- I

4    mean, it's just -- this is what the Court does.  Does the City

5    of Oakland get the right to limit, at this point, its responses

6    without seeking -- first off, without answering, and if it

7    doesn't answer, what is the basis.  Is it work product, is it -

8    - what is it, proprietary?  So --

9        MS. WIMBERG:  And maybe -- so the Court's order,

10   right, in the 2004 -- this is discovery related to 549, a

11   post-petition, like, transfer of the debtor.

12       THE COURT:  Right.

13       MS. WIMBERG:  In the City -- there are no -- the City

14   has looked through any -- to see if there was anything related

15   to the terminal or ITS sublease.  And then we ask if there's

16   something beyond that where we should be looking.  But, Your

17   Honor -- and this is what the concern is.  I think that the

18   motion to compel, again, is pretty telling because they say

19   there, this is a motion to compel to investigate and research

20   the City's activities regarding its potential insolvency.  That

21   is what the motion to compel says, Paragraph 5.  It's not about

22   a 549 action, but that's what the City is responding to.  It's

23   the -- I mean, that is what the City -- it's verbatim, it says,

24   "ITS is investigating and researching the City's activities

25   relating to its potential insolvency."

1          There's not a 540 -- like that's --

2          THE COURT:  Well, hold on a second.  Allow me to argue

3     with you a bit here.

4          MS. WIMBERG:  Absolutely.

5          THE COURT:  So I'm looking at the tendered order,

6     which, as far as the Court knows, that is what ITS wants the

7     Court to sign.  So I know you're looking at Paragraph 5 of the

8     motion.

9          MS. WIMBERG:  Right.

10         THE COURT:  But just FYI to everyone else, and I don't

11    -- you all are all seasoned lawyers and you know this, if it's

12    not in the order, I'm not really sure what the import is.  I

13    mean, even after all these years of being on the bench, I'm not

14    even sure what the import is of Paragraph 5 when the actual

15    order simply says the City of Oakland is compelled to comply

16    with this Court's opinion and order, Bankruptcy Docket 523, and

17    supply the documents set forth in the Bankruptcy Docket 508.

18         And if it doesn't exist, what would be your response?

19    You would file a formal response saying, nothing.  Got nothing,

20    right?  You'd do a response to the request for production of

21    documents, interrogatories, ad -- whatever it is, you would

22    just say, don't have it, right?

23         MS. WIMBERG:  Which is, I believe, what we filed, Your

24    Honor, and that was -- the City provided and did file --

25         THE COURT:  So what's wrong with the Court signing

14

1    this order if it doesn't exist?

2            MS. WIMBERG:  But, Your Honor, and this is where I

3    guess, then --

4            THE COURT:  Just out of curiosity, I mean, what -- if

5    it doesn't -- have you filed responses?

6            MS. WIMBERG:  Yes, Your Honor.

7            THE COURT:  Are they in the court record?

8            MS. WIMBERG:  Yes.

9            THE COURT:  Okay.  And so you think this motion to

10   compel is over the top.

11           MS. WIMBERG:  Well, I guess it's not -- it's a -- what

12   are we -- if there's not documents that exist, and we filed for

13   that --

14           THE COURT:  Then you've complied.

15           MS. WIMBERG:  And then, so then we've complied.  And

16   then, I guess, that's where we -- so the motion to compel,

17   right, is that we haven't done that already.  I mean, that's

18   basically telling the City, well, we haven't complied with the

19   Court's order but we're telling you, we have complied with your

20   order.

21           And we then, in good faith, emailed and said, do you

22   need us to search for something else, and then there was no

23   response.  It was absolutely crickets in a response.  And that

24   is what the -- but that's supposed to be the grounds for the

25   motion to compel is that saying -- there's a certification

15

1   saying we tried in good faith to get here.  So if Your Honor

2   files -- signs the response, it's already -- I mean, isn't that

3   on the record say that we didn't comply with the Court's orders

4   already?  And they've brought you no information to say that --

5   they're just saying that there's got to be documents that

6   exist.  And we're saying, well, we searched these, what else do

7   you want us to do?  Nothing.

8              THE COURT:  Okay.  Mr. Hirsh?

9              MR. HIRSH:  Yeah.  Your Honor, thank you.  Let me try

10  and clarify some of the comments and redirect Your Honor for a

11  moment because I think there's a -- unfortunately, there's a

12  historic history here, which too bad there is because discovery

13  motions really, there shouldn't be this.

14             But let me address a few things.  So we had our

15  hearing January 11th, and there was a whole discussion on the

16  motion for 2004.  And I can cite to the transcript, but I think

17  more --

18             THE COURT:  Mr. Lee was here.

19             MR. HIRSH:  Correct.  I was --

20             THE COURT:  Did you say it, or did Mr. Lee?

21             MR. HIRSH:  So I was here, Mr. Lee was here, Mr.

22  Stosberg was here.

23             THE COURT:  Right.  I have this creepy photographic

24  memory on certain things.

25             MR. HIRSH:  It was July.  Excuse me.

16

1          THE COURT:  It was July?  Okay.

2          MR. HIRSH:  Right.  The motion to consider was

3     January, and I'll get to that.

4          THE COURT:  Right.  I apologize.

5          MR. HIRSH:  But we had this whole discussion, and it's

6     in the transcript, specifically, July 11th, we cite -- and I'll

7     cite to it for the record but before I do, there was a

8     discussion with one of the City's counsel, Ms. Brewster, I

9     believe --

10         THE COURT:  And just for -- got out of the case.

11         MR. HIRSH:  Yes.  I think yesterday, for some reason.

12    Yes, I saw that.

13         THE COURT:  Right.  Whatever.  But I just saw her,

14    yeah.

15         MR. HIRSH:  Yeah.  But at the time, there was a back

16    and forth with Your Honor and Ms. Brewster about this 2004

17    motion and what we were trying to seek, and what was proper in

18    their mind, and what was improper, and it went back and forth

19    and back and forth.

20         Your Honor, I have copies of the transcript for Your

21    Honor and Ms. Wimberg --

22         THE COURT:  You can show it to me.  Make sure Ms.

23    Wimberg gets one.

24         MR. HIRSH:  Okay.

25         THE COURT:  It's going to be interesting what I

1    remember and what you were saying but --

2         MR. HIRSH:  May I approach?

3         THE COURT:  Yes, of course.  Thank you.

4         MR. HIRSH:  Thank you.

5         THE COURT:  What page?  Are -- just --

6         MR. HIRSH:  Yeah.  I mean, specifically Page -- the

7    first cite to raise -- to refresh Your Honor's memory as well,

8    and just to bridge this discussion, would be Page 36 of the

9    transcript, Lines 1 through 25.  And in a nutshell -- and I'll

10   wait if Your Honor wants to get to that page.

11        THE COURT:  No, go ahead.  I've probably already read

12   it now.  Go ahead.

13        MR. HIRSH:  Yeah, sure, Your Honor.  But basically Ms.

14   Brewster was discussing how inappropriate it was for the 2004

15   and I'll quote, you know, they were listing the documents that

16   we would be seeking and stating that Rule 2004 is inappropriate

17   quote, "Especially when most of this information could be had

18   through an open records request" --

19        THE COURT:  Yeah.

20        MR. HIRSH:  End quote.

21        THE COURT:  Okay.

22        MR. HIRSH:  That said -- and continued on, "We know

23   the City would not respond to a public records request, a PRAR

24   are in California, or would otherwise find a way to argue that

25   the document should not be produced under that PRAR."  That was

1    I think Mr. -- what r. Lee was saying in the record.

2         And I only raised that because I thought we were way

3    beyond that.  Right?  We had that hearing back in July of 2024

4    last year, then the City didn't like Your Honor's decision as I

5    relayed in Docket 523 and I'll point out in Your Honor's

6    decision, you know, you discussed and in the motion and in the

7    soliloquy and in the argument from the July hearing, you know,

8    the debtors and the City -- sorry, the debtors allege herein

9    that the City of Oakland is a contingent debtor -- a contingent

10   debtor of the debt -- the debtor rights but -- the debtor and

11   that the City is engaging in questionable and improper

12   financial dealings that warrant investigation.

13        It further sets forth those actions of the City

14   regarding the possible sale of one of the City's biggest

15   assets, the City's undivided fifty-percent interest in the real

16   property where the Oakland Coliseum is located.

17        And then Your Honor's decision goes on to say, "The

18   debtor has established that the reason for the Rule 2004

19   examination is to determine whether the City's transaction with

20   respect to the Coliseum may constitute avoidable post-position

21   transfer," et cetera, et cetera.

22        You rule on that, and then the City didn't like your

23   ruling.  And so then they filed a motion to reconsider.  And

24   then we fast forward to January's hearing, right, and where I

25   think we basically -- Ms. Leonard was here I think in person

1    and January 28th was the hearing, not the 11th, sorry.

2              THE COURT:  Right.

3              MR. HIRSH:  Of this year.  And they raised the same

4    arguments over, over and over again.  Clearly, there are

5    documents because back in the July 11th hearing, Ms. Brewster

6    admitted that there's public records and there are documents

7    relating to the Coliseum.

8              We thought we would be receiving those documents with

9    those -- with those public records -- to me, it's ironic; if

10   they're public records, why can't they just produce them?

11   That's number one.

12             Number two, with those public records, it is -- it

13   just seems completely implausible to believe that there's no

14   emails, there's no other written communications.  There's

15   nothing relating to the negotiation of the contracts or to --

16   relating to anything, and so fast-forward again, their motion

17   reconsider was denied.

18             The order was clear, and we met and conferred in good

19   faith, and I don't have to repeat myself again But we were

20   really surprised by the City's response.  And the motion to

21   compel, Your Honor, we believe there are documents; the City

22   has admitted there are documents.  And so please give us those

23   documents Let us investigate what we need to investigate and go

24   from there.  And that's all we're asking for.

25             THE COURT:  And so your point is when Ms. Brewster

1  said this, you can get the same documentation through a

2  basically a state-level FOIA.

3        MR. HIRSH:  Right.

4        THE COURT:  You think that acknowledged that these

5  records exist or do you have another independent basis to

6  believe that these records exist?

7        MR. HIRSH:  Well, we have two bases; one is the -- is

8  counsel's statements --

9        THE COURT:  Okay.

10        MR. HIRSH:  And two is the media which we I think

11 discussed several of the hearings, the media reports and the

12 statements of City officials, council people, et cetera, et

13 cetera, and I think I remember raising -- saying, Your Honor, I

14 wasn't going to argue or speak but I did because there's been

15 discussion of City insolvency and what we're trying to do

16 investigate the City's solvency or insolvency and dissipation

17 of assets.

18        And under 2004 we're entitled to do that because there

19 could be harm to the reorganized debtor, and that's all we're

20 asking for.  As you said at the beginning of this hearing, this

21 is a discovery issue.  Whether or not a claim is brought,

22 whether or not the Court rules in our favor or not, who knows

23 but all we're asking for is to investigate.  And we're

24 basically, in our view, being stonewalled, and that's why we

25 unfortunately felt the need to file the motion to compel.

1          THE COURT:  All right.  Anything else?

2          MR. HIRSH:  One last point.  This Coliseum deal, how -

3   - it's such a large issue of large magnitude for the City.  And

4   again, we don't know exactly the numbers.  We don't know

5   exactly the details, and that's why we're trying to find out

6   but the news media seems to show that this is such a large

7   asset sale that it's important that we know.  And how can there

8   be no records.  It just doesn't make any sense.

9          MS. WIMBERG:  Your Honor, I guess the one, first and

10  foremost, the City has never said that there are records.  I

11  mean, that's just -- the City has not this -- the City has said

12  that, and I believe Ms. Brewster and I don't know this, I mean,

13  I truly don't, if information can get through the City's open

14  records request.  I know Kentucky's open records request.  I

15  don't know that California's open records request.

16          But -- so the City has never said that there are

17  documents that exist.  And then I go back to the Court said

18  that ITS was allowed in 2004 to investigate post-petition

19  transfers to see if there was a 549 claim.  And they've taken

20  this further to say, you know, the state law equivalent.

21          But, yeah, and I haven't even brought up the fact --

22  like those are completely statutorily like barred by the

23  statute of limitations.  I haven't gone there because, again, I

24  took Your Honor's -- and we're not arguing the fundamentals.

25  It's whether these documents exist.

1          So we have said, all right, what potential debtor

2    assets could exist that the City would have records to, and

3    then are there anything that's related to ITS, these things

4    that, again, wouldn't be subject to privilege, work product,

5    and there -- the City has found nothing.

6          When we went back and said, here's the scope of the

7    search, what else do you want us to search, and that is where I

8    think that this should have turned, is that we should have

9    received a response, well, look for this person, look for these

10   transfers, look for something that could relate to the transfer

11   of the debtor's assets, and then the City would respond, and

12   then, Your Honor, we'd be -- I'm sure, unfortunately, it sounds

13   like we could be back here again, and we're going to be back

14   here in a couple weeks, Your Honor, but I go back to the

15   procedural, that this wasn't right, because there wasn't.  We

16   responded that same day, they filed a motion -- an emergency

17   motion to compel, without responding to us and saying, look, if

18   there's something that we should be searching to look for any

19   transfer of debtor's assets, let us know.

20         And within our -- again, in good faith, Your Honor, we

21   have looked at the debtor's pleadings.  We have looked through

22   their MORs, their petition, their plan, to identify any scope.

23   I mean, there's even been post-petition reports that were

24   filed, you can see most of those, those payments are really

25   just to Mr. Stosberg.  There's no other transactions that we

1  can figure out what we should be searching for.

2          But, Your Honor, the City has no documents that could

3  be related to, either again, a direct transfer or a subsequent

4  transfer of any of the debtor's assets.

5          THE COURT:  What about the arena?

6          MS. WIMBERG:  So the arena -- and again, I apologize,

7  I'm not in the weeds with the Coliseum.  So I've --

8          THE COURT:  But see, that's what the deal is.  It's

9  not so much the debtor's assets.  It's the debtor claiming a

10  tort related to the inability to develop the sublease.

11          MS. WIMBERG:  But --

12          THE COURT:  Is that --

13          MS. WIMBERG:  -- that's the adversary proceeding.

14          MR. HIRSH:  Your Honor, let me --

15          THE COURT:  Yeah, but see, but it wasn't really -- I

16  mean, this was -- this was the problem from the very beginning.

17  It's the reason the ITS ever filed.  When Mr. Hirsh was opposed

18  to the original debtor because -- you know, Mr. Siegel is gone

19  now but when the whole idea -- there was only one thing.

20  Right?

21          MR. HIRSH:  Right.  Your Honor, let me just clarify

22  something.

23          MS. WIMBERG:  But if we're in the adversary

24  proceeding, isn't that -- then more discovery in the adversary

25  proceeding?

24

1          THE COURT:  No, they're entitled to a 2004.  We're not

2     relitigating.

3          MS. WIMBERG:  I know, I know.  But this is the

4     post-petition -- the 549 claim --

5          THE COURT:  I want to see the original 2004 order, Mr.

6     Hirsh.  Where is it?

7          MR. HIRSH:  Yeah.  It's --

8          THE COURT:  Talk about old eyes.

9          MR. HIRSH:  It's Docket -- oh, no, that's --

10         MS. WIMBERG:  523.

11         MR. HIRSH:  523.  Yeah.

12         MS. WIMBERG:  It's Docket 523.

13         THE COURT:  Let's just -- okay.

14         MR. HIRSH:  Your Honor, if I just may, I think that

15    what the issue here -- the fundamental disconnect between the

16    City and us, and I believe and the Court and the City, is the

17    motion for 2004 is -- in the main case relates to investigation

18    of the City's assets.  It has nothing to do with the adversary

19    proceeding.

20         THE COURT:  Right.

21         MR. HIRSH:  It has nothing to do with what the debtor

22    in the adversary proceeding, 549, and we clarified that with

23    the motion to reconsider and the subsequent order.  All we're

24    seeking is discovery relating to the City's financial status

25    and situation vis-a-vis the sale of the Coliseum.

1          THE COURT:  And the Court ruled on that, on the motion

2     to reconsider --

3          MR. HIRSH:  And you did, and I just wanted to clarify,

4     the City keeps going back and forth.  So the motion to compel

5     that we filed last week on an emergency basis is, we already

6     did this.  Like, how many times?  The City is reading Your

7     Honor -- with all due respect, Your Honor's ruling and order

8     incorrectly.  This has nothing to do with the adversary

9     proceeding.

10          We will be serving discovery in the adversary

11    proceeding in short course and due order very soon and --

12          THE COURT:  Yeah, otherwise it would be duplicative.

13          MR. HIRSH:  Correct, Your Honor.

14          THE COURT:  I think the Court got that.  But I had to

15    go back down memory lane for a few minutes about how we got

16    here.  We got here -- the greatest irony of all is that the

17    city of Oakland has lost, what is it, the Raiders franchise and

18    this terminal, had it ever been developed, would have been a

19    huge economic engine.  That was the whole goal.  That's the

20    only reason that ITS, the new reorganized debtor, is even

21    sitting here is because of the idea -- but anyway, that irony

22    is not lost on the Court.

23          But I get it, the 2004 and this are different but it's

24    not like this was never raised in the underlying bankruptcy

25    when it was still litigated between the reorganized debtor and

1    what was the original filing debtor run by John Siegel.  So --

2           MS. WIMBERG:  But -- and this is the part where --

3    Your Honor, and this is where I think that there's -- I've read

4    your Court's order.  I've underlined it.  I've gone back and

5    forth to make sure that we are compliant with Your Honor's

6    orders.

7           THE COURT:  Right.

8           MS. WIMBERG:  The 2004 is -- I mean, it is an

9    investigation of the --

10          THE COURT:  Of the Coliseum issue.

11          MS. WIMBERG:  -- of the debtor's acts, conducts, or

12   property.  The debtor's liabilities, and financial conditions.

13   I mean, that is just the scope of the 2004.  And there's great

14   case law from our district, from other districts.  When you go

15   to a third party that has no connections, right to -- we

16   weren't a creditor in this case.  There was no pleading in this

17   case.  There has to be some relation to the debtor.  And that's

18   where -- so we very much understand the scope of the --

19          THE COURT:  Well, what's happening here is -- this has

20   gotten to, you have filed a motion to compel because you think

21   on the 2004 order they're playing a very narrow construction of

22   the Court's order and then the original order and the motion to

23   reconsider.

24          You haven't filed a motion for a protective order, or

25   to limit, or anything.  And so we're now into semantics.  This

27

1    is semantics.  If you choose -- if the City chooses to narrow

2    its view of what has been raised in the Court's memoranda

3    opinion, the first one, and then the motion to reconsider, and

4    it turns out there are documents that are responsive to the

5    Court's original determinations, then there will be a motion

6    for sanctions that will follow, and if it is discovered that

7    the City of Oakland has narrowly reviewed this Court's order --

8    the Court can't look into your files, or your files, or

9    anything.

10        The only way the Court gets to react to any of that is

11   if it is discovered that there was not forthright and full

12   responses to discovery.  This is not a time to discover legit -

13   - or to argue legitimacy of the discovery.  It is not a time to

14   discover the admissibility of the discovery, or its relevance,

15   or any -- it's just -- it only has to be superficially related.

16   And within -- the way the Sixth Circuit Court of Appeals

17   interprets a Bankruptcy Rule 2004 order, and in accordance with

18   my opinion.

19        But where we're going with this, whether you had filed

20   a motion to compel or not, is a motion for sanctions if you

21   find -- if the ITS sincerely believes that there has been a

22   breach of the appropriate reading of the Court's orders and the

23   Sixth Circuit rules.  Now, what you're saying is if the Court

24   enters an order compelling that it's like -- the Court has

25   already decided that there's a default.  The Court doesn't know

1    there's actually been a default yet.  All I know is there's an

2    impasse on discovery.  Go ahead.

3          MR. HIRSH:  Yeah, sorry, Your Honor.  I don't want to

4    belabor the point, but just in our motion that Your Honor,

5    eventually, you know, after -- the 2004 motion that you

6    approved with your memorandum decision, what we asked for were

7    all documents in your possession including but not limited to

8    all communications and contracts with the AASEG relating to the

9    Coliseum.  Okay.

10          So we know that there has to be those documents,

11    right?  But the City keeps -- and I wanted to say this one

12    point to make sure it's clear for the record.  The City keeps

13    talking about 549 post-petition transfer, and that it's very

14    narrow and there can't be any documents relating to that

15    because statute of limitations and the debtor, the ITS, the

16    reorganized debtor, can't have those claims.

17          That's what they're basically constantly saying.  And

18    we've litigated this, and we litigated this, and Your Honor's

19    decided it.  But just for the record, I want to be clear.  This

20    isn't a 549 potential cause of action relating to this

21    bankruptcy case, ITS.  It's relating to potential bankruptcy of

22    the City of Oakland, and that's where you and I discussed the

23    Chapter 9, the potential claims, and under the main case, the

24    reorganized debtor has the right as a potential creditor of the

25    City to look into this.  Why?  And Your Honor already ruled on

1  this, but because the City may dissipate those assets if the

2  sale takes place, and we would like to understand the scope of

3  what is happening there.

4        So that is what's shocking to us.  We know that there

5  must be documents relating to that, and it's just as simple as

6  that, and I appreciate and understand Your Honor's -- and I

7  take to heart Your Honor's comments relating to an impasse.  We

8  don't want there to be an impasse.  We want the City to just

9  give us those documents, and then we go on from there.  Thank

10 you.

11        THE COURT:  All right.

12        MS. WIMBERG:  And, Your Honor, because we pulled up

13 transcripts, I just want to make sure that we get an

14 opportunity to respond.

15        THE COURT:  Sure.

16        MS. WIMBERG:  In that, Your Honor, just as you said

17 before, we're not looking at every motion, every file.  We

18 looked at your Court's order.  We looked at your Court's order

19 in the 2004.  And the City really didn't -- I mean, we haven't

20 looked -- I mean, I bring these arguments because that's, you

21 know, the litigator in me that I say these things, but I mean,

22 they didn't give us a subpoena.  We still responded to the

23 documents.  You know, I mean, we didn't fight these -- every

24 single thing, as Mr. Hirsh is representing.

25        We have been trying to go down this path of looking

1   through and making sure that we are in compliance with your

2   Court's order.  And we would ask, Your Honor, when we're

3   concluding, that if Your Honor is inclined to issue the motion

4   to compel, that you at least tell the parties to go back and

5   talk to each other again.

6        I mean, because that's what's supposed to happen under

7   the rule.  We're supposed to be having good faith discussions,

8   and Your Honor, I can tell you that that hasn't happened.  We

9   responded, they got an email, and we said, well, what else are

10  we supposed to search for.  Nothing.  And that's why we're

11  here.  And so I'm concerned, Your Honor, that if we go down

12  this path of you entering the order, we're back at saying,

13  okay, well, are we going to communicate in good faith to try to

14  figure out, can we find things where --

15       THE COURT:  Well, of course you're going to

16  communicate in good faith, because the costs of this litigation

17  are extreme.  It's not all that unusual in litigation of this

18  level, but it is a little bit when you're looking at the debtor

19  recovering an asset.  That's what the debtor is looking to do.

20       MR. HIRSH:  Your Honor, we're available if you want to

21  go into recess, or we're available to meet and confer right

22  now.  I mean, I understand --

23       THE COURT:  Let's do it.

24       MR. HIRSH:  -- the city's counsel are on the phone, on

25  the cell phone, listening.

1           THE COURT:  Yep.

2           MR. HIRSH:  We're happy to do that right now.

3           THE COURT:  Well, we're going to do that.  We're going

4    to take -- we'll come back at noon.

5           MR. HIRSH:  Thank you, Your Honor.

6           THE COURT:  We'll take a twenty-minute --

7           MS. WIMBERG:  Thank you, Your Honor.

8           MR. HIRSH:  Appreciate that.  Thank you very much.

9        (Recess taken at 11:40 a.m.)

10        (Proceedings resume at 12 p.m.)

11          THE CLERK:  All rise.  This Court is back in session.

12          THE COURT:  All nightie.  So have y'all made any

13   progress?

14          MR. HIRSH:  Your Honor, I'll start out by saying what

15   I'm about to say, I think you'd rather be on the ski slopes, so

16   I apologize.

17          THE COURT:  Oh.

18          MR. HIRSH:  We have not made any progress.  There is a

19   -- and I'm very careful what I'm saying because I'm trying to

20   understand it myself.  There is a fundamental disconnect, I

21   believe, with the City's understanding of why we're here, how

22   we're allowed to be here, and all these things.

23          We've litigated this to the cows come home, right?

24   And over and over again.  The order that Your Honor entered,

25   right, said that "The debtor established that the reason for

1  the 2004 exam is to determine whether the City's transactions

2  with respect to the Coliseum may constitute avoidable

3  post-position transfer under 549."

4          All right.  The City has already made the argument

5  that they've been making numerous times, and I don't want to

6  bother the Court with a million things.  All right.  The City

7  also objects to the debtor's use of the 2004 to look into the

8  city's finances and the proposed transaction related to the

9  Coliseum.  Okay.  The City contends that these transactions

10  have nothing to do with the debtor's bankruptcy case or its

11  plan, and that the Court lacks jurisdiction.  Right.

12          Your Honor ruled on related to jurisdiction and ruled

13  on all of these issues already.

14          THE COURT:  Yeah.

15          MR. HIRSH:  All we ask for is -- and I'm almost done,

16  all we ask for is two things.  Okay?  "All documents in your

17  possession, including but not limited to all communications and

18  contracts with the AASEG relating to the Coliseum."  The City

19  has come back and said there are no documents.  Point blank,

20  done.  That's not possible, okay?

21          So the City now has asked, well, the search terms, we

22  went back and it said, well, what search terms do you want.

23  You don't need to be a rocket scientist.  Search terms are

24  these terms, Coliseum, AASEG.  If the City -- and this is our

25  position.  If the City is going to continue to say there are no

1    documents responsive whatsoever, or if they come back and say

2    everything is privileged, right, I -- I just -- that is not

3    possible.  Okay?  They never once said here are all the

4    documents we have.  However, we're claiming privilege on all of

5    the documents, and here's the privilege log.  Right.  And then

6    we could have went back and forth on that, but that never even

7    happened.

8         So all I'm -- I don't know how we can handle this

9    impasse and get past it, but if the City's position is that

10   there are no documents at all relating to the Coliseum

11   transaction that's been going on for over a year, no LOI, no

12   term sheet, no contract, nothing, no communications relating to

13   those kind of documents, and I'm not saying that's all there

14   is, but that's an example, then by definition I believe if the

15   City is preparing to finalize that deal, it's a fraudulent

16   transfer.  Right.  There's no documentation, so it must be

17   fraud.

18        I don't believe that's the case, but I'm saying that

19   as a little bit of an outlier, right, to show how silly it is.

20   There must be documents, and I don't know how we impose upon

21   the City to act in good faith and just give us the documents,

22   and we are at an impasse, Judge, because I don't know what else

23   we can do.

24        THE COURT:  Okay.  Ms. Wimberg?

25        MS. WIMBERG:  And, Your Honor, that was helpful,

34

1  because I do think that there is an impasse, and I do think

2  it's some larger disconnect.  And, Your Honor, I say this, the

3  City has in good faith tried to comply with the Court's order.

4  It did read the 2004 in conjunction with your order in the

5  scope of the investigation of a 549 claim.

6          If Your Honor is saying, and I think we need some

7  direction here, you're saying that it doesn't matter even

8  though the bankruptcy case confirmed it in 2000, it doesn't

9  matter, this is all open to every single thing, every

10  transaction that the City has done including the Coliseum --

11          THE COURT:  Well, no, I've got an order here --

12          MS. WIMBERG:  Right --

13          THE COURT:  -- and this -- for a year, this has been

14  discussed.  Almost a whole year.

15          MS. WIMBERG:  Right.  And for  -- that -- that's what

16  we're --

17          MR. HIRSH:  Eight months.  Eight months, Your Honor.

18          MS. WIMBERG:  -- like that is -- we've looked into the

19  scope and we've said here's what we were looking for, and I

20  understand that they want everything that the City has done

21  because it wants to investigate the City's solvency.  I mean,

22  that is what they said in their motion, but they want to

23  investigate the City's solvency, which does not have anything

24  to do with the debtor, the debtor's transfers, the debtor's

25  post so --

1          THE COURT:  Well, I'm going to enforce my order that -

2  - I mean, you can -- and I'm glad your client is on.  The Court

3  is going to enforce its order.  The city's interpretation of

4  that -- I mean, they can read it however they want.  You know,

5  it is a curiosity of sitting in this position and entering

6  orders and finding out later that other people don't read the

7  same thing.  Just like they don't -- you know, when you're in a

8  negotiation a lot of times people don't even read the same

9  thing but I know what my jurisdiction is.  You know, another

10  court might disagree with me and, you know, other people might

11  disagree with me but I'm not getting off of the horse that I'm

12  riding.  This is the horse the Court is riding because many,

13  many years, decades and decades have proven to me that that's

14  what needs to be done.

15          And so I hear you -- Ms. Wimberg, I have heard you and

16  I absolutely understand, you know -- I remember when the whole

17  group from City of Oakland came and I listened to everything

18  they said and I still rode the horse that I understand.  And

19  I've reviewed the law.

20          And the City of Oakland may disagree.  Probably does.

21  I mean, they clearly do disagree but this is within the scope

22  of this Court's jurisdiction, what is in this order.  And I'm

23  going to enforce that order.

24          I will sign the order tendered today, and if it turns

25  out that the City has fully complied with the full spirit of

36

1  the order the Court has entered and, you know, it's been

2  wrestling with this for quite some time, if it turns out that

3  the City is fully in the good faith complied with the review

4  according to that, then it goes away.

5       If it is determined at some point in the future that

6  it has not, I feel sure that what the Court will then have to

7  consider is a motion for sanctions because all the motion to

8  compel is they think there hasn't been good faith cooperation.

9  It's an opinion.  It's an opinion, but today I believe that

10 there is enough of a disconnect with how the City reads this

11 and how the Court intended it that the motion -- the order on

12 compelling is warranted.  Whether or not it will lead to

13 sanctions of the future is anybody's guess.

14       MS. WIMBERG:  And, Your Honor, I think that in that --

15 I understand what the Court is saying in terms of entering --

16 I -- again, if your court -- if there's some disconnect that

17 we're having, I will go back to your Court's order to -- read

18 and make sure.

19       THE COURT:  Well, there --

20       MS. WIMBERG:  The thing --

21       THE COURT:  -- let's make sure we understand what the

22 disconnect is.  It's what you're reading versus what he's

23 saying.

24       MS. WIMBERG:  He's saying he wants every single

25 document with regards to the City's transaction in 2024 --

37

1          THE COURT:  Regarding the Coliseum.

2          MS. WIMBERG:  -- with regarding the Coliseum, whether

3    or not it has any anything to do with the debtor.

4          THE COURT:  You've already heard what he said, and the

5    Court is saying I'm going to sign his order.

6          MS. WIMBERG:  But that's okay.  Whether or not it has

7    anything to do with the debtor.  That -- that's what I

8    understand his request to be.

9          THE COURT:  It's -- and that's the way the order is

10   written.  It is the way the order is written.  And, by the way,

11   this would -- this is -- these records -- I will just add a

12   little corollary that she didn't say, that she didn't say if

13   they exist would have been -- could have been acquired through

14   a California open records a request which means that it is open

15   records and it is -- and if that is the case, if she is

16   correct, if that reading what she said is correct and it could

17   have been gotten through what I will call a FOIA, then it's

18   hardly an imposition if it's within the scope of the order.

19         MS. WIMBERG:  So -- and I guess that's a really good

20   question.  So if those documents would not be available through

21   FOIA, right --

22         THE COURT:  Well, no, no.  I'm not redoing -- no, no.

23         MS. WIMBERG:  I'm just saying --

24         THE COURT:  The Court --

25         MS. WIMBERG:  -- that's the --

38

1          THE COURT:  The Court is not redoing the order.

2          MS. WIMBERG:  Okay.

3          THE COURT:  We're talking about --

4          MR. HIRSH:  I'm sorry --

5          THE COURT:  -- the Court is not redoing its order.  No

6    refinement.  It is what it is.  Everybody -- you know, this is

7    an old saying; you live by the sword, you die by the sword.  It

8    is what it is and caveat emptor, you go for -- or you buy at

9    your risk.  You make a determination at your risk.  And that's

10   why Rule -- the Bankruptcy Rules and the Federal Rules of Civil

11   Procedure on discovery require good faith, and so that -- you

12   know, and because they're come with the miss -- and or the

13   gamesmanship -- and I'm not suggesting this -- but a

14   gamesmanship and some litigation is such that if a party feels

15   like there has been a violation of good faith and you can --

16   then you get into this whole business of sanctions.

17          And so somebody a long time ago -- I should probably

18   remember because I've been around like Methuselah, as long as

19   Methuselah but in here, there's actually some genius in the way

20   this is drafted, to force upon the parties the duty of working

21   through the misunderstandings such that you can never be

22   labeled with a lack of good faith.

23          MS. WIMBERG:  I understand.  That's why I think that

24   we were -- quite frankly, I do think that we -- we didn't get

25   that opportunity when we were here with a day after -- you

1    know, I think that motion when we responded, it was by the day

2    --

3          THE COURT:  Well, I'll tell you with the City of

4    Oakland, it's like the Sierra Club who's not up today, Jerry is

5    gone, but they everybody got a crack at this a couple of times.

6    And it is what it is now.  The Court is not going to revisit

7    the terminology of its order or the spirit, and therefore, I'm

8    gonna sign the order tendered by ITS and if it turns out -- and

9    by the way, as of today I am still the Judge on the case.

10   Nobody has removed -- the reference hasn't been withdrawn.

11   There's been no stay of this.  It is -- I am -- yeah, I'm

12   tagged.  I'm it.

13          And that being the case, the Court understands what

14   the order of compelling means.  The word compelling doesn't

15   mean bad behavior.  It means it is time to read the order in

16   the expansion of what we have discussed today, and if you

17   disagree with it that's -- you're always entitled to disagree

18   and then there there are remedies for your disagreement with

19   the Court's order but the Court is not going to provide any

20   more elucidation to the City of Oakland beyond what is in there

21   and based upon the Court's order on the compelling.  Full and -

22   - good faith full responses.  Okay.

23          You've made excellent arguments but, you know, these

24   are the worst things you can do sitting as a judge is dealing

25   with a discovery dispute because the Court doesn't actually

1  know what you're talking about in terms of like the the tactile

2  experience of looking through a file or understanding a

3  database or talking to a client.  The Court has to see these

4  things in a very abstract way and the best thing the Court can

5  do is to move the parties along in the most appropriate way

6  using the Bankruptcy Code and the Federal Rules of Civil

7  Procedure, United States bankruptcy procedure, any of those

8  rules.  They -- and this is a discovery action even when you're

9  talking about 2004 and it is broadly interpreted in accordance

10  with the Court's prior opinions.

11      I'm sure the City of Oakland disagrees on that, of

12  course, because they're a litigant litigants are always going

13  to disagree with the trial judge eventually at some point, and

14  the Court has to call ball, strikes, walks, whatever it is; I

15  never played baseball, of course.

16      That's it.  I'm going to sign their order.  Ms.

17  Wimberg, you did a fine job but I'm telling you that's it, I'm

18  gonna call it to a conclusion, and you all are gonna have to

19  run out of here and get to work and take your best hold if you

20  cannot resolve this.

21      MR. HIRSH:  Your Honor, just on the issue of good

22  faith, you've mentioned that a number of times and just from

23  ITS's perspective just in anticipation for the next time we're

24  back here, there -- you mentioned the word gamesmanship and I

25  don't want to cheat -- I mean, I think it's a tactical thing,

1    and from our perspective, the deep underlying root of us not

2    coming together has to do with a lot of three or 4D chess where

3    we get to a point where what we're asking for relates to the

4    adversary proceeding, and then they're going to say, gotcha,

5    see this really should all be done in the adversary proceeding,

6    so your Rule 2004 exercise is squashed.

7            That -- to me, that's our perspective, and I think

8    there's a lot of tactical -- I don't want to say gamesmanship

9    because it's aboveboard, and Ms. Wimberg, as you've -- and the

10   City is doing a fine job advocating, but that's what's going on

11   here, and from our perspective, and when we're back here again

12   and considering good faith, that's what the exercise is.

13           We're trying to get something on the record where it's

14   like, gotcha, ITS, you really should be doing this in the

15   adversary proceeding, and that's -- from our perspective,

16   that's a big root cause of why we're eight months into this and

17   don't have a single document.

18           THE COURT:  The only other thing I will say is that is

19   why lawyers have to be so intelligent.  Lawyers have to be

20   intelligent, and you know, there are some dumb lawyers out

21   there who make millions and millions of dollars.  It's crazy,

22   and sometimes I wonder because I know some of them, and it's

23   like, oh, my gosh, but to do what you're doing here and to do

24   this level of litigation, you know, you can't just -- it's not

25   accidental.  None of this is accidental, and the Court

42

1    recognizes that, and I -- by the way, as a matter of

2    philosophy, I believe everybody operates in good faith until I

3    am -- it has been proven to me through the course of conduct

4    that I cannot trust the responses and the motivations of the

5    parties, but that -- we are nowhere near that now.

6            MR. HIRSH:  Yep.

7            THE COURT:  I'm going to sign their order, Ms.

8    Wimberg.  You know why your clients have had to -- have heard

9    it.  As long as I have this case, I'm going to stay in the

10   direction of getting it ready for trial --

11           MR. STOSBERG:  Thank you, Your Honor.

12           MR. HIRSH:  Thank you, Your Honor.

13           THE COURT:  -- whether it's in the, -- whether we're

14   talking about it in 2004 or we're talking about it in AP.

15           MR. STOSBERG:  Thank you, Your Honor.

16           MR. HIRSH:  Thank you, Your Honor.

17           THE COURT:  All right.  Have a great day.

18           MR. HIRSH:  You take care.

19           THE COURT:  You too.

20       (Concluded at 12:18 p.m.)

21

22

23

24

25

# **C E R T I F I C A T I O N**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


*Kathleen M. Price*                    DATE:   March 12, 2025

Kathleen Price, AAERT Cert. No. 325

A&S Transcript Providers